CONFORMED COPY

**HENNIGAN, BENNETT & DORMAN** LLP
**LAWRENCE M. HADLEY (SBN 157728)**
hadleyl@hbdlawyers.com
**HAZIM ANSARI (SBN 190601)**
ansarih@hbdlawyers.com
**MIEKE K. MALMBERG (SBN 209992)**
malmbergm@hbdlawyers.com
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
(213) 694-1200 - Telephone
(213) 694-1234 - Facsimile

Attorneys for Plaintiff
ULTRAMERCIAL LLC

BY
CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES

2009 SEP 23  PM 1:04

FILED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULTRAMERCIAL LLC | Case No. CV09 06918 RGK PLAx |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| vs. | |
| HULU, LLC; YOUTUBE, LLC; WILDTANGENT INC. | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

For its Complaint against HULU, LLC ("Hulu"); YOUTUBE, LLC ("YouTube") and WILDTANGENT, INC. ("WildTangent") (collectively, Hulu, YouTube and WildTangent shall be referred to as "Defendants"), Plaintiff ULTRAMERCIAL, LLC ("Ultramercial" or "Plaintiff") alleges as follows:

## THE PARTIES

1.     Plaintiff Ultramercial, LLC ("Ultramercial" or "Plaintiff") is a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business at 32200 Valor Pl., Rancho Palos Verdes, CA 90275.  Ultramercial is the assignee of all right, title and interest to U.S. Patent No.7,346,545 B2 (the '545 patent" or "Patent-in-Suit").

2.     Defendant YouTube, LLC ("YouTube")  is a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business at 901 Cherry Ave., San Bruno, CA 94066.  Upon information and belief YouTube operates a website located at http://www.youtube.com.

3.     Defendant Hulu, LLC ("Hulu") is a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business at 12312 W. Olympic Blvd., Los Angeles, CA 90064.  Upon information and belief Hulu operates a website located at http://www.hulu.com.

4.     Defendant WildTangent, Inc. ("WildTangent") is a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business at 18578 NE 67th Court, Bldg. 5, Redmond, WA 98052. Upon information and belief WildTangent operates a website located at http://www.wildtangent.com.

## NATURE OF THE ACTION

5.     In this civil action, Plaintiff seeks damages and injunctive relief against Defendant for acts of patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§ 1 et seq.

**JURISDICTION AND VENUE**

6.　　This Court has subject matter jurisdiction of such federal question claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.　　Venue is proper under 28 U.S.C. §§ 1391(c) and 1400(b), in that the acts and transactions complained of herein were conceived, carried out, made effective, or had effect within the State of California and within this district, among other places. On information and belief, each of the Defendants resides in this judicial district by virtue of its business activities in this district. Each of the Defendants is licensed to do business in California by the California Secretary of State.

8.　　On information and belief, this Court has personal jurisdiction over each of the Defendants.

**PLAINTIFF ULTRAMERCIAL AND**
**ULTRAMERCIAL'S PATENTED INVENTION**

9.　　On March 18, 2008, the United States Patent & Trademark Office ("USPTO"), after a full and fair examination, duly and legally issued United States Patent No. 7,346,545 B2 ("the '545 Patent"), entitled "METHOD AND SYSTEM FOR PAYMENT OF INTELLECTUAL PROPERTY ROYALTIES BY INTERPOSED SPONSOR ON BEHALF OF CONSUMER OVER A TELECOMMUNICATIONS NETWORK." The '545 Patent was filed on May 29, 2001 and relies on U.S. Provisional Application No. 60/207,941, filed on May 27, 2000, for priority. A true and correct copy of the '545 Patent is attached as Exhibit 1 and incorporated herein by reference.

10.　　The '545 Patent, filed in the USPTO on May 29, 2001, claims an invention for distributing products covered by intellectual property rights over a network, such as the internet, in which the products are "gated" and monetized through a sponsoring advertiser. In particular, the invention enables a network location, such as a website, to offer content, subject to intellectual property rights owned by third parties, to consumers by offering consumers access to the protected

754930.6

1    content, without charge, in exchange for viewing sponsored advertising. Revenue

2    derived from the sponsored advertising, specifically associated with the protected

3    content, is then used, at least in part, to compensate the owner of the protected

4    content.

5    　　　11.　　Plaintiff Ultramercial is a technology company offering patented systems

6    for monetizing online content. Ultramercial offers advertising services which allow,

7    in part, websites to offer consumers access to copyrighted content, without charge, in

8    exchange for viewing sponsored advertising. Ultramercial further matches sponsors

9    and sponsored advertisements with content subject to intellectual property protection,

10   gates the content subject to protection with the sponsored advertisements, and

11   compensates owners of the protected content with funds generated from sponsors (the

12   "Ultramercial System").

13   　　　12.　　The Ultramercial System is a commercial embodiment of the '545 Patent

14   and has met with renowned success. More than 175 brand advertisers running over

15   700 advertising campaigns have utilized or currently utilize the Ultramercial System,

16   including such well known brands as Honda, Ford, E*Trade, Staples, Royal Bank of

17   Scotland, IBM, GE, Sony and HBO. The Ultramercial System has been used by

18   major media companies, including Salon.com, Walt Disney Internet Group, and The

19   Economist.

20   **DEFENDANT YOUTUBE AND ITS INFRINGING USE OF THE PATENTED**

21   **ULTRAMERCIAL SYSTEM**

22   　　　13.　　Plaintiff incorporates herein by reference the allegations set forth in

23   paragraphs 1 - 12 of this Complaint as though fully set forth herein.

24   　　　14.　　YouTube is a well-known media company that makes video content

25   available to the public through its website located at http://www.youtube.com.

26   YouTube was created in February 2005 and less than two years later, in November

27   2006, YouTube was purchased by Google, Inc. ("Google") for $1.65 billion.

28   YouTube is now operated as a subsidiary of Google.

-4-   **COMPLAINT FOR PATENT INFRINGEMENT**

LAWYERS
LOS ANGELES, CALIFORNIA

15.    YouTube promotional materials state that 75% of Americans watched a video online last month and describes YouTube as "far and away the leader in this space with hundreds of millions of videos viewed daily." See www.youtube.com/advertise.

16.    YouTube has approximately 71 million unique users each month viewing the videos found on YouTube's website. In fact, as of 2008, it was reported that thirty eight percent of all video streamed on the internet came from YouTube. See http://www.forbes.com/forbes/2008/0616/050.html.

17.    In addition to personal videos and other content uploaded by users, YouTube also has partnership relationships with major content providers, allowing premium content, including well known television shows, to be viewed online.

18.    YouTube has partnership deals with thousands of content providers, including major media companies such as CBS, BBC, The Sundance Channel, and many more. See http://www.youtube.com/t/advertising_partners. Not surprisingly, the content provided by the major media companies, including CBS, attracts the most viewers, resulting in the most video views as compared to other content providers on YouTube. See http://www.nytimes.com/2008/12/11/business/media/11youtube.html?_r=2.

19.    In addition to being a well known video content provider on the internet, YouTube is also a well known avenue for advertising. In fact, a large portion of YouTube's website is devoted to explaining and promoting its advertising programs.

20.    YouTube uses its relationships with well known content providers to promote its advertising services, stating that its partnerships with its content providers "and the wide range of content they represent provide appropriate environments for brand marketers and countless opportunities for high-profile placements." See http://www.youtube.com/t/advertising_partners.

21.    YouTube employs or has employed a variety of advertising techniques including placing advertisements on the homepage at www.youtube.com, placing

754930.6

banner advertising below the video content, and placing advertisements in front of and within the content found on its website, requiring that the user view the sponsored message before the user can view the view the content online for free.

22.    A myriad of companies advertise on YouTube by placing sponsored messages before and/or within the video content, requiring that the user agrees to view the sponsored message before the user is allowed to view the video content for free.

23.    YouTube's advertising techniques have been highly successful and it has been reported that as of 2008 YouTube generated approximately $200 million in revenue, with a significant portion of that coming from advertising. In fact, it is estimated that YouTube will increase that revenue to $350 million in 2009. See http://www.forbes.com/forbes/2008/0616/050.html.

24.    In April of 2006, an employee working in Google business development, Jason Harinstein, emailed Ultramercial. In the email Mr. Harinstein expressed an interest in the Ultramercial System and in further developing ways in which Google and Ultramercial could work together. Mr. Harinstein also requested a meeting to learn more details about Ultramercial and its business.

25.    On April 28, 2006, Ultramercial emailed a power point presentation on the Ultramercial System to Mr. Harinstein for discussion. The Ultramercial power point presentation pitched the Ultramercial System and contained many details concerning the Ultramercial System, including the business metrics of the Ultramercial System, as well as the proven success of the Ultramercial System. The powerpoint presentation further disclosed that the Ultramercial System was protected by pending patents.

26.    Shortly thereafter, Mr. Harinstein and other Google employees had a telephone call with Ultramercial during which they inquired on Google's behalf about to the scalability of the Ultramercial System and indicated that Google believed there may be a way to utilize the Ultramercial System in making premium content available

-6-    **COMPLAINT FOR PATENT INFRINGEMENT**

to its users. Mr. Harinstein also stated that Google had been following Ultramercial in newsletters and trade publications.

27.    Discussions and communications between Ultramercial and Google continued throughout the rest of 2006. At all times Google was informed that the Ultramercial System was protected by pending patents.

28.    On information and belief, Google's interest in Ultramercial was driven, at least in part, by Google's intended acquisition of YouTube and Google's interest in the possible uses of the Ultramercial System to benefit and grow YouTube.

29.    In April, 2006, Ultramercial also discussed the Ultramercial System with Tony Nethercutt, then an employee of Yahoo!. In order the further the discussions, Ultramercial sent Mr. Nethercutt information on the Ultramercial System and Ultramercial clients.

30.    Soon thereafter, Mr. Nethercutt left Yahoo! for a new position at YouTube, where he continued discussions and communications with Ultramercial regarding the Ultramercial System and ways in which YouTube could utilize the Ultramercial System to display their premium content.

31.    Separate and independent from Ultramercial's discussions with Mr. Nethercutt, and Google, Ultramercial was also pursuing a relationship with YouTube, then an independent company, and pitching the Ultramercial System to YouTube.

32.    The communications between and among Ultramercial, Google and YouTube continued after Google's 2006 acquisition of YouTube. On February 13, 2007, Ultramercial met with Google employees, including Rajas Moonka, at Google's offices located in Mountain View, California. At the meeting representatives of Ultramercial presented a powerpoint presentation entitled "Google and YouTube Advertising Solutions for YouTube." The Ultramercial presentation included business metrics and details on the Ultramercial System, with specific recommendations for how the Ultramercial System could be utilized by and benefit YouTube.

754930.6

33.    Although Google and YouTube expressed interest in the Ultramercial System, by July, 2007, Google employees, including, Mr. Moonka, ceased responding timely to Ultramercial's follow-up inquiries.  When Mr. Moonka finally responded to follow-up inquiries on July 12, 2007, he claimed that YouTube was "still running the experiments and gradually rolling out some new ad offerings.  This doesn't appear to be a direction we're moving towards at the moment."

34.    In June, 2008, after additional inquiries, Ultramercial was again informed by Mr. Harinstein at Google that the Ultramercial System was not consistent with Google and/or YouTube's vision and that "it doesn't seem we have a basis to work together right now."

35.    In April, 2009, following press releases indicating that YouTube planned on expanding its premium content, Ultramercial contacted Mr. Harinstein at Google once again about opportunities to work together, but Ultramercial received no response.

36.    During the meetings, communications and discussions spanning over two years, both YouTube and Google were informed that the Ultramercial System was protected by a pending patent and both YouTube and Google were informed that the '545 Patent had ultimately issued.

37.    While YouTube and Google had initially expressed interest in the Ultramercial System and the benefits the Ultramercial System might offer YouTube, by in or about June 27, 2008, YouTube and Google ceased all communications with Ultramercial regarding the use of the Ultramercial System for gating copyrighted content on YouTube.  Despite its representations that it had decided against using the Ultramercial System, in or about June 15, 2009, YouTube began using the patented Ultramercial System without permission to distribute and gate certain copyrighted content over the internet.

## DEFENDANT HULU AND AND ITS INFRINGING USE OF THE
## PATENTED ULTRAMERCIAL SYSTEM

38.   Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 - 37 of this Complaint as though fully set forth herein.

39.   Hulu was founded in March, 2007 and launched on or about October 29, 2007 as a joint venture formed, in part, between NBC Universal, Inc. ("NBC Universal") and the Fox Entertainment Group ("Fox"); in 2009 ABC became a member of the joint venture as well.  NBC Universal is an equity owner of Hulu and holds permanent seats on Hulu's board of directors.

40.   Hulu is a well-known media company that makes online video available for free anytime to the United States' public through its website located at http://www.hulu.com.

41.   Hulu also distributes online videos through approximately 35 other popular internet sites including  AOL, IMDb, MSN, MySpace, and Yahoo! in the United States, as well as a growing network of personal blogs, fan sites, and other Web sites where users choose to embed the Hulu video player.

42.   Hulu states that the company "is focused on helping people find and enjoy the world's premium content when, where and how they want it anytime in the U.S."  As a result, Hulu has brought together a large selection of copyright protected videos, including well known television shows, from nearly 170 leading content companies, including FOX, NBC Universal, ABC, Comedy Central, ABC Family, Biography, Lionsgate, Endemol, MGM, MTV Networks, National Geographic, Digital Rights Group, Paramount, PBS, Sony Pictures Television, Warner Bros. and more.

43.   Hulu touts that "users can choose from more than 1500 current primetime TV hits such as The Simpsons, 30 Rock, LOST, The Daily Show with Jon Stewart and The Office the morning after they air; classics like Buffy the Vampire Slayer, The A-Team, Airwolf and Married...with Children; movies like Last of the

754930.6

1  Mohicans and Basic Instinct; documentaries like Super Size Me, Crawford and The

2  Times of Harvey Milk; and clips from Saturday Night Live; web original like Dr.

3  Horrible's Sing-Along Blog and Dorm Life; and other popular TV shows and

4  movies." See http://www.hulu.com/about.

5       44.    In addition to being a well known provider of premium video content on

6  the internet, Hulu is also a well known avenue for advertising.  In fact, a large portion

7  of Hulu's website is devoted to explaining and promoting its advertising programs.

8       45.    Hulu uses its relationships with well known content providers to promote

9  its advertising services, stating that Hulu "gives advertisers an opportunity to

10  associate their brands with premium online video content, connect with highly

11  engaged consumers and extend their reach beyond Hulu.com to Hulu's distribution

12  network."

13       46.    Hulu's advertising services include placing advertisements in front of

14  and within the video content distributed online, requiring that the user view the

15  advertising message before the user can view the video content for free on the

16  internet.

17       47.    Hulu obtains advertising from a myriad of companies and places

18  sponsored messages before and/or within the copyright protected content distributed

19  online.  Hulu requires that the user agree to view the sponsored messages before the

20  user is allowed to view the content for free on the internet.

21       48.    Hulu partners or has partnered with over 200 Fortune 500 advertisers

22  including Johnson & Johnson, McDonald's, Visa, American Express, Best Buy,

23  Chili's, DirectTV, GM, Intel, Nissan, State Farm, Unilever, Wal-Mart, Cisco, and

24  Proctor & Gamble.

25       49.    Hulu generates revenue from advertising, including the ad impressions

26  generated from Hulu.com, and video streams from Hulu's distribution partners'

27  websites and from the embeddable Hulu video player.  Hulu itself states that

28  "[a]dvertisements continue to make Hulu a free service to our users."

754930.6

50.     Hulu's advertising service has been highly successful and it has been reported that Hulu will generate upwards of $120 million dollars in advertising sales in 2009.  See  http://www.businessinsider.com/hulu-revenue-estimate-whacked-by-a-third-2009-4.

51.     As early as 2006, Plaintiff Ultramercial introduced the Ultramercial System to NBC/Universal.  Throughout 2006 and 2007, Plaintiff Ultramercial engaged in various communications with NBC/Universal wherein employees at NBC/Universal were made aware of the Ultramercial System and were informed of how the Ultramercial System would benefit NBC/Universal.

52.     In addition to NBC/Universal, Ultramercial also communicated with employees of Fox who were also on the Hulu development team.

53.     The communications between Ultramercial, NBC/Universal, Fox and Hulu continued after the 2007 formation of Hulu by NBC/Universal and Fox, in part.

54.     In June 2007, Ultramercial took part in an extensive telephone conference call wherein Ultramercial explained the Ultramercial System to Whitney Howard, Hulu's development coordinator, who at that time was employed by Fox. Ultramercial discussed the Ultramercial System with Ms. Howard in detail and conveyed how the Ultramercial System, including the "three way screen", would benefit Hulu.  After the telephone call, Ultramercial emailed a power point presentation to Ms. Howard.

55.     The power point presentation described the benefits of the Ultramercial System.  It further contained many details concerning the Ultramercial System, including the business metrics of the Ultramercial System, as well as various ways in which the Ultramercial System uses sponsored advertisements to gate content on the internet and permit users to obtain the gated content, without charge, in exchange for viewing the sponsored advertisement.

56.     The Ultramercial power point presentation also disclosed a "three way screen", showing the user three images of three different makes of Honda

754930.6

1    automobiles, and allowing the user to choose which of the three corresponding

2    sponsored message the user wished to view in exchange for being allowed to access

3    the gated content for free.

4        57.    The Ultramercial power point presentation conveyed the benefits of

5    using the "three way screen" and the unique benefits resulting from allowing users the

6    ability to choose which sponsored advertisement they wished to view in exchange for

7    viewing content for free.

8        58.    The Ultramercial power point presentation further contained a copy of

9    the front page of a patent application filed by Ultramercial and specifically indicated

10   that the application maintained a priority date of May 27, 2000. The power point

11   presentation stated that the patent application, at that time, had already been through

12   "7 Office Actions; Passed All Prior Art; Expected issuance in second half of 2007."

13       59.    Approximately a year later, in the Summer of 2008, Ultramercial became

14   aware of a Hulu document entitled "Ad Specifications". The Ad Specifications

15   document provided various types of advertising services which Hulu made available

16   to sponsors including "Branded Canvas" advertising, "Overlay Brand Bar"

17   advertising, and the "Ad Selector" advertising, among others. The "Ad Selector"

18   advertising description included a screen shot showing three different makes of

19   Nissan automobiles and the description of the "Ad Selector" advertising stated, "[t]he

20   Ad Selector is an advertisement unit that allows the user to control their entire

21   advertisement experience during video playback. At the beginning of their content

22   play the user will be presented with up to 3 options in video advertisement categories.

23   Once a selection has been made, the user will be presented with video advertisements

24   in the category of their choice. For example an automotive company could offer the

25   user a selection of SUV, Truck or Coupe advertisements. After the user has selected

26   SUV the remaining commercial breaks will playback advertisements from the sponsor

27   related to SUV's alone."

28       60.    Ultramercial contacted Hulu, informing Hulu that the '545 Patent had

754930.6

1    issued.  Shortly thereafter, Hulu requested a meeting with Ultramercial.  During the

2    June 30, 2008 meeting, Ultramercial presented an in-depth presentation of the

3    Ultramercial System to Hulu employees and later provided the presentation materials

4    to Hulu.

5         61.    During all of these meetings, communications and discussions,

6    NBC/Universal, Fox, Hulu's development team and later, employees of Hulu itself

7    were all informed of how the Ultramercial System would benefit Hulu and were also

8    informed that the Ultramercial System was protected by a pending or, later, an issued

9    patent.

10        62.    At the June 30, 2008 meeting, Hulu, then unequivocally aware that the

11   Ultramercial System was protected by an issued patent, once again expressed a

12   renewed interest in retaining Ultramercial to service Hulu's needs.

13        63.    In anticipation of providing services to Hulu, and after further

14   communications wherein Hulu and Ultramercial discussed how the Ultramercial

15   System would benefit Hulu, Ultramercial executed Hulu's form of a non-disclosure

16   agreement on September 5, 2008.  Relying on the nondisclosure agreement,

17   Ultramercial also provided Hulu with sensitive proprietary information contained in a

18   document entitled "How to Publish."

19        64.    Although Hulu insisted that Ultramercial execute Hulu's form of a non-

20   disclosure agreement, Hulu failed to countersign the non-disclosure agreement,

21   despite multiple follow-up requests from Ultramercial.   In or about September 11,

22   2008, Hulu ceased its communications with Ultramercial.

23        65.    Hulu continues to offer the "Ad Selector" advertising.  As of August,

24   2009, Hulu presented a video clip, called the "Hulu Advertising B-Roll" on its

25   website.  The Hulu video clip demonstrates the various types of advertising services

26   Hulu can provide sponsors and includes an exemplar of each, featuring, for example,

27   "Branded Slate" advertising, "Overlay" advertising, and the "Ad Selector"

28   advertising, among others.  The "Ad Selector" advertising demonstrative in the Hulu

-13-  **COMPLAINT FOR PATENT INFRINGEMENT**

754930.6

1    video clip shows the user three images of three different makes of Nissan

2    automobiles, and allows the user to choose which of the three corresponding

3    sponsored messages the user wishes to view in exchange for being allowed to access

4    the gated content for free.

5    66.    The "Ad Selector" advertising used and offered by Hulu is substantially

6    similar to the Ultramercial "three way screen", which Ultramercial confidentially

7    disclosed to Fox, NBC/Universal, and/or Hulu at least as early as 2007.

8    67.    Upon information and belief, on or about March 12, 2008, Hulu began

9    using the patented Ultramercial System without permission in distributing and gating

10   certain copyrighted content over the internet.  Hulu continues using without

11   permission, Ultramercial's patented Ultramercial System in distributing and gating

12   certain copyrighted content over the internet.

13   ## DEFENDANT WILDTANGENT AND ITS INFRINGING USE OF THE

14   ## PATENTED ULTRAMERCIAL SYSTEM

15   68.    Plaintiff incorporates herein by reference the allegations set forth in

16   paragraphs 1 - 67 of this Complaint as though fully set forth herein.

17   69.    WildTangent is a global games network, delivering an enormous catalog

18   of more than 700 downloadable games to the public through its website located at

19   www.wildtangent.com.

20   70.    WildTangent's gaming services are so successful that the company has

21   over 1.5 million new players every month and promotional materials on

22   WildTangent's website state that the company has more than 20 million monthly

23   unique users in the United States alone.

24   71.    WildTangent markets its services to game developers and has

25   relationships with many popular game developers including Pop Cap, Sony and

26   PlayFirst. Popular games that are distributed in online versions through the

27   WildTangent website include Monopoly, Bejeweled and Family Feud.

28   72.    In addition to distributing its games directly through its website,

754930.6

1    WildTangent also has relationships with computer manufacturers including Dell, HP,

2    Gateway, Toshiba and Lenova; as a result, WildTangent's game console is factory

3    installed on approximately 84% of new personal computers sold in North America.

4        73.    WildTangent offers users a variety of ways to enjoy the games provided

5    through the WildTangent website. Users are offered the opportunity to purchase

6    premium games outright, pay per session with WildCoins, or engage with sponsored

7    advertising to play for free. In exchange for watching a sponsored message, the user

8    can then access the game content for free. This method of advertising is referred to

9    on the WildTangent website as "Sponsored Sessions".

10        74.    WildTangent obtains advertising from a myriad of companies through

11    the "Sponsored Session" program and places sponsored messages before and/or

12    within the copyright protected content distributed online. WildTangent requires that

13    the user agree to view the sponsored messages before the user is allowed to view the

14    content for free.

15        75.    WildTangent generates a large amount of revenue from its "Sponsored

16    Session" programs.

17        76.    Some of the companies that advertise or have advertised on

18    WildTangent's website include well known brands such as Johnson & Johnson,

19    Kelloggs, Wal-Mart, Toyota, Disney, 20th Century FOX, Warner Brothers,

20    Paramount, EA, Sony Playstation, Nintendo, Toyota, Honda, P&G, Unilever, Clorox

21    and many others.

22        77.    On February 14, 2006, WildTangent, through Bill Clifford, approached

23    Plaintiff Ultramercial regarding advertising solutions. Ultramercial immediately

24    responded, thanking WildTangent for their interest in Ultramercial's "patent pending

25    marketing solution for publishers."

26        78.    Over the next several months Ultramercial and WildTangent met several

27    times and communicated through multiple emails and telephone calls concerning

28    building out the Ultramercial System to service WildTangent's needs.

-15-  **COMPLAINT FOR PATENT INFRINGEMENT**

754930.6

79.    Ultramercial prepared demonstrations of the Ultramercial System, tailored to WildTangent's needs, and also provided WildTangent quotes for building out the Ultramercial System on WildTangent's behalf.

80.    Both WildTangent and Ultramercial executed a nondisclosure agreement and Ultramercial provided WildTangent with sensitive proprietary information contained in a document entitled "How to Publish."

81.    Ultimately, WildTangent retained Ultramercial's services, and in approximately September or October, 2006, Ultramercial launched its first advertising campaign on WildTangent's behalf and thereafter ran further advertising campaigns for WildTangent.  The advertising campaigns allowed WildTangent's users to play games for free in exchange for watching sponsored advertising.  WildTangent paid fees for Ultramercial's services.

82.    In or around December, 2006,  WildTangent stopped contracting for Ultramercial's services, choosing instead to pursue alternative advertising services.

83.    Communications with WildTangent continued up to and throughout the first half of 2007.  In July, 2007and Wild Tangent paid Ultramercial amounts owed on some outstanding invoices. By late July, 2007 WildTangent ceased all communications with Ultramercial.

84.    Although WildTangent cancelled its use of Ultramercial's services and ended all communications with Ultramercial, WildTangent continued, and still continues, using without permission the Ultramercial's patented Ultramercial System in distributing and gating certain copyrighted content over the internet.

## FIRST CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 7,346,545 B2

## (Against YouTube)

85.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 - 67 of this Complaint as though fully set forth herein.

86.    Plaintiff Ultramercial is the exclusive assignee of the entire right, title,

754930.6

1  and interest of the '545 Patent and has the right to bring this action to recover
2  damages for infringement of the '545 Patent.

3      87.    Defendant YouTube has directly infringed and continues to directly
4  infringe the '545 Patent by making, using, offering to sell and/or use of one or more
5  of the claimed methods for distribution of products covered by intellectual property
6  protection over the internet without authority or a license from Ultramercial.

7      88.    On information and belief, YouTube will continue to infringe the '545
8  patent as alleged in this Complaint unless enjoined by this Court.

9      89.    As a direct and proximate result of YouTube's infringement of the '545
10 Patent, Plaintiff has been and continues to be damaged in an amount yet to be
11 determined.

12     90.    YouTube has actual notice of the '545 Patent owned by Ultramercial.

13     91.    YouTube has not had, nor does it have a reasonable basis for believing
14 that it had or has the right to engage in the acts complained of herein.  For example,
15 YouTube impermissibly utilizes Ultramercial's patented technology, which it became
16 aware of, in part, through Ultramercial communications and presentations.
17 Furthermore, YouTube at all times knew that Ultramercial had filed for patent
18 protection and later was informed when the '545 Patent issued.

19     92.    YouTube's infringement has been willful and deliberate, making this an
20 exceptional case and justifying the award of treble damages pursuant to 35 U.S.C. §
21 284 and attorneys' fees pursuant to 3.5 U.S.C. § 285.

22     93.    Unless a preliminary and permanent injunction are issued enjoining
23 YouTube, including its  officers, agents, servants, and employees, and all persons
24 acting in concert with YouTube, from infringing the '545 Patent, Plaintiff will be
25 greatly and irreparably harmed.

26     94.    By reason of the above acts, Plaintiff is entitled to injunctive relief
27 enjoining and restraining YouTube, including its respective officers, agents, servants,
28 and employees, and all persons acting in concert with YouTube from further

-17-  **COMPLAINT FOR PATENT INFRINGEMENT**

754930.6

1  infringement of the '545 Patent.

## SECOND CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 7,346,545 B2

## (Against Hulu)

95.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 - 67 of this Complaint as though fully set forth herein.

96.    Plaintiff Ultramercial is the exclusive assignee of the entire right, title, and interest of the '545 Patent and has the right to bring this action to recover damages for infringement of the '545 Patent.

97.    Defendant Hulu has directly infringed and continues to directly infringe the '545 Patent by making, using, offering to sell and/or use of one or more of the claimed methods for distribution of products covered by intellectual property protection over the internet without authority or a license from Ultramercial.

98.    On information and belief, Hulu will continue to infringe the '545 patent as alleged in this Complaint unless enjoined by this Court.

99.    As a direct and proximate result of Hulu's infringement of the '545 Patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

100.    Hulu has actual notice of the '545 Patent owned by Ultramercial.

101.    Hulu has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.  For example, Hulu impermissibly utilizes Ultramercial's patented technology, including the use of the "three way screen", which it became aware of, in part, through Ultramercial presentations and demonstratives.  Furthermore, Hulu at all times knew that Ultramercial had filed for patent protection and later was informed when the '545 Patent issued.

102.    Hulu's infringement has been willful and deliberate, making this an exceptional case and justifying the award of treble damages pursuant to 35 U.S.C. §

LAWYERS
LOS ANGELES, CALIFORNIA

1    284 and attorneys' fees pursuant to 3.5 U.S.C. § 285.

2        103.    Unless a preliminary and permanent injunction are issued enjoining

3    Hulu, including its officers, agents, servants, and employees, and all persons acting in

4    concert with Hulu, from infringing the '545 Patent, Plaintiff will be greatly and

5    irreparably harmed.

6        104.    By reason of the above acts, Plaintiff is entitled to injunctive relief

7    enjoining and restraining Hulu, including its respective officers, agents, servants, and

8    employees, and all persons acting in concert with Hulu from further infringement of

9    the '545 Patent.

10                      **THIRD CLAIM FOR RELIEF**

11            **INFRINGEMENT OF U.S. PATENT NO. 7,346,545 B2**

12                       **(Against WildTangent)**

13        105.    Plaintiff incorporates herein by reference the allegations set forth in

14    paragraphs 1 - 67 of this Complaint as though fully set forth herein.

15        106.    Plaintiff Ultramercial is the exclusive assignee of the entire right, title,

16    and interest of the '545 Patent and has the right to bring this action to recover

17    damages for infringement of the '545 Patent.

18        107.    WildTangent has directly infringed and continues to directly infringe the

19    '545 Patent by making, using, offering to sell and/or use of one or more of the

20    claimed method for distribution of products covered by intellectual property

21    protection over the internet without authority or a license from Ultramercial.

22        108.    On information and belief, WildTangent will continue to infringe the

23    '545 Patent as alleged in this Complaint unless enjoined by this Court.

24        109.    As a direct and proximate result of WildTangent's infringement of the

25    '545 Patent, Plaintiff has been and continues to be damaged in an amount yet to be

26    determined.

27        110.    WildTangent has actual notice of the '545 Patent owned by Ultramercial.

28        111.    WildTangent  has not had, nor does it have a reasonable basis for

                                           -19-  **COMPLAINT FOR PATENT INFRINGEMENT**

754930.6

1  believing that it had or has the right to engage in the acts complained of herein.  For

2  example, WildTangent impermissibly utilizes Ultramercial's patented technology,

3  which it became aware of, in part, through Ultramercial communications and

4  presentations and by being a customer of Ultramercial for a brief period of time.

5  Furthermore, WildTangent at all times knew that Ultramercial had filed for patent

6  protection and later was informed when the '545 Patent issued.

7      112.    WildTangent's  infringement has been willful and deliberate, making this

8  an exceptional case and justifying the award of treble damages pursuant to 35 U.S.C.

9  § 284 and attorneys' fees pursuant to 3.5 U.S.C. § 285.

10      113.    Unless a preliminary and permanent injunction are issued enjoining

11  WildTangent, including its  officers, agents, servants, and employees, and all persons

12  acting in concert with WildTangent, from infringing the '545 Patent, Plaintiff will be

13  greatly and irreparably harmed.

14      114.    By reason of the above acts, Plaintiff is entitled to injunctive relief

15  enjoining and restraining WildTangent, including its respective officers, agents,

16  servants, and employees, and all persons acting in concert with WildTangent from

17  further infringement of the '545 Patent.

**PRAYER FOR RELIEF**

18

19      WHEREFORE, Plaintiff prays for judgment against each of the Defendants as

20  follows:

21      1.    For a judicial determination and declaration that each of the Defendants

22  has infringed and continues to infringe United States Patent No. 7,346,545 B2 by

23  making, using, offering to sell and/or use of the claimed methods for distribution of

24  products over the internet.

25      2.    For a judicial determination and decree that each of the Defendants'

26  infringement of United States Patent No. 7,343,545 B2 is willful;

27      3.    For damages resulting from each of the Defendants' past and present

28  infringement of United States Patent No. 7,343,545 B2 and the trebling of such

-20-  **COMPLAINT FOR PATENT INFRINGEMENT**

754930.6

1  damages because of the willful and deliberate nature of its infringement;

2      4.    For injunctive relief preliminarily and permanently enjoining against

3  further infringement of United States Patent No. 7,343,545 B2 by each of the

4  Defendants, its respective officers, directors, shareholders, agents, servants,

5  employees, and all other entities and individuals acting in concert with the enjoined

6  entities or on their behalf;

7      5.    For a declaration that this is an exceptional case under 35 U.S.C. § 285

8  and for an award of attorneys' fees and costs in this action;

9      6.    For an assessment of prejudgment interest; and

10      7.    For such other and further relief as the Court may deem just and proper

11  under the circumstances.

13  DATED:    September 23, 2009    HENNIGAN BENNETT & DORMAN LLP

15      By _____

16      Lawrence M. Hadley
    Attorneys for Plaintiff

17      ULTRAMERCIAL LLC

754930.6

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues in this lawsuit.

DATED: September 23, 2009                HENNIGAN BENNETT & DORMAN LLP


By _____
        Lawrence M. Hadley
Attorneys for Plaintiff
ULTRAMERCIAL LLC

754930.6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Paul L. Abrams.

The case number on all documents filed with the Court should read as follows:

## CV09- 6918 RGK (PLAx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

✎ AO 440 (Rev. 8/01) Summons in a Civil Action

ORIGINAL

# UNITED STATES DISTRICT COURT

## Central  District of  California

ULTRAMERCIAL LLC

**SUMMONS IN A CIVIL CASE**

V.

HULU, LLC
YOUTUBE, LLC
WILDTANGENT, INC..

CASE NUMBER:

## CV09 06918 RGK PLAx

TO: (Name and address of Defendant)

HULU, LLC  c/o AS-CSC- Lawyer's Incorporating Service  (Agent for Service of Process)
    2730 Gateway Oaks Dr., Ste. 100, Sacramento, CA 95833
    YOUTUBE, LLC c/o AS-CSC- Lawyer's Incorporating Service  (Agent for Service of Process)
    2730 Gateway Oaks Dr., Ste. 100, Sacramento, CA 95833

    WILDTANGENT, INC. c/o AS-CSC- Lawyer's Incorporating Service  (Agent for Service of Process)
    2730 Gateway Oaks Dr., Ste. 100, Sacramento, CA 95833

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Lawrence M. Hadley (SBN 157728)
865 S. Figueroa Street, Suite 2900
Los Angeles, CA  90017
Tel: (213) 694-1200
Fax: (213) 694-1234

an answer to the complaint which is served on you with this summons, within _____ twenty (20) _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this
Court within a reasonable period of time after service.

*Terry Nafisi*

SEP 2 3 2009

CLERK

**CHRISTOPHER POWERS**

(By) DEPUTY CLERK

DATE

2002 © American LegalNet, Inc.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| ULTRAMERCIAL LLC | HULU, LLC; YOUTUBE, LLC; WILDTANGENT, INC. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Lawrence M. Hadley (SBN 157728)<br>Hennigan, Bennett & Dorman LLP<br>865 S. Figueroa Street, Suite 2900<br>Los Angeles, CA 90017<br>213-694-1200 | COPY |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
35 U.S.C §§1 et. seq. - patent infringement

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☒ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: _____   CV09 06918

CIVIL COVER SHEET

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a). IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

VIII(b). RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

X. VENUE: (When completing the following information, use an additional sheet if necessary.)

a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Los Angeles | |

b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| HULU, LLC - County of Los Angeles<br>YOUTUBE, LLC- County of  Los Angeles<br>WILDTANGENT, LLC- County of Los Angeles | |

c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| All claims arose in the County of Los Angeles | |

Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____    Date September 23, 2009
Lawrence M. Hadley

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

CV-71 (05/08)                CIVIL COVER SHEET                Page 2 of 2
58738

American LegalNet, Inc.<br>www.FormsWorkflow.com