1   RICHARD G. FRENKEL (State Bar No. 204133)
    rfrenkel@wsgr.com
2   LISA K. NGUYEN (State Bar No. 244280)
    lnguyen@wsgr.com
3   WILSON SONSINI GOODRICH & ROSATI
    650 Page Mill Road
4   Palo Alto, CA  94304-1050
    Telephone:  (650) 493-9300
5   Facsimile:  (650) 565-5100

6   Attorneys for Defendant
    WILDTANGENT, INC.
7

8   (additional counsel listed on signature page)

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  ULTRAMERCIAL, LLC;                Case No. CV 09-06918 RGK (PLAx)
    ULTRAMERCIAL, INC.,
13                                    **DEFENDANTS' MOTION TO**
              Plaintiffs,             **DISMISS UNDER *BILSKI***
14
                                      Date:  Tuesday, February 16th, 2010
15        v.                          Time:  9:00 a.m.
                                      Courtroom: Roybal Bldg., Ctrm 850
16  HULU, LLC; YOUTUBE, LLC;          Judge: Hon. R. Gary Klausner
    WILDTANGENT INC.,
17
18            Defendants.
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ........................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I.   INTRODUCTION .................................................................................... 1

II.  STATEMENT OF FACTS ........................................................................ 2

III. LEGAL STANDARD ............................................................................... 4

  A. A Motion to Dismiss is the Proper Framework to Evaluate the Legal Sufficiency of Ultramercial's Complaint .................................... 4

  B. Patent-Eligible Subject Matter is Analyzed Under the Machine-or-Transformation Test of *Bilski* ...................................................... 5

IV. THE '545 PATENT IS INVALID UNDER 35 U.S.C. § 101 BECAUSE IT IS NOT DRAWN TO PATENT-ELIGIBLE SUBJECT MATTER ........................................................................................................ 5

  A. The Claims Of The '545 Patent Do Not Satisfy The "Machine" Test ...................................................................................................... 6

    1. Claims 1-15 do not satisfy the "machine" test ........................... 6

    2. Claim 16 does not satisfy the "machine" test ............................. 9

  B. The Claims Of The '545 Patent Do Not Satisfy The "Transformation" Test ...................................................................... 11

    1. There is no change of an article to a different state in the '545 patent ............................................................................. 11

    2. Displaying intellectual property over the Internet is not a *Bilski* transformation ............................................................ 12

V.  CONCLUSION ...................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................4

*CyberSource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068
    (N.D. Cal. 2009) ............................................................7, 8, 11, 12

*DealerTrack, Inc. v. Huber*, __ F. Supp. 2d __, 2009 WL 2020761
    (C.D. Cal. Jul. 7, 2009) .................................................................8

*Every Penny Counts, Inc. v. Bank of Am. Corp.*, No. 2:07-cv-42 (M.D.
    Fla. May 27, 2009) .......................................................................8

*Ex parte Aoyama*, No. APL 2009-006755, 2009 WL 4001920 (B.P.A.I.
    Nov. 17, 2009)..............................................................................9

*Ex parte Enenkel*, No. APL 2008-2239, 2009 WL 924475 (B.P.A.I.
    Apr. 6, 2009).................................................................................8

*Ex parte Forman*, No. APL 2008-005348, 2009 WL 2563527 (B.P.A.I.
    Aug. 17, 2009)..............................................................................9

*Ex parte Halligan*, 89 U.S.P.Q.2d 1355, 2008 WL 4998541 (B.P.A.I.
    Nov. 24, 2008)..............................................................................9

*Ex parte Hindman*, No. APL 2009-010729, 2009 WL 4004984
    (B.P.A.I. Nov. 18, 2009) .............................................................13

*Ex parte Mitchell*, No. APL 2008-2012, 2009 WL 460662 (B.P.A.I.
    Feb. 23, 2009)............................................................................10

*Ex parte Myr*, No. APL 2009-005949, 2009 WL 3006497 (B.P.A.I.
    Sept. 18, 2009)...........................................................................10

*Fuzzysharp Techs., Inc. v. 3D Labs Inc.,* Case No. C 07-5948 (N.D.
    Cal. Dec. 11, 2009).......................................................................9

*Gottschalk v. Benson*, 409 U.S. 63 (1972)..........................................................8

*Havoco of Am., Ltd. v. Shell Oil Co.*, 626 F.2d 549 (7th Cir. 1980) ........................4

*In re Abele*, 684 F.2d 902 (C.C.P.A. 1982) ........................................................12

*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008), *cert. granted*, 77 U.S.L.W. 3442 (U.S. Jun. 1, 2009)...........................................................*passim*

*In re Comiskey*, 554 F.3d 967 (Fed. Cir. 2009)........................................5

*In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009) ...........................6

*Ott v. Home Sav. & Loan Assoc'n*, 265 F.2d 643 (9th Cir. 1958)...........4

*Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729 (9th Cir. 1987)...........................................................................................4

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)...........4

*Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750 (7th Cir. 2002)...........................................................................................4

**Statutes**

35 U.S.C. § 101................................................................................5, 13

**Rules**

Federal Rule of Civil Procedure 12(b)(6)....................................1, 2, 4, 5

Local Rule 7-3 ....................................................................................1

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 16, 2010, at 9:00 a.m., or as soon thereafter as this matter may be heard by the above-entitled Court, located at 255 East Temple Street, Los Angeles, California 90012, Defendants WildTangent, Inc. ("WildTangent"), YouTube, LLC ("YouTube"), and Hulu, LLC ("Hulu") (collectively, "Defendants") will, and hereby do, move for an order dismissing Plaintiffs' First Amended Complaint without leave to amend. Defendants' motion to dismiss Plaintiffs' First Amended Complaint is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs' First Amended Complaint on its face fails to state a claim upon which relief may be granted.

This motion is based on the Memorandum of Points and Authorities, Plaintiffs' First Amended Complaint, the Declaration of Richard G. Frenkel and the [Proposed] Order submitted here, and such further papers and argument as may be submitted to the Court in connection with this motion. This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on December 16, 2009.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The single patent at issue in this case is invalid based on the recent, landmark decision *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008), *cert. granted*, 129 S. Ct. 2735 (2009). The *Bilski* decision confirmed that methods of doing business are ineligible for patent protection unless they are limited by being tied to a particular machine or transformation. Using this "machine-or-transformation" test, the Federal Circuit invalidated a method of hedging business risk. *Bilski* also controls the result here, where the patent covers a method of Internet advertising.

Following the *Bilski* decision, and as discussed more fully below, both district courts and the United States Patent Office Board of Patent Appeals &

Interferences ("BPAI") have applied and explained the *Bilski* "machine-or-transformation" test.  In doing so, the courts and the BPAI have clarified that being tied to a particular machine means more than merely tying a method of doing business to a general purpose computer or memory, or using the method over "the Internet."  The courts and the BPAI have also explained that to transform an article, a patentable process must actually change the state of something representing a tangible object; it is insufficient to manipulate intangible obligations and relationships.  And they have repeatedly rejected and invalidated claims that fail that test.

Without question, the sole patent asserted in this case by Plaintiffs Ultramercial, LLC and Ultramercial, Inc. (collectively, "Ultramercial"), U.S. Patent No. 7,346,545 ("the '545 patent") is invalid under *Bilski* and its progeny. The '545 patent, which was issued by the Patent Office in the months before the *Bilski* decision and without the benefit of that decision, is directed to nothing more than a business method that involves distributing over the Internet intellectual property content to users who are willing to watch an advertisement, thus obviating the need for the users to otherwise pay for access to the intellectual property. There is no particular machine claimed in any of the claims of the '545 patent, and the claims do not transform anything representing or constituting a physical object.

Accordingly, and as a matter of law, the claims of the '545 patent are not drawn to patent-eligible subject matter.  Ultramercial's Internet advertising business method patent fails to state a claim upon which relief can be granted in light of the Federal Circuit's *en banc* decision in *Bilski*, and its complaint must therefore be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## II.   STATEMENT OF FACTS

As Defendants' motion is based solely on the Ultramercial '545 patent, and as that patent is incorporated into Ultramercial's First Amended Complaint

1   ("FAC") (Docket Entry 12), the Court need not look beyond the four corners of the

2   FAC to grant Defendants' motion to dismiss.

3       Ultramercial's FAC asserts that WildTangent, Hulu, and YouTube have

4   infringed and are continuing to infringe unspecified claims of the '545 patent.

5   FAC ¶¶ 85-114.  The '545 patent issued on March 18, 2008 (more than seven

6   months before the Federal Circuit's *Bilski* decision).  *Id.* ¶ 9.

7       The '545 patent is directed to a method of distributing intellectual property

8   products over the Internet.  *See* FAC, Exh. 1 (the '545 patent) at Abstract.  The

9   '545 patent contains sixteen method claims: independent claims 1 and 8, and

10  dependent claims 2-7 and 9-16.  The two independent claims recite a "method for

11  distribution of products over the Internet via a facilitator."  '545 patent at 8:5-48;

12  9:1-10:9.  All sixteen claims may be found in the FAC ('545 patent at col. 8-10),

13  reproduced in Appendix A, pages 16-18 of this brief.

14      The claims generally recite steps for a consumer to watch an advertisement

15  over the Internet.  By agreeing to watch an advertisement, the consumer receives

16  for free intellectual property content that the consumer would otherwise have to

17  purchase.  This "watch-or-pay" business method of distributing content over the

18  Internet is the core of both independent claims of the '545 patent.  Dependent

19  claims 2-7 and 9-15 merely add extra steps to the methods claimed in claims 1 and

20  8, such as issuing or verifying passwords and paying royalties to the content

21  provider.  Remaining dependent claim 16 adds that the intellectual property

22  content is "downloaded to the memory of a personal computer," a generic

23  computer available to the consumer.  '545 patent at 10:32-33.  The method

24  described in claim 16 does not define how the content is downloaded into the

25  computer or how it modifies the structural form of the computer.

26

27

28

## III.   LEGAL STANDARD

### A.   A Motion to Dismiss is the Proper Framework to Evaluate the Legal Sufficiency of Ultramercial's Complaint

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the plaintiff's claims.  Under Rule 12(b)(6), a complaint must be dismissed if the plaintiffs have not pled "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

Rule 12(b)(6) exists, in part, to prevent litigation from moving forward when a plaintiff states a facially defective claim.  "The purpose of F.R.Civ.P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery."  *Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir. 1987).  Indeed, the Ninth Circuit has stated that "if the allegations of the complaint fail to establish the requisite elements of the cause of action, our requiring costly and time consuming discovery and trial work would represent an abdication of our judicial responsibility."  *Id.* (quoting *Havoco of Am., Ltd. v. Shell Oil Co.*, 626 F.2d 549, 553 (7th Cir. 1980)).

In considering a motion to dismiss, courts may consider material attached as exhibits to the complaint.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (stating rules and examining exhibit to complaint).  Moreover, "where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim."  *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (reaffirming "well-settled rule that when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations."); *see also Ott v. Home Sav. & Loan Assoc'n*, 265 F.2d 643, 648 n.1 (9th Cir. 1958) (stating same rule).

1   Here, there is no reason to force the parties to go through the expense of

2   litigation when no evidence beyond the face of the patent is necessary to conclude

3   that the complaint is legally deficient.

4   **B.   Patent-Eligible Subject Matter is Analyzed Under the Machine-or-Transformation Test of *Bilski***

5

6   The question of patentable subject matter is a threshold question.  *Bilski*, 545

7   F.3d at 950.  To be eligible for patentability, a claim must be drawn to patent-

8   eligible subject matter under 35 U.S.C. § 101.  Section 101 provides:  "Whoever

9   invents or discovers any new and useful process, machine, manufacture, or

10  composition of matter, or any new and useful improvement thereof, may obtain a

11  patent therefor, subject to the conditions and requirements of this title."  Whether a

12  claim is drawn to patent-eligible subject matter under § 101 is an issue of law that

13  is a threshold inquiry into a patent's validity.  *Id.*; *see also In re Comiskey*, 554

14  F.3d 967, 975 (Fed. Cir. 2009) (*sua sponte* reviewing whether claims on appeal are

15  patent-eligible subject matter instead of reviewing the invalidity decision below).

16  And any claim failing the requirements § 101 "must be rejected even if it meets all

17  of the other legal requirements of patentability."  *Bilski*, 545 F.3d at 950.

18  In *Bilski*, the *en banc* Federal Circuit rejected its prior formulations of

19  patent-eligible subject matter and reaffirmed that "the proper inquiry under § 101 is

20  . . . whether the claim meets the machine-or-transformation test."  *Bilski*, 545 F.3d

21  at 961.  "The machine-or-transformation test is a two-branched inquiry; an

22  applicant may show that a process claim satisfies § 101 either by showing that his

23  claim is tied to a particular machine, or by showing that his claim transforms an

24  article."  *Id.*

25  **IV.   THE '545 PATENT IS INVALID UNDER 35 U.S.C. § 101 BECAUSE IT IS NOT DRAWN TO PATENT-ELIGIBLE SUBJECT MATTER**

26

27  Ultramercial's FAC can and should be dismissed in light of *Bilski* under

28  Rule 12(b)(6) because Ultramercial did not claim a machine or transformation.

### A. The Claims Of The '545 Patent Do Not Satisfy The "Machine" Test

To satisfy the "machine" part of the *Bilski* test, a claim must first be "tied to a *particular* machine" or a "*specific* machine or apparatus." *Bilski*, 545 F.3d at 961-62 (emphases added). A "machine" is a "concrete thing, consisting of parts, or of certain devices and combination of devices." *In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009) (internal quotation marks omitted). Under the machine prong of the *Bilski* test, determining whether an invention is tied to a particular machine is a threshold test, without which there is no patent eligibility under the machine prong.

Even if the threshold machine test is satisfied, the Court must look at two other additional considerations: (1) whether the involvement of the machine in the claimed process is not insignificant, and (2) whether the use of the specific machine or transformation imposes meaningful limits on the claim's scope. *Bilski*, 545 F.3d at 961-62. The '545 patent fails all aspects of the machine prong of the *Bilski* test.

#### 1. Claims 1-15 do not satisfy the "machine" test

Claims 1-15 fail even to meet the threshold requirement of the "machine" test because the claims fail to recite or refer to any particular machine. Each and every claim of the '545 patent is directed to a "method for distribution of products over the Internet via a facilitator." *See* '545 patent at 8:1-10:33. In other words, the method is performed by the facilitator. There is no question that the facilitator is untied to any particular machine or apparatus.

According to the '545 patent, the facilitator is an unspecified entity generally described as a person. The '545 patent explains that the facilitator may "communicate through a two-way communications path 52, which may include telephony, facsimile, courier, mail or even person-to-person meetings." '545

1   patent at 3:48-50.  Indeed, the figures of the '545 patent illustrate the facilitator as

2   a person.



8   '545 patent at fig. 1, item 10.

9        The description of the facilitator as a person, whether or not merely an

10  example, provides conclusive evidence that the claims of the '545 patent are not

11  necessarily tied to a particular machine.  A person could perform each and every

12  step of claims 1-15, and Ultramercial could nevertheless presumably argue that the

13  person had infringed the claims without the use of any particular machine.

14       The fact that the Internet is the medium on which the patented method is

15  performed does nothing to salvage the patent.  In *CyberSource Corp. v. Retail*

16  *Decisions, Inc.*, 620 F. Supp. 2d 1068 (N.D. Cal. 2009), the court was specifically

17  "presented with the question of whether recitation of 'over the Internet' suffices to

18  tie a process claim to a particular machine."  *Id.* at 1077.  The court found that it

19  did not meet any of the requirements of *Bilski*.

20       First, the court explained that "the internet is an abstraction."  *Id.*  "One can

21  touch a computer or a network cable, but one cannot touch 'the internet.'"  *Id.*

22  Second, even if the Internet is considered to be a machine implementation, the

23  involvement of the Internet is insignificant.  Just as "[a]n unpatentable

24  mathematical theorem does not become patentable by virtue of a claim limitation

25  stating that the theorem can be usefully applied to surveying techniques . . .

26  [s]imilarly, an unpatentable mental process for collecting data and weighing values

27  does not become patentable by tossing in references to internet commerce."  *Id.*

28  Third, "the use of the internet does not impose meaningful limits on the scope of

1   the claims." *Id.*  The court explained that the limitation of a fundamental mental

2   process to the area of online transactions is not meaningful.  *Id.* at 1078.

3       Moreover, simply because the process at issue requires machines or

4   computers to work, does not mean that the process or system is tied to a particular

5   machine.  *Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972); *see also Ex parte*

6   *Enenkel*, No. APL 2008-2239, 2009 WL 924475, at *6 (B.P.A.I. Apr. 6, 2009)

7   (finding that a claim that could require the use of a computer is not automatically

8   directed to statutory subject matter).  *Bilski* emphasized that the mere use of a

9   machine in a claimed process is not particularly relevant in determining whether

10  that process is patent-eligible.  *Bilski*, 545 F.3d at 962.  Instead, the claim must be

11  tied to a particular machine, and the machine's involvement must not be

12  insignificant and must impose meaningful limits on the claim's scope.

13      In fact, a court in this district invalidated computer-implemented patent

14  claims as invalid under *Bilski* after finding that those claims did not "require the

15  use of a *particular* machine."  *DealerTrack, Inc. v. Huber*, ___ F. Supp. 2d ____,

16  2009 WL 2020761 (C.D. Cal. Jul. 7, 2009) (emphasis added).  In *DealerTrack*, the

17  claims recited a "'computer aided method' of managing a credit application."  *Id.*

18  at *1.  The patentee claimed that the inclusion of "remote funding source terminal

19  devices" and a "remote application entry and display device" was sufficient

20  structure.  *Id.*  Judge Guilford, however, rejected the claims after reviewing recent

21  Patent Office and district court decisions holding that "claims reciting the use of

22  general purpose processors or computers do not satisfy the [*Bilski*] test."  *Id.* at *3

23  (citing *CyberSource*, 620 F. Supp. 2d at 1077); *see also Every Penny Counts, Inc.*

24  *v. Bank of Am. Corp.*, No. 2:07-cv-42, slip op. at 4 (M.D. Fla. May 27, 2009)

25  (attached as Exhibit 1 to the Declaration of Richard G. Frenkel ("Frenkel Decl."),

26  filed concurrently) (citing *Gottschalk v. Benson*, 409 U.S. at 71-72).  Allowing the

27  recitation of a general purpose computer in combination with purely functional

28  steps would "exalt form over substance" and permit preemption of fundamental

1  principles by the mere addition of a "computer." *Ex parte Halligan*, 89 U.S.P.Q.2d

2  1355, 1365 (B.P.A.I. 2008).

3       In the present case, claims 1-15 of the '545 patent do not recite processors,

4  general purpose computers, or, in fact, any type of machine. Each of the steps

5  recited in claims 1-15 receives and generates data, but "[t]he steps do not recite any

6  machine or algorithm for receiving and generating such data," and therefore "fail

7  the first prong of the machine-or-transformation test . . . ." *Ex parte Aoyama*, No.

8  APL 2009-006755, 2009 WL 4001920, at *5 (B.P.A.I. Nov. 17, 2009) (concluding

9  that claims drawn to method of supply chain management were invalid under

10  *Bilski*). And, as in *Aoyama*, although the steps may require the use of equipment,

11  "no such equipment is recited in the claims." *Id.* Ultimately, "these claims do not

12  limit the process steps to any specific machine or apparatus," and thus, fail the

13  machine prong, without having to address the two other considerations. *Id.*

14       **2.    Claim 16 does not satisfy the "machine" test**

15       Remaining claim 16 also fails the "machine" test. The method described in

16  claim 16 includes the element "wherein the media product accessed by the

17  consumer is downloaded to a memory of a personal computer." But claim 16

18  would allow this element to be satisfied by any computer available to the user: it

19  does not require a particular or specific computer implementing an algorithm or

20  design described in the patent. '545 patent at 10:31-33. This is thus at best merely

21  the recitation of a general purpose computer and does not tie the claim to a

22  particular computer as required under *Bilski*. "[T]he mere fact that a claim

23  references the use of a computer is, standing alone, insufficient to meet the

24  machine implementation requirement." *Fuzzysharp Techs., Inc. v. 3D Labs Inc.*,

25  Case No. C 07-5948, slip op. at 7 (N.D. Cal. Dec. 11, 2009) (Frenkel Decl. Exh.

26  2); *see also Ex parte Forman*, No. APL 2008-005348, 2009 WL 2563527, at *6

27  (B.P.A.I. Aug. 17, 2009) ("[S]uch a nominal recitation of physical structure

28  tantamount to a general purpose computer is analogous to storing binary coded

1   decimal signals in a shift register that the U.S. Supreme Court found to be
2   unpatentable.").

3       However, even assuming *arguendo* that claim 16 meets the threshold
4   requirement of the "machine" prong, the two other considerations are not met (see
5   *supra* at 6).  First, the computer referenced in claim 16 is merely an "insignificant
6   extra-solution."  *Bilski*, 545 F.3d at 957-58 n.14.  The mere storage of data on a
7   personal computer as recited in claim 16 amounts to nothing more than exactly the
8   kind of extraneous "post-solution activity" that the BPAI has indicated is
9   "insignificant" for the purposes of the machine prong of the *Bilski* test.  *Ex parte*
10  *Myr*, No. APL 2009-005949, 2009 WL 3006497, at *9 (B.P.A.I. Sept. 18, 2009)
11  (computer-implemented steps for gathering data are, "at best, post-solution
12  activity, [and] do not impose meaningful limits on the claim's scope.").  The
13  recitation of computer memory in combination with the claimed method is not
14  significant enough to transform the claim into patentable subject matter.

15      Second, claim 16 also fails the other consideration of the "machine" prong
16  because it does not "impose meaningful limits on the claim's scope."  *Bilski*, 545
17  F.3d at 961-62.  The computer referenced in claim 16 is merely used to store the
18  downloaded media product.  It imposes no limit at all on the claim's scope because
19  computer memory is inherently used to store data that is downloaded to or
20  accessed by a consumer.  "Limiting the claim to part of a system comprising a
21  'processor' and 'memory' does not add any practical limitation to the scope of the
22  claim."  *Ex parte Mitchell*, No. APL 2008-2012, 2009 WL 460662, at *6 (B.P.A.I.
23  Feb. 23, 2009).  Thus, the general purpose computer recited in claim 16 is
24  insufficient to meet the *Bilski* machine prong.

25

26

27

28

**B.      The Claims Of The '545 Patent Do Not Satisfy The "Transformation" Test**

      **1.      There is no change of an article to a different state in the '545 patent**

To satisfy the "transformation" prong of the machine-or-transformation test, a claim must involve "the transformation of any physical object or substance, or an electronic signal representative of any physical object or structure." *Bilski*, 545 F.3d at 964.  The transformation must be a change of an "article into a different state or thing." *Id.* at 961.  Just as with the machine prong, this transformation must not merely be insignificant activity; rather, it "must be central to the purpose of the claimed process." *Id.* at 962.  Similarly, the transformation of an article must impose meaningful limits on the claim's scope. *Id.* at 961.  Claims directed to business methods that involve no transformation of physical objects or electronic signals representing physical objects fail this test. *Id.* at 964.

There is no such transformation in the claims of the '545 patent.  The claims generally describe allowing consumers to view a sponsor's message over the Internet, in exchange for receiving intellectual property (such as an MP3 music file or a video file) for which they would otherwise have to pay.  This process does not change any physical object or manipulate electronic signals representing physical objects.  Nothing changes; a message is displayed, intellectual property is displayed, and a log recording the number of times a message is displayed is incremented.

Courts have considered and rejected claims like those in the '545 patent for precisely this reason.  For example, in *Cybersource*, Judge Patel considered whether the manipulation of credit card numbers could be the transformation of electronic signals representing physical objects and concluded there was no transformation under *Bilski*.  Judge Patel correctly recognized that the numbers represented only legal obligations, not the physical credit cards. *Cybersource*, 620

F. Supp. 2d at 1074.  Similarly, there are no "electronic signals" representing physical objects in the '545 patent that undergo any kind of state change.

### 2. Displaying intellectual property over the Internet is not a *Bilski* transformation

The process of receiving permissions and payment for the display of intellectual property over the Internet is not an eligible transformation.  *Bilski* squarely rejected the notion that the modification of legal obligations or other relationships qualified for patent protection.  "Purported transformations or manipulations simply of public or private legal obligations or relationships, business risks, or other such abstractions cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances."  *Bilski*, 545 F.3d at 963.  *Bilski* also rejected the argument that a method of hedging business risk "transform[ed] the relationships between the commodity provider, the consumers and market participants . . . ."  *Id.* at 964.  These types of transactions simply do not meet the machine-or-transformation test because they do not "involve the transformation of any physical object or substance, or an electronic signal representative of any physical object or substance."  *Id.*  Any potential modification of the relationship between a content provider, an advertiser, and a viewer in the claims of the '545 patent fails this test.

The mere act of transmitting content over the Internet also fails the transformation test.  There is nothing transformative about simply transmitting data without changing its state.  The Federal Circuit stated so in *Bilski*; a transformation must "transform[] an article into a *different* state or thing."  545 F.3d at 962 (emphasis added).  For example, in *Bilski*, the Federal Circuit compared two claims discussed in *In re Abele*, 684 F.2d 902 (C.C.P.A. 1982), a broad independent claim that was not directed to patentable subject matter, and a narrower dependent claim that was so directed.  The non-transformative claim merely recited a process for "graphically displaying" data without any change or manipulation to the data, and

the Federal Circuit commented that such a claim was properly unpatentable. *Bilski*, 545 F.3d at 962-63.  On the other hand, where the data was narrowly described as being *changed* into a particular format through a particular process – "X-ray attenuation data produced in a two dimensional field by a computed tomography scanner" – then such a change was indeed the kind of transformation that survived § 101.  *Id.*

Finally, there is no transformation of the intellectual property described in the claims of the Ultramercial patent.  The intellectual property content is merely provided to the customer.  This is the opposite of the "transformation" required by *Bilski*.  *See also Ex Parte Hindman*, No. APL 2009-010729, 2009 WL 4004984, at *4 (B.P.A.I. Nov. 18, 2009) ("[W]e fail to see how the pool data is transformed, and Appellants do not identify any transforming step in the claim.  Claim 1 recites data-gathering steps (receiving user input, obtaining information) and the step of providing the projected effect, but the claim does not specify how, or even whether the pool data is utilized.").

## V.   CONCLUSION

The '545 patent is a business method patent, relating to certain advertising methods on the Internet.  The patent claims, however, do not recite patentable subject matter as required by 35 U.S.C. § 101 and fail the machine-or-transformation test.  To allow Ultramercial to continue to assert the '545 patent would be contrary to the Federal Circuit's *en banc* decision in *Bilski*.  For this and the other foregoing reasons, the court should grant Defendants' motion to dismiss Ultramercial's First Amended Complaint for failure to state a claim.

| | |
|---|---|
| 1 | DATED:  December 23, 2009 |
| 2 | |

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Richard G. Frenkel*

Richard G. Frenkel (SBN 204133)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304
Telephone:  (650) 493-9300
Facsimile:  (650) 565-5100
rfrenkel@wsgr.com

Attorneys for Defendant
WILDTANGENT, INC.

DATED:  December 23, 2009

COOLEY GODWARD KRONISH LLP

*/s/ Timothy S. Teter*

Timothy S. Teter (SBN 171451)
COOLEY GODWARD KRONISH LLP
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:  (650) 843-5275
Facsimile:  (650) 857-0663
teterts@cooley.com

Attorneys for Defendant
YOUTUBE, LLC

DATED:  December 23, 2009

O'MELVENY & MYERS LLP

*/s/ Darin Snyder*

Darin Snyder (SBN 136003)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: (415) 984-8811
Facsimile: (415) 984-8701
dsnyder@omm.com

Attorneys for Defendant
HULU, LLC

-14-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIGNATURE ATTESTATION

I hereby attest that I have received Timothy S. Teter and Darin Snyder's concurrence in the e-filing of this document as indicated by the "conformed" signature (/s/) above.

/s/ *Richard G. Frenkel*
Richard G. Frenkel

# APPENDIX A: ULTRAMERCIAL '545 PATENT CLAIMS

1. A method for distribution of products over the Internet via a facilitator, said method comprising the steps of:

a first step of *receiving*, from a content provider, media products that are covered by intellectual-property rights protection and are available for purchase, wherein each said media product being comprised of at least one of text data, music data, and video data;

a second step of *selecting* a sponsor message to be associated with the media product, said sponsor message being selected from a plurality of sponsor messages, said second step including accessing an activity log to verify that the total number of times which the sponsor message has been previously presented is less than the number of transaction cycles contracted by the sponsor of the sponsor message;

a third step of *providing* the media product for sale at an Internet website;

a fourth step of *restricting* general public access to said media product;

a fifth step of *offering* to a consumer access to the media product without charge to the consumer on the precondition that the consumer views the sponsor message;

a sixth step of *receiving* from the consumer a request to view the sponsor message, wherein the consumer submits said request in response to being offered access to the media product;

a seventh step of, in response to receiving the request from the consumer, *facilitating* the display of a sponsor message to the consumer;

an eighth step of, if the sponsor message is not an interactive message, *allowing* said consumer access to said media product after said step of facilitating the display of said sponsor message;

a ninth step of, if the sponsor message is an interactive message, *presenting* at least one query to the consumer and allowing said consumer access to said media product after receiving a response to said at least one query;

a tenth step of *recording* the transaction event to the activity log, said tenth step including updating the total number of times the sponsor message has been presented; and

an eleventh step of *receiving* payment from the sponsor of the sponsor message displayed.

2.   The method for distribution of products of claim 1, further comprising the step of *paying* royalties to the content provider.

3.   The method for distribution of products of claim 1, further comprising the step of *entering* into a license agreement with the owner of the intellectual property rights associated with said media product.

4.   The method for distribution of products of claim 1, further comprising the step of *barring* the content provider from pretending to be said consumer.

5.   The method for distribution of products of claim 1, further comprising the step of *tendering* payment to the content provider by said facilitator.

6.   The method for distribution of products of claim 1, further comprising the step of *issuing* to said consumer a password.

7.   The method for distribution of products of claim 1, further comprising the step of *verifying* a submitted password.

8. A method for distribution of products over the Internet via a facilitator, said method comprising the steps of:

a first step of *providing* a product list on an Internet website, wherein at least some of the products are media products covered by intellectual property rights protection and are available for purchase, said media products being provided by content providers, wherein each said media product is comprised of at least one of text data, sound data, and video data;

a second step of *selecting* a sponsor message to be associated with at least one of said media products, said sponsor message being selected from a plurality of sponsor messages, said second step including accessing an activity log to verify that the total number of times which the sponsor message has been previously presented is less than the number of transaction cycles contracted by the sponsor of the sponsor message;

a third step of *restricting* general public access to said media products;

a fourth step of *offering* to a consumer access to a requested media product available for purchase without charge to the consumer on the precondition that the consumer views the sponsor message;

a fifth step of *receiving* from the consumer a request to view a sponsor message in response to said step of offering;

a sixth step of *facilitating* the display of a sponsor message to the consumer in response to receiving the request;

a seventh step of, if the sponsor message is not an interactive message, *allowing* said consumer access to said requested media product after said step of facilitating the display of said sponsor message;

an eighth step of, if the sponsor message is an interactive message, *presenting* at least one query to the consumer and allowing said consumer access to said media product after receiving a response to said at least one query;

a ninth step of *recording* the transaction event to the activity log, said ninth step including updating the total number of times the sponsor message has been presented; and

a tenth step of *receiving* payment from the sponsor of the sponsor message displayed.

9.   The method for distribution of products of claim 8, further comprising the step of *tendering* payment to the content provider by said facilitator.

10.   The method for distribution of products of claim 8, further comprising the step of *issuing* to said consumer a password.

11.   The method for distribution of products of claim 8, further comprising the step of *verifying* a password submitted by said consumer.

12.   The method for distribution of products of claim 8, further comprising the step of *licensing* from a content provider the right to distribute said media products.

13.   The method for distribution of products of claim 8, further comprising the step of *authoring* a sponsor message.

14.   The method for distribution of products of claim 8, further comprising the step of *offering* an advertiser the option to exhibit an advertising message on said Internet web site.

15.   The method for distribution of products of claim 8, further comprising the step of *barring* the content provider from pretending to be said consumer.

16.   The method of claims 1 or 8, wherein the media product accessed by the consumer is downloaded to a memory of a personal computer of the consumer.