LAWRENCE M. HADLEY (SBN 157728)
hadleyl@hbdlawyers.com
HAZIM ANSARI (SBN 190601)
ansarih@hbdlawyers.com
MIEKE K. MALMBERG (SBN 209992)
malmbergm@hbdlawyers.com
HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:   (213) 694-1200
Facsimile:   (213) 694-1234

Attorneys for Plaintiffs
ULTRAMERCIAL, LLC and
ULTRAMERCIAL, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULTRAMERCIAL, LLC; ULTRAMERCIAL, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> HULU, LLC; YOUTUBE, LLC; WILDTANGENT, INC., <br><br> Defendants. | Case No. CV 09-06918 RGK (PLAx) <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER *BILSKI*** <br><br><br> Date:      February 16, 2010 <br> Time:      9:00 a.m. <br> Ctrm:      850 <br> Judge:    Honorable R. Gary Klausner |

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................1

II.  THE CONTENT DISTRIBUTION INVENTION OF
     ULTRAMERCIAL'S '545 PATENT............................................3

III. LEGAL STANDARDS ...........................................................4

     A.   DEFENDANTS' BURDEN OF PROVING INVALIDITY ...............4

     B.   STANDARD FOR PATENTABILITY UNDER 35 U.S.C. § 101 ......5

IV.  DEFENDANTS' MOTION TO INVALIDATE EACH CLAIM OF THE
     '545 PATENT ON A MOTION TO DISMISS IS PROCEDURALLY
     IMPROPER AND PREMATURE ................................................6

     A.   PATENT CLAIMS CANNOT BE INVALIDATED ON A
          MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM .......6

     B.   PATENT CLAIMS CANNOT BE ADJUDICATED FOR
          COMPLIANCE WITH THE PATENT ELIGIBILITY
          STANDARD UNTIL THEIR TERMS HAVE BEEN
          CONSTRUED ............................................................7

V.   DEFENDANTS DO NOT PROVE BY CLEAR AND CONVINCING
     EVIDENCE THAT ANY CLAIMS OF THE '545 PATENT ARE
     PATENT-INELIGIBLE UNDER 35 U.S.C. § 101......................11

     A.   THE CLAIMS OF THE '545 PATENT DO NOT PREEMPT THE
          USE OF ANY FUNDAMENTAL PRINCIPLE OR METHOD OF
          DOING BUSINESS ON THE INTERNET USING A GENERAL
          PURPOSE COMPUTER................................................11

     B.   THE '545 PATENT CLAIMS SATISFY BOTH THE
          "MACHINE" AND "TRANSFORMATION" PRONGS OF THE
          *BILSKI* TEST.........................................................12

          1.   Each Claim Satisfies the *Bilski* "Machine" Prong .................12

          2.   Each Claim of the '545 Patent Satisfies the *Bilski*
               "Transformation" Prong .......................................19

VI.  CONCLUSION...................................................................20

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-i-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
                                                    TO DISMISS UNDER BILSKI

## TABLE OF AUTHORITIES

Page

### Cases

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*
98 F.3d 1563 (Fed. Cir. 1996) ............................................................... 9

*Bristol-Meyers Squibb Co. v. Ben Venue Labs., Inc.*
286 F.3d 1368 (Fed. Cir. 2001) .............................................................. 5

*Cervantes v. United States*
330 F.3d 1186 (9th Cir. 2003) ............................................................... 7

*Cybersource Corp. v. Retail Decision, Inc.*
620 F. Supp. 2d 1075 (N.D. Cal. 2009) ................................................ 19

*DealerTrack, Inc. v. Huber*
2009 U.S. Dist. LEXIS 58125 (C.D. Cal. July 7, 2009) ............................. 8, 13, 19

*Diamond v. Chakrabarty*
447 U.S. 303 (1980) ............................................................................ 5

*Diamond v. Diehr*
450 U.S. 175 (1981) ............................................................................ 5

*Gottschalk v. Benson*
409 U.S. 63 (1972) ............................................................................ 13

*Grooms v. Legge*
U.S. Dist. LEXIS 58818 (S.D. Cal. July 8, 2009) .................................... 7

*Harrington Mfg. Co. v. Powell Mfg. Co.*
815 F.2d 1478 (Fed. Cir. 1986) .............................................................. 5

*In re Abele*
684 F.2d 902 (C.C.P.A. 1982) ............................................................. 20

*In re Alappat*
33 F.3d 1526 (Fed. Cir. 1994) ............................................................. 13

*In re Am. Academy of Science Tech. Ctr.*
367 F.3d 1359 (Fed. Cir. 2004) ........................................................... 10

*In re Bilski*
545 F.3d at 943 (Fed. Cir. 2008), *cert granted*, 77 U.S.L.W. 3442
(U.S. June 1, 2009) ..................................................................... passim

*Medrad, Inc. v. MRI Devices Corp.*
401 F.3d 1313 (Fed. Cir. 2005) ............................................................. 8

*Modine Mfg. Co. v. ITC*
75 F.3d 1545 (Fed. Cir. 1996) ............................................................. 10

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-ii-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS UNDER BILSKI

## TABLE OF AUTHORITIES (CONT.)

Page

*Phillips v. AWH Corp.*
  415 F.3d 1303 (Fed. Cir. 2005) ................................................................ 8, 16

*State St. Bank & Trust Co. v. Signature Fin. Group*
  149 F.3d 1368 (Fed. Cir. 1998) ..................................................................... 7

*Versata Software, Inc. v. Sun Microsystems, Inc.*
  2009 U.S. Dist. LEXIS 37811 (E.D. Tex., March 31, 2009) ....................... 9

*Wright v. Wisconsin Lime & Cement Co.*
  239 F. 534, 539 (7th Cir. 1917) ..................................................................... 6

### Statutes

35 U.S.C. § 101 ................................................................................................ 5

35 U.S.C. § 282 ......................................................................................... 5, 10

### Rules

Fed. R. Civ. P. 12(b) ........................................................................................ 6

Fed. R. Civ. P. Rule 12(b)(6) .......................................................................... 6

### Other Authorities

*Ex Parte Chen*
  APL 2009-004408 (BPAI Nov. 23, 2009) .................................................. 13

*Ex Parte Nawathe*
  APL 2007-3360 (BPAI Feb. 2, 2009) ......................................................... 13

*Ex Parte Schrader*
  APL 2009-009098 (BPAI Aug. 31, 2009) .................................................. 13

### Docket Sheets

*Cybersource Corp. v. Retail Decision, Inc.*
  No. 3:04-cv-03268 (N.D. Cal. 2009) ............................................................ 9

*Every Penny Counts, Inc. v. Bank of Am. Corp.*
  No. 2:07-cv-42 (M.D. Fla.  2009) .................................................................. 9

*Fuzzysharp Techs., Inc. v. 3 D Labs Ltd.*
  No. 4:cv07-5948 (N.D. Cal. 2009) ................................................................ 9

1

## I.   INTRODUCTION

2    Defendants ask this Court, on a Rule 12(b)(6) motion, to invalidate each of the

3    16 claims in Ultramercial's '545 patent.  Yet patents are presumed valid.  Moreover, as

4    demonstrated in Ultramercial's opposition to Defendant Hulu's co-pending motion,

5    Ultramercial's First Amended Complaint easily satisfies the standard for pleading a

6    direct infringement claim.  If Ultramercial did not, the most this court could hold on a

7    Rule 12(b)(6) motion is that Ultramercial fails to state a claim.  This Court cannot, on a

8    Rule 12(b)(6) motion, invalidate patent claims.  Indeed, Defendants provide no

9    authority in which a court has ever invalidated patent claims on a Rule 12(b)(6) motion

10   to dismiss.  For this reason alone, Defendants' motion cannot be granted.

11   Defendants' motion is procedurally infirm for another reason.  Defendants assert

12   that the '545 patent fails to comply with the patent-eligibility requirements of 35

13   U.S.C. § 101 under the Federal Circuit's *Bilski* test – assuming the Supreme Court,

14   which is now considering that test, does not overturn it.  But the Federal Circuit

15   repeatedly has held that the patentability of claims under section 101 cannot be

16   determined until the claims are construed.  While the Patent Office can determine

17   patentability during prosecution (because it must give claim terms their broadest

18   possible meaning), courts must apply different rules in construing claims for purposes

19   of adjudicating validity.  In their motion, Defendants neither apply the judicial claim

20   construction rules nor offer any interpretation of the claims they attack.  Without

21   properly construed claims – which is not a process that occurs on a motion to dismiss

22   in patent cases – compliance with section 101 cannot be adjudicated.

23   Even if this Court could adjudicate the validity of the '545 patent on a motion to

24   dismiss, Defendants err in both their arguments regarding the *Bilski* test and its

25   application to the '545 patent.  Contrary to Defendants' arguments, *Bilski* does not hold

26   that all inventions claiming novel software-based methods are invalid just because the

27   those methods can be employed in internet-related businesses.  To the contrary, *Bilski*

28   expressly rejected calls to bar software-based patents.  Rather, the *Bilski* "machine or

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-1-

1  transformation test" is designed to ferret out patent claims that would preempt

2  "fundamental principles" such as laws of nature, natural phenomenon, or abstract ideas.

3  None of the claims in Ultramercial's '545 patent preempts in any way a fundamental

4  principle.

5      Indeed, the claims of the '545 patent do not even preempt the use of the internet

6  with general purpose computers for business activities.  Instead, Ultramercial's patent

7  is directed to "gating" the distribution of copyrighted (and other intellectual property

8  protected) content online to consumers by locking the content until a consumer either

9  pays for the content or views an advertiser's message that is paired with the content.  In

10  this way, a copyright owner's content can be not only protected, but monetized – a

11  substantial problem given the proliferation of illegal online music and video services.

12      Contrary to Defendants' arguments, each of the 16 claims passes both the

13  "machine" and "transformation" prongs of the *Bilski* test.  First, each of the 16 claims

14  recites steps for performing content gating that, properly construed, require a computer

15  specially-programmed for the particular functions pursuant to instructions from

16  program software.  It is well settled – and Defendants do not dispute – that claims

17  requiring the use of a specially-programmed computer satisfy the "machine" prong of

18  the *Bilski* test.  Second, each of the 16 claims recites steps that, as a whole, transform

19  copyrighted content from being inaccessible to an online consumer to being accessible

20  to an online consumer.  This transformation is not just legal; the steps of each claim

21  require that content be physically inaccessible until the consumer affirmatively views

22  or interacts with an advertiser's message, at which point the content becomes

23  physically accessible.  Patent claims requiring a change in physical accessibility easily

24  satisfy the "transformation" prong of the *Bilski* test.  Thus, even if this Court decides to

25  adjudicate patentability under *Bilski* on a motion to dismiss, without claim construction

26  proceedings, and without soon-to-be provided guidance from the Supreme Court,

27  Defendants' motion should be denied.

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

## II.   THE CONTENT DISTRIBUTION INVENTION OF ULTRAMERCIAL'S '545 PATENT

The inventions disclosed in the '545 patent utilize a specially-programmed computer to distribute content protected by intellectual property – such as copyrighted videos, music and television programs -  over the internet to consumers.  With the claimed inventions, content owners can make their copyrighted works available to internet users for sale or for free provided the internet user first views or interacts with an advertiser's message.  To provide this option, the patented method requires a software "lock" such that internet users cannot access the protected content until they either pay a fee or view the advertisement.  In other words, the patented system innovatively "gates" the content with an advertiser's message – transforming the content from being physically inaccessible to being physically accessible.  In this way, content owners can monetize their works over the internet either through a sale or through payment from advertisers.

Many of the steps recited in each of the 16 claims of the '545 patent must be implemented though a specially-programmed computer.  For example, in both independent claims (1 and 8) a "facilitator" computer must be specially-programmed such that the content cannot be accessed by online consumers until he or she views the advertiser's message.   If the consumer elects to view the advertisement instead of purchasing the content, the consumer is blocked from accessing the content until the entire message is displayed.  Additionally, a sponsored advertiser can utilize an interactive or alternatively a non-interactive message.  In a non-interactive message, the content is displayed to the consumer only *after* the sponsor message has been displayed to the consumer.  In an interactive message, the consumer is presented with a query and the content is displayed only after a response to the query has been received.  As another example, an advertiser's message must be selected to gate a particular media product from a number of advertiser messages.  Finally, a computer must be

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER BILSKI

specially-programmed to log each display of an advertiser's message, updating the total the number of displays.

Likewise, many of the dependent claims recite steps that must be implemented though a specially-programmed computer.  For example, dependent claims 6, 7, 10, and 12 require issuing a password to consumers and verifying the password when a consumer seeks to access gated content.  Dependent claim 16 allows for a consumer to download, once accessed, the media content to a personal computer.

Ultramercial has built its business around the '545 patent, providing the "gated" advertising services to online content distributors and advertisers, including Honda, IBM, General Electric, Sony, the Economist, and Salon.com.  With most clients, Ultramercial matches content owners or distributors with advertisers, provides the computer programming and operations needed to select the advertisements for the particular content, gates the content with the advertisement such that the content is inaccessible until the consumer views the sponsor's message, and logs and tracks the display of advertisements so the advertiser can be properly billed and the content owner can be compensated.

Defendants YouTube and Hulu distribute online media content, including copyrighted television shows and movies.  Defendant WildTangent provides copyrighted computer games online.  Through extensive meetings, presentations, and discussions, Ultramercial disclosed to each Defendant its patented system for gating and monetizing online content through a sponsoring advertiser.  Once Ultramercial disclosed its patented system, and provided the computer programming know-how, each Defendant implemented Ultramercial's patented system without Ultramercial's permission.

## III.   LEGAL STANDARDS

### A.   Defendants' Burden Of Proving Invalidity

Patents are presumed valid.  A party asserting invalidity of a patent claim must first interpret the claim and, if that claim interpretation is accepted, show by clear and

Hennigan, Bennett & Dorman LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-4-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS UNDER BILSKI

1   convincing evidence that the claim, so interpreted, is invalid.  *See Bristol-Meyers*

2   *Squibb Co. v. Ben Venue Labs., Inc.*, 286 F.3d 1368, 1374 (Fed. Cir. 2001); 35 U.S.C.

3   § 282.  Accordingly, "the burden of proving invalidity always remains with the party

4   asserting invalidity; the burden never shifts to the patentee."  *Harrington Mfg. Co. v.*

5   *Powell Mfg. Co.*, 815 F.2d 1478, 1482 (Fed. Cir. 1986).  Thus, Defendants have the

6   burden of proving by clear and convincing evidence that each claim of the '545 patent,

7   as properly construed, fails to meet the standard for patentability set forth in 35 U.S.C.

8   § 101, and Ultramercial has no burden to prove that the claims meet the standard.

### B.      Standard for Patentability Under 35 U.S.C. § 101

10          Section 101 of the Patent Act broadly provides that "[w]hoever invents or

11   discovers any new and useful process, machine, manufacture, or composition of matter,

12   or any new and useful improvement thereof, may obtain a patent therefore subject to

13   the conditions and requirements of this title."  35 U.S.C. § 101.  The Supreme Court

14   has stated that patent-eligible subject matter should be construed broadly, to include

15   "anything under the sun that is made by man."  *Diamond v. Chakrabarty*, 447 U.S.

16   303, 309 (1980).  At the same time, courts have cautioned that processes claiming

17   "fundamental principles," including laws of nature, natural phenomena and abstract

18   ideas, are not patent eligible.  *See Diamond v. Diehr*, 450 U.S. 175, 185 (1981).

19          Courts have used varying standards in determining whether a claimed process

20   impermissibly covers a "fundamental principle," outside the scope of section 101.

21   Recently, the Federal Circuit adopted a "machine-or-transformation test" for

22   determining whether a claimed process is patentable under section 101.  *In re Bilski*,

23   545 F.3d at 943, 954 (Fed. Cir. 2008), *cert granted*, 77 U.S.L.W. 3442 (U.S. June 1,

24   2009).  Under the "*Bilski*" test, a claimed process is patent-eligible if it is either: (1)

25   "tied to a particular machine or apparatus" or (2) "transforms an article into a different

26   state or thing."  *Id.* at 954.

27          Shortly after the *Bilski* decision, the Supreme Court granted *certiorari* to

28   consider the Federal Circuit's "machine or transformation" patent eligibility test.  77

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-5-

U.S.L.W. 3442 (U.S. June 1, 2009).  Argument before the Supreme Court took place on November 9, 2009, and, in all likelihood, the Supreme Court will issue an opinion sometime in early Spring 2010.  In the meantime, counsel understands that most cases considering the patentability of claims under the Federal Circuit's *Bilski* test, including the district court cases cited in Defendants' motion, have been effectively stayed at either the district court or appellate level until the Supreme Court renders its decision.

## IV.   DEFENDANTS' MOTION TO INVALIDATE EACH CLAIM OF THE '545 PATENT ON A MOTION TO DISMISS IS PROCEDURALLY IMPROPER AND PREMATURE

Defendants motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6) is premature and procedurally improper.  First, the '545 patent is presumed valid and cannot be invalidated on a motion to dismiss for failure to state a claim where the complaint meets every legal requirement for alleging a claim of direct patent infringement.  Additionally, any determination as to validity first requires the claims to be construed by this Court.  Neither party has proposed constructions for any claim terms, nor advanced claim construction arguments.  Likewise, with just a complaint, this Court lacks the evidence, such as the file history, necessary to construe the claims.

### A.   Patent Claims Cannot be Invalidated on a Motion to Dismiss for Failure to State a Claim

Defendants' motion asks this Court to invalidate Ultramercial's duly examined and issued '545 patent for failure to claim patentable subject matter.  But Defendants bring this motion under Fed. R. Civ. P. 12(b) for failure to state a claim.  Simply put, patent claims cannot be invalidated on a 12(b)(6) motion to dismiss for failure to state a claim.  *Wright v. Wisconsin Lime & Cement Co.*, 239 F. 534, 539 (7th Cir. 1917).

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Because Rule 12(b)(6) focuses on the "sufficiency" of a claim for relief – and not the substantive merits – "[o]rdinarily a court may ***look only at the face of the complaint*** to decide a motion to dismiss." *Van*

-6-

*Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (emphasis added).  Further, in deciding a Rule 12(b)(6) motion, a court must take all allegations in the complaint as true, and view them in the light most favorable to the plaintiff.  *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003).  The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might later be presented at a trial or in a motion for summary judgment, but merely to determine whether the complaint itself is legally sufficient.  *Grooms v. Legge*, 2009 U.S. Dist. LEXIS 58818 at *6 (S.D. Cal. July 8, 2009).

Applying the proper standard on a Rule 12(b)(6) motion, this Court cannot invalidate the claims of the '545 patent as Defendants request.  This Court must accept as true that the '545 patent, issued by the Patent Office is valid and that the pleaded facts are true.  Moreover, as demonstrated in Ultramercial's accompanying Opposition to Defendant Hulu LLC's Motion to Dismiss or For a More Definite Statement (incorporated herein by reference), Ultramercial has pled every fact necessary to state a cause of action for direct patent infringement, including allegations that Ultramercial owns the '545 patent and that Defendants have infringed the patent.  Tellingly, Defendants fail to cite a single case where a court has invalidated patent claims on a motion to dismiss for any reason  – let alone based on an assertion that the claims are patent ineligible under 35 U.S.C. § 101.  Because Ultramercial's complaint meets the standard for pleading direct patent infringement, it cannot be dismissed under Rule 12(b)(6) and the claims cannot be invalidated under section 101 of the Patent Act.

**B.**   **Patent Claims Cannot Be Adjudicated for Compliance With the Patent Eligibility Standard Until Their Terms Have Been Construed**

By raising patent eligibility on a Rule 12(b)(6) motion to dismiss, Defendants sidestep a critical step in any section 101 analysis – claim construction.  Whether a patent "is invalid for failure to claim statutory subject matter under section 101, is a matter of both claim construction and statutory construction." *State St. Bank & Trust Co. v. Signature Fin. Group*, 149 F.3d 1368, 1370 (Fed. Cir. 1998).  Accordingly, a

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS UNDER BILSKI

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

court must construe patent claims before they can be adjudicated for compliance with the patent eligibility requirement of 35 U.S.C. § 101.

In construing patent claims, "the court starts the decisionmaking process by reviewing the same resources as would [a person of ordinary skill in the field of the invention], viz., the patent specification and the prosecution history." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (citation omitted); *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history"). Additionally, the court may consider expert and inventor testimony, dictionaries and learned treatises. *See Phillips*, 415 F.3d at 1317.

Claim construction is not merely an academic exercise; it is critical to any decision on this motion. Without claim construction, Defendants' invalidity arguments must be considered without any definition or clarification of the claims they seek to invalidate. There is no question that Defendants' motion fails on this front. Defendants make no claim construction proposals and offer no evidence, other than the patent itself, from which the Court could construe any claim that Defendants seek to invalidate.

The fact that this Court cannot consider whether the claims of the '545 patent satisfy the patentability requirements of section 101 without claim construction is demonstrated by the *Bilski* test itself: As discussed below, patent claims satisfy section 101 so long as at least some limitation ties the recited processes to a "particular machine." Defendants argue that the '545 patent claims fail the "machine" prong of *Bilski*'s test because they do not expressly recite the use of a machine. (Mot. at 9.) But patent claims need not expressly recite a "machine" to satisfy the "machine prong" of the *Bilski* test. For example, a patent claim satisfies the *Bilski* "machine" prong so long as a recited step, once properly construed, would require implementation through a specially-programmed computer. *See DealerTrack, Inc. v. Huber*, 2009 U.S. Dist.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-8-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER BILSKI

LEXIS 58125, at *12-13 (C.D. Cal. July 7, 2009).  Until this Court construes the claim terms in the '545 patent it cannot determine whether any recited step is tied to a specially-programmed computer.

For this reason, each of the district court decisions that Defendants cite in support of their motion considered compliance with the *Bilski* test for patentability only after the patent claims had been construed – or at the very least, after the parties had completed claim construction briefing, in which case the district court, in considering the *Bilski* issue, expressly adopted the patentee's proposed constructions.  *See DealerTrack,* 2009 U.S. Dist. LEXIS 58125, at *12-13; *Every Penny Counts, Inc. v. Bank of Am. Corp.*, No. 2:07-cv-42 (M.D. Fla.  2009) (Malmberg Dec. ("Dec.), Ex. 1 at Dkt Nos. 114, 117, 126, 164, 225); *Cybersource Corp. v. Retail Decision, Inc.*, No. 3:04-cv-03268 (N.D. Cal. 2009) (Dec. Ex. 2  at Dkt Nos. 159, 188, 208, 211, 219, 220, 225; *Fuzzysharp Techs., Inc. v. 3 D Labs Ltd.*, No. 4:cv07-5948 (N.D. Cal. 2009) (Dec., Ex. 3 (Dkt Nos. 43, 47, 64, 90).  In contrast, as least one district court rejected a *Bilski* argument on a motion for judgment on the pleadings.  *See Versata Software, Inc. v. Sun Microsystems, Inc.*, 2009 U.S. Dist. LEXIS 37811 at * 4-5 (E.D. Tex., March 31, 2009).

Defendants imply that this Court need not undertake the normal claim construction process to adjudicate their *Bilski* arguments by pointing to the term "facilitator" in the preamble of the two independent claims.  According to Defendants, each claim is divorced from any "particular machine or apparatus" because a "facilitator" is limited to a person.  (Mot. at 6).  This argument fails.  First, as discussed below, Defendants misrepresent both the written description of the patent and its figures in concluding that a "facilitator" is limited to a "person."  Second, even if this Court ultimately construed a "facilitator" as limited to a "person," that term only appears in the preamble.  Patent claim preambles are limiting (*i.e.*, made part of the recited steps) only under certain conditions.  *See Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1572-73 (Fed. Cir. 1996) ("Whether

-9-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

a preamble stating the purpose and context of the invention constitutes a limitation of the claimed process is determined based on the facts of each case in light of the overall form of the claim, and the invention as described in the specification and illuminated in the prosecution history.").  Unless the preambles of the '545 patent claims are limiting, the term "facilitator" has no effect on whether the recited steps are tied to a particular machine.  In their motion, Defendants provide no argument or analysis as to whether the preamble of the claims in the '545 patent are limiting or not.  Third, Defendants completely ignore the construction of terms in the recited steps.  Nearly all these terms require construction before this Court can adjudicate whether the claims satisfy either prong of the *Bilski* test, including, for example, the terms "facilitating"; "selecting a sponsor message from a plurality of sponsor messages"; "accessing an activity log"; "offering to a consumer access to the media product without charge . . . on the precondition that the consumer views the sponsor message"; "receiving from the consumer a request to view the sponsor message"; and, "display of sponsor message."

Finally, Defendants point to a number of decisions from the Board of Patent Appeals and Interferences ("BPAI").  These appeals during patent examination are not binding.  Moreover, the BPAI applies a different standard in evaluating the patentability of claims under 35 U.S.C. § 101 than courts, particularly as to how claims are construed.  In examining compliance with section 101, the BPAI must construe claims as broadly as reasonably possible, usually based only on the specification and no other evidence.  *See In re Am. Academy of Science Tech. Ctr.*, 367 F.3d 1359, 1368-69 (Fed. Cir. 2004); *In re Trans Texas Holdings Corp.*, 498 F.3d 1290, 1295-96 (Fed. Cir. 2007).  In contrast, courts construe claims as understood by a person of ordinary skill in the art.  Courts also apply the statutory presumption of validity.  Finally, courts may be required to adopt constructions that preserve validity, including, for example, constructions that would tie recited steps to a particular machine.  35 U.S.C. § 282; *Modine Mfg. Co. v. ITC*, 75 F.3d 1545, 1556 (Fed. Cir. 1996) (stating that claims

-10-

1   amenable to more than one construction should be interpreted, where possible, to

2   preserve their validity).

3   **V.      DEFENDANTS DO NOT PROVE BY CLEAR AND CONVINCING**

4   **EVIDENCE THAT ANY CLAIMS OF THE '545 PATENT ARE**

5   **PATENT-INELIGIBLE UNDER 35 U.S.C. § 101**

6   Even if this Court determines that it can adjudicate the validity of the 16 claims

7   in the '545 patent on a motion to dismiss for failure to state a claim prior to any claim

8   construction, and before the Supreme Court provides its impending guidance on the

9   patent-eligibility standard, Defendants fail to carry their burden of proof under the

10  *Bilski* test.  First, the claims recite patentable subject matter because the claim language

11  does not preempt the use of any fundamental principle.  Moreover, even applying the

12  "machine or transformation" test,  the '545 patent claims satisfy not one, but both

13  prongs.

14  **A.      The Claims of the '545 Patent Do Not Preempt the Use of Any**

15  **Fundamental Principle or Method of Doing Business on the Internet**

16  **Using a General Purpose Computer**

17  Defendants assert that this Court should only consider the *Bilski*'s "machine or

18  transformation" test.  But the full *Bilski* test requires more:  Before considering whether

19  a process is tied to a particular machine or transforms an article, *Bilski* requires a court

20  to consider whether the claimed process is drawn to a "fundamental principle" – *i.e.*, a

21  law of nature, natural phenomenon, or an abstract idea that is in danger of being

22  preempted.  *Bilski*, 545 F.3d at 954.  Claims drawn to a fundamental principle are

23  ineligible for patent protection.  *See Diehr*, 450 U.S. at 191.  In determining whether a

24  claim impermissibly covers a "fundamental principle," courts must look to whether the

25  claim would "pre-empt substantially all uses" of that principle if allowed, or if, instead,

26  the claim is "tailored narrowly enough to encompass only a particular application."

27  *Bilski*, 545 F.3d at 953-54; *Diehr*, 450 U.S. at 187.  If a claimed process would not

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-11-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS UNDER BILSKI

preempt substantially all uses of a fundamental principle, then it should fall within the scope of patent-eligible subject matter section 101.

Here, Defendants provide no argument that the claims of the '545 patent preempt the use of any fundamental principle.  Indeed, the claim of the '545 patent would not even preempt methods of doing business over the internet using a general purpose computer.  For example, most of the recited steps could not be performed by email or through other general purpose communications devices.  Instead, the recited steps can only take place with a specially-programmed computer that, among other things, (1) selects an advertisement to match with media content, (2) uses the advertisement to lock the content, making it physically inaccessible to the consumer, (3) gives the consumer physical access to the content only after the consumer fully views or interacts with the sponsored advertisement, and (4) tracks and logs each display of the advisement so the content owner can be compensated from the sponsoring advertiser.  This process falls exactly within the scope of software-implemented inventions that the Federal Circuit expressly declined to exclude from patentability.  *Bilski*, 545 F.3d at 960 n. 23 ("[W]e decline to adopt a broad exclusion over software . . . beyond the exclusion of claims drawn to fundamental principles set forth by the Supreme Court.").

## B. The '545 Patent Claims Satisfy Both the "Machine" and "Transformation" Prongs Of The *Bilski* Test

The '545 patent satisfies both prongs of the Bilski test in that the claims:  (1) require a specially-programmed computer, thereby meeting the "machine" prong of the test, and (2) the claims transform media from a locked state that is physically inaccessible to the consumer to one that is unlocked and physically accessible to the consumer, thereby meeting the "transformation" prong of the test.

### 1. Each Claim Satisfies the *Bilski* "Machine" Prong

Although *Bilski* held that a process is patentable under section 101 if it is "tied to a particular machine," *Bilski* opted to "leave to future case the elaboration of the

-12-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER BILSKI

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

precise contours of machine implementation, as well as . . . whether or when recitation of a computer suffices to tie a process claim to a particular machine." *Bilski*, 545 F.3d at 962.  Prior to *Bilski*, appellate courts held that process claims satisfy section 101 if the process is tied to a specially-programmed computer.  *See In re Alappat*, 33 F.3d 1526, 1545 (Fed. Cir. 1994) ("We have held that such programming creates a new machine, because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software."); *Gottschalk v. Benson*, 409 U.S. 63, 71 (1972) (noting that section 101 does not preclude "a patent for any program servicing a computer.").

Following *Bilski*, lower courts and decisions from the BPAI have confirmed that process claims tied to a specially-programmed computer fall within the scope of patentable subject matter under section 101.  *See DealerTrack*, 2009 U.S. Dist. LEXIS 58125 at *10-11; *Ex Parte Nawathe*, APL 2007-3360, at 8 (BPAI Feb. 2, 2009) (a particular machine is a computer specifically programmed for executing steps of the claimed method) (Dec., Ex. 6). Thus, claims requiring a computer operating pursuant to implementation through software instructions satisfy the "particular machine or apparatus" test and are patent eligible. Defendants do not argue otherwise.

Furthermore, the word "computer" or "machine" is unnecessary in the claim language to fulfill the machine prong of the *Bilski* test.  In a number of recent decisions, the BPAI has confirmed that process claims satisfy the machine prong of the *Bilski* test provided at least one of the properly construed limitations requires implementation though a specially-programmed computer, even if the process steps themselves do not recite the words "computer" or "machine." *See Ex Parte Chen*, APL 2009-004408, at 7 (BPAI Nov. 23, 2009) ("Since these claims recite specific internal processing that must be performed by machines, they necessarily pass the machine part of the *Bilski* test.") (Dec., Ex. 4); *Ex Parte Schrader*, APL 2009-009098, at 8 (BPAI Aug. 31, 2009) (claims did not recite a machine, but after the Board construed the

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

claim term "interactive channel" to include the World Wide Web, Information Kiosks, and Automated Teller Machines, the Board found that the claim was tied to a machine and satisfied *Bilski*) (Dec., Ex. 5).

Here, many steps recited in the claims of the '545 patent require implementation through a specially-programmed computer, for example:

- selecting a sponsor message to be associated with the media product, said sponsor message being selected from a plurality of sponsor messages, . . . including accessing an activity log to verify the total number of times which the sponsor message has been previously presented is less than the number of transaction cycles contracted by the sponsor . . . (claims 1 and 8 step 2)

- offering to a consumer access to the media product without charge to the consumer on the precondition that the consumer views the sponsor message (claim 1, step 5; claim 8 step 4);

- receiving from the consumer a request to view the sponsor message, wherein the consumer submits said request in response to being offered access to the media product (claim 1, step 6; claim 8, step 5);

- in response to receiving the request from the consumer, facilitating the display of a sponsor message to the consumer (claim 1, step 7; claim 8, step 6);

- if the sponsor message is not an interactive message, allowing said consumer access to said media product after said step of facilitating the display of said sponsor message (claim 1, step 8; claim 8, step 7);

- recording the transaction event in an activity log . . .including updating the total number of times the sponsor message has been presented (claim 1, step 10; claim 8, step 9).

Under the legally correct construction, each of these steps require implementation through a computer that performs the particular functions pursuant to instructions from program software. *Alappat*, 33 F.3d at 1545. Taken together, the

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

specially-programmed computer must (1) offer a consumer a media product for free; (2) receive requests to view the sponsored advertising; (3) select a sponsor message from several different sponsor messages; (4) access an activity log to ensure that the sponsor message selected can still be displayed based on the number of transaction cycles contracted for by the sponsor; (5) block the consumer from accessing the content until the consumer completely views the advertisement; and (6) once the advertisement has completed, display the media content to the consumer.  In the dependent claims, a specially-programmed computer must issue a password to consumers and verify the password when a consumer seeks to access gated content, and allow the consumer to download, once accessed, the media content to a personal computer.  ('545 patent, claims 6, 7, 10, 12, and 16).

In fact, as the Examiner recognized in Patent Office's "reasons for allowability" the claims, when properly construed, extend only to a specially-programmed computer – the "machine" that satisfies the first prong of the *Bilski* test:

> "The ***claimed invention distributes media products covered by intellectual property rights available for purchase via a facilitator's website . . . The  prior art on record neither alone nor in combination with supporting prior art teach and suggest the . . . combination of . . . selecting a sponsor message*** to be associated with at least one of said media products, said sponsor message being selected from a plurality of sponsor message, . . . ***accessing an activity log*** to verify that the total number of times which the sponsor message has been previously presented is less than the number of transaction cycles contracted by the sponsor of the sponsor message . . . ***offering to a consumer access to a media product without charge to the consumer on the precondition that the consumer views the sponsor message*** . . . receiving payment from the sponsor of the sponsor message displayed." [1]

---

[1] Dec., Ex. 7 at 7-8 (emphasis added).  The Examiner's statement, along with the rest of the file history, would be highly relevant in construing the claims of the '545 patent.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1

2    Defendants argue that no machine is necessary to the claimed method and that an

3    individual "person could perform each and every step" of the claimed method. (Mot. at

4    7).  But the specification does not disclose, nor does it contemplate, that the method of

5    distributing  media products could be performed in person, as Defendants suggest.

6    Instead, the only way the specification describes making media content accessible to

7    consumers free of charge in exchange for viewing sponsored advertising is through a

8    specially-programmed computer. (*See* '545 patent at Figure 4 (facilitator makes IP

9    available to consumer through site); col. 2:36-42; 5:36-42; Figures 1 and 2.)  Thus,

10   under the legally correct construction of the claim terms, the recited steps must be

11   interpreted consisted with the requirement of a specially-programmed computer, and

12   not through mere human activity.  *See Phillips*, 415 F.3d at 1313 ("[T]he person of

13   ordinary skill in the art is deemed to read the claim term not only in the context of the

14   particular claim in which the disputed term appears, but in the context of the entire

15   patent, including the specification.").

16   Moreover, Figures 2-4 of the '545 patent disclose algorithms by which a

17   computer can be programmed to perform the recited steps.  For example, Figure 2,

18   shows a complete "consumer transaction cycle," in which a consumer enters a

19   particular address or "URL", which directs the consumer to "the facilitator's site for

20   [intellectual property]", whereupon, ultimately, an "appropriate sponsor ad" is selected,

21   the "selected sponsor ad" is "transmit[ted]," and the "consumer views the selected

22   sponsor ad".  If the ad is "not interactive" then Figure 2 directs that the "ad [is] shown

23   until timed out".  In this particular embodiment of the patented method, "upon [the]

24   ad's completion, [intellectual property] is FTP'ed to consumer [using File Transfer

25   Protocol]".  Necessarily, all of these steps would require a specially-programmed

26

27   *Phillips*, 133 F.3d at 1313.

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

computer to (1) select the appropriate sponsor ad, (2) transmit the ad, (3) ensure the complete ad is displayed until times out and (4) upon the completion of the ad, make the content physically available to the consumer.

Defendants further argue that the patent discloses that the preamble term "facilitator" can only be a person, which, according to Defendants, vitiates any requirement for a machine. (Mot. at 6-7.) But properly construed, a "facilitator" as used in the preambles of the independent claims encompasses a programmed computer system. Indeed, while a person may program a computer, most of the steps following the preamble can be implemented only through computer operation. In arguing that the facilitator is limited to a "person," Defendants selectively crop a small portion of Figure 1, showing only a drawing of a body figure over the word "Facilitator". Yet Figure 1, reproduced in its entirety below, plainly demonstrates that the invention must be implemented through three separate computers:



Defendants also argue that the facilitator is necessarily a person because language in the specification states that the facilitator can have face to face meetings. But Defendants selectively quote only a portion of the specification language. The description of the preferred embodiment accompanying Figure 1 actually states that

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

"three of the principals (facilitator, IP rights holder and interposed sponsor) may also communicate through a two-way communications path 52, which may include telephony, facsimile, courier, mail or even person to person meetings." ('545 patent at 3:47-50.)  While the specification allows some communications to take place without a programmed machine (*e.g.*, communications between a IP rights holder and interposed sponsor), the specification expressly requires that all communications between the consumer and facilitator take place utilizing a specially-programmed computer – a computer that permits the display of  advertising and content, locking content with the display of sponsored advertising and unlocking the content once the sponsored advertising is complete.  ('545 patent at Figure 1, Figure 2 (consumer's perspective), col. 2:44-57.)  Figure 1 further illustrates that the distribution of media content to a consumer can occur ***only*** by utilizing a machine or computer specifically programmed to perform the steps of the claim.  This is shown in Figure 1 by omitting No. 52 (which can represent person-to-person meetings) from the portion of the diagram that shows interactions between the consumer and facilitator.

Recognizing that dependent claim 16 expressly recites the use of a computer, Defendants argue that the computer is merely an "insignificant extra-solution" and does not "impose meaningful limits on the claim's scope." (Mot. at 10.)   But the step recited in claim 16 of downloading the media content to a personal computer of the consumer is hardly meaningless – it is the entire claim.  Moreover, it requires much more than a general purpose computer.  It requires, at the very least, software for converting streaming content into a file and storing that file within a computer hard drive.  ('545 patent, col. 6:41:46.)  If converting streaming content into a file that can be stored on a computer hard drive is an insignificant extra-solution activity, then no process undertaken with a programmed computer would satisfy the *Bilski* "machine" prong.

Finally, the cases cited by Defendants all involve patent claims easily distinguishable from '545 patent claims.  For example, the "computer" involved in the

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

DealerTrack patent was construed by the district court to include "dumb terminals" as opposed to a specially-programmed computer. *DealerTrack*, 2009 U.S. Dist. LEXIS 58125 at *12   Under the plaintiff's proposed constructions, each claim could be performed with email and a spreadsheet.  Similarly, the claims at issue in *CyberSource* merely required communications through the internet with a general purpose computer. *CyberSource v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1077 (N.D. Cal. 2009). Finally, the patent holder in *Bilski* conceded that claimed process steps could be implemented without any machine.  *Bilski*, 545 F.3d at 962.  In contrast, the claims of the '545 patent, once construed, all require implementation through a computer specially- programmed to execute certain specific steps of the recited methods.

### 2. Each Claim of the '545 Patent Satisfies the *Bilski* "Transformation" Prong

Process claims satisfy the *Bilski* transformation test where the claimed process involves "any physical object or substance, or an electronic signal representative of any physical object or structure" and changes an article "into a different state or thing." *Bilski*, 545 F.3d at 961, 964.  The Federal Circuit has explained that transformation of a particular article into a different state or thing "must be central to the purpose of the claimed process."  *Id* at 962.  Here, the claims of the '545 patent satisfy the transformation prong of the test.

First, the claims of the '545 patent are directed to physical objects or electronic signals representative of physical objects.  Specifically, each claim requires "media products that are covered by intellectual-property rights . . . wherein each said media product being comprised of at least one text data, music data, and video data." Necessarily, products that contain text, music and video data are tangible products in the form of written information, video, television shows, songs, etc.  And where the product is displayed over the internet, the signals sent over the internet are necessarily exact representations of the physical object.  *See Cybersource,* 620 F. Supp. 2d at 1075. ("As long as the claim is 'limited to a visual depiction that represents specific physical

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

objects or substances,' there is no concern that a fundamental principle will be wholly preempted.") (quoting *In re Abele*, 684 F.2d 902 (C.C.P.A. 1982)).

Second, the claimed processes necessarily require a physical "transformation" of the media products from one state to another state.  In accordance with the invention, the process steps require that media products be initially locked, making them physically inaccessible to the consumer.  After the sponsor message has been displayed in its entirety, the lock is removed and the media is transformed into a different state – namely, a state in which the media content is physically accessible to the consumer, and can even be converted from a bit stream into a downloadable file.  (*See* claim 16 and col. 6:41-46.)  This transformation from a physically inaccessible state to a physically accessible state is central to the patented process.  Defendants agree, stating "[t]his "watch [sponsored advertising]-or-pay" business method of distributing content over the Internet *is the core* of both independent claims of the '545 patent."  (Mot. at 3 (emphasis added).)[2]  Where, as here, tangible objects (media products) are transformed from a state that is physically inaccessible to a consumer to a state that physically accessible and displayed to a consumer, the transformation prong of the *Bilski* test is met and the claims cover patentable subject matter.

## VI.   CONCLUSION

For the foregoing reasons, Ultramercial respectfully requests that the Court deny the Defendants' motion to dismiss Ultramercial's complaint.

_____

[2] Defendants argue that the transformation taking place according to the '545 patent claims do not bring the claims within the scope of patent-eligible subject matter because they are "manipulations simply of public or private legal obligations or relationships, business risks, or other such abstractions…." (Mot. at 12.)  But the transformation required by the claims of the '545 patent are not merely legal.  Instead, the claims all require a physical transformation such that a consumer cannot access media content until first completely viewing or interacting with an advertisement, after which physical accessibility is provided.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1

DATED:  January 25, 2010

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HENNIGAN, BENNETT & DORMAN LLP

By:_____/s/Lawrence M. Hadley_____
        Lawrence M. Hadley
Attorneys for Plaintiffs  ULTRAMERCIAL,
LLC and ULTRAMERCIAL, INC.,

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-21-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS UNDER BILSKI