1  RICHARD G. FRENKEL (State Bar No. 204133)
   rfrenkel@wsgr.com
2  LISA K. NGUYEN (State Bar No. 244280)
   lnguyen@wsgr.com
3  WILSON SONSINI GOODRICH & ROSATI
   650 Page Mill Road
4  Palo Alto, CA  94304-1050
   Telephone:  (650) 493-9300
5  Facsimile:  (650) 565-5100

6  Attorneys for Defendant
   WILDTANGENT, INC.
7

8  (counsel for HULU, LLC and YOUTUBE, LLC listed on signature page)

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12 ULTRAMERCIAL, LLC;              | Case No. CV 09-06918 RGK (PLAx)
   ULTRAMERCIAL, INC.,             |
13                                 | **REPLY MEMORANDUM IN
              Plaintiffs,          | SUPPORT OF DEFENDANTS'
14                                 | MOTION TO DISMISS
       v.                          | UNDER *BILSKI***
15                                 |
16 HULU, LLC; YOUTUBE, LLC;        |
   WILDTANGENT INC.,               | Date:  Tuesday, February 16th, 2010
17                                 | Time:  9:00 a.m.
              Defendants.          | Courtroom: Roybal Bldg., Ctrm 850
18                                 | Judge: Hon. R. Gary Klausner
19

20

21

22

23

24

25

26

27

28

**<u>REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

This motion to dismiss is procedurally proper, and there is no reason the Court must wait to address the validity of the Ultramercial patent under *In re Bilski*. Either the claims encompass eligible subject matter as a matter of law or they do not. No discovery is required. There are no procedural obstacles to deciding the matter now.

On the merits, Ultramercial's claims fail to meet either the machine or transformation test. Ultramercial attempts to meet the machine prong by arguing that each of its claims is restricted to implementation on a general purpose computer. Yet the claims do not require that the method be implemented on a computer. As *Bilski* recognized, the unwillingness to tie an invention to a particular machine is a clue that the claim is for a prohibited "abstract idea."

The Ultramercial claims also fail the transformation prong because there is no plausible transformation of anything into a "different state or thing." *Bilski* emphatically rejected the argument that changes in legal rights or intangible relationships could be eligible transformations. Here, the step of "allowing access" to a media product fails to even suggest a transformation of that media product. Ultramercial's attempts to describe this as a patent-eligible transformation merely emphasize the abstract nature of the claim.

*In re Bilski* is fatal to Ultramercial's claims, and this issue can be considered now. Alternatively, Defendants request the Court stay this case until after the Supreme Court's decision to avoid the expense and inefficiency of discovery.

**I.    DEFENDANTS' MOTION IS PROCEDURALLY PROPER AND RIPE FOR ADJUDICATION**

**A.    Ultramercial Cannot Derail this Motion By Simply Alleging that its Patent is Valid**

Ultramercial exhorts that "[t]his Court must accept as true that the '545 patent, issued by the Patent Office is valid." Opp. at 7. This, however, is a legal conclusion and is not entitled to deference. "[T]he tenet that a court must accept as

true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

The determination of "[w]hether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *cert. granted*, 129 S. Ct. 2735 (2009). Ultramercial has not identified any disputed facts necessary to decide this motion. Accordingly, the only determinations the Court must make are matters of law, and they are therefore properly decided on a motion to dismiss.

## B.   The Court Can Properly Grant A Motion To Dismiss Under 35 U.S.C. § 101 and *Bilski*

District courts can and have, in fact, invalidated patents on a motion to dismiss. *See, e.g., Select Controls v. Am. Elec. Components, Inc.*, No. 07-1306, 2008 WL 216612, at *2-*5 (S.D.N.Y. Jan. 22, 2008) ("In sum, the Complaint and the exhibits attached thereto reveal unequivocally that the design covered by the '823 Patent . . . [is] invalid as a matter of law"); *see also Quantum Loyalty Sys., Inc. v. RPG Rewards, Inc.*, No. 09-022-SLR, slip op. at 20-23 (D. Del. Dec. 23, 2009) (magistrate judge recommending grant of motion to dismiss based on patent invalidity under the on-sale bar of 35 U.S.C. § 102(b)) (Frenkel Reply Ex. A).

Motions to dismiss under *Bilski* have been filed in several district courts, and ***none*** of these motions have been denied as being procedurally improper. *See, e.g, Graff/Ross Holdings LLP v. Federal Home Loan Mortgage Corp.*, No. 07-796-RJL (D.D.C. Jan. 14, 2010) (order referring action to magistrate judge for report and recommendation on claim interpretation and motion to dismiss under *Bilski*) (Frenkel Reply Ex. B); *Edge Capture L.L.C. et al. v. Barclays Bank PLC et al.*, No.

1   09-1521 (N.D. Ill. Jan. 18, 2009) (motion to dismiss under *Bilski* pending) (Frenkel

2   Reply Ex. C).[1]

3       Ultramercial's argument to the contrary is based on a citation to *Wright v.*

4   *Wisconsin Lime & Cement Co.*, 239 F. 534 (7th Cir. 1917), a case decided in

5   another circuit nearly a century ago and before Rule 12(b)(6) even existed.  Opp. at

6   6.  Even *Versata Software, Inc. v. Sun Microsystems, Inc.*, No. 06-358-TJW, 2009

7   WL 1084412 (E.D. Tex. Mar. 31, 2009), cited by Ultramercial, illustrates that

8   Defendants' motion is proper.  Judge Ward did not deny the motion for judgment

9   on the pleadings based on *Bilski* because it was procedurally defective.  Rather,

10   Judge Ward substantively determined – on the pleadings – that the claims of the

11   patent at issue met the *Bilski* test.  *See id.* at *1.

12   **C.    The Only "Claim Construction" Required is Application of the**

13   **    *Bilski* Test Itself**

14       Ultramercial argues that Defendants' motion requires "claim construction"

15   and is therefore premature.  But application of the *Bilski* machine or transformation

16   test does not require formal "claim construction."  It requires only that the Court

17   ask whether the claims are tied to a particular machine or focus on an eligible

18   transformation.  The *Bilski* decision itself did not engage in any kind of formal

19   claim construction, and other district court decisions have applied the machine or

20   transformation test without engaging in formal claim construction.  *See, e.g.,*

21   *Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1073 (N.D.

22

23   _____

24       [1] Many courts have stayed actions pending the Supreme Court decision in *Bilski*,
    including ones in this district.  *See, e.g.*, *Big Baboon Corp. v. Dell, Inc.*, No. 09-

25   01198-SVW (C.D. Cal. Jan. 21, 2010) (Docket Entry 210, Minutes In Chambers
    staying case after considering summary judgment motion based on *Bilski* until "the

26   Supreme Court's decision in *Bilski v. Doll*) (Frenkel Reply Ex. D); *Vraston Trading,*

27   *Inc. v. NASDAQ OMX Group, Inc.*, No. 08- 7500 (S.D.N.Y. Feb. 17, 2009) (same)
    (Frenkel Reply Ex. E).

28

Cal. Mar. 27, 2009) ("ruling on defendant's section 101 motion does not require that the claims actually be construed"); *see also Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1360 (Fed. Cir. 2004) (claim construction unnecessary unless meaning disputed and required to resolve issue before the court). Here, although Ultramercial recites a litany of claim elements (Opp. at 8-10), it fails to identify any that must be construed to decide whether the claimed invention is patentable. Ultramercial's focus on claim construction is merely a delay tactic.

### D. In the Alternative, the Parties Concede that a Stay Pending the Supreme Court's Decision Would Be Appropriate

There is no reason to avoid deciding the *Bilski* issue now. If, however, the Court determines that it would be more appropriate to stay this case, including discovery, until after the Supreme Court decides *In re Bilski*, Defendants would not oppose such a stay, and Ultramercial has apparently conceded that such a stay would be appropriate. *See* Opp. at 6 ("[C]ounsel understands that most cases . . . have been effectively stayed at either the district court or appellate level until the Supreme Court renders its decision.").

## II. THE ULTRAMERCIAL PATENT IS INVALID UNDER *BILSKI*

### A. Ultramercial's "Fundamental Principles" Argument Is A Straw Man

Ultramercial claims that "[b]efore considering whether a process is tied to a particular machine or transforms an article, *Bilski* requires a court to consider whether the claimed process is drawn to a 'fundamental principle.'" Opp. at 11. This argument is a straw man. There is no separate test to determine whether a patentee is claiming a fundamental principle.

Rather, the *Bilski* machine-or-transformation test *is* the inquiry that determines whether a claimed process is drawn to a "fundamental principle." *Bilski* explains that "the Supreme Court articulated [] the basis for the machine-or-transformation test, namely the prevention of pre-emption of fundamental

1  principles." *Bilski*, 545 F.3d at 963.  Thus, "the proper inquiry under § 101 is . . .

2  whether the claim meets the machine-or-transformation test."  *Id.* at 961.

### B.    The Ultramercial Patent Fails The *Bilski* Machine Prong

4       Ultramercial's analysis of the *Bilski* machine prong relies entirely on

5  misstatement of case law and a mischaracterization of the '545 patent.  Applying

6  the correct standard to the plain language of the patent unequivocally demonstrates

7  that the claims of the '545 patent are not tied to a particular machine as required

8  under *Bilski*.

### 1.    Ultramercial misstates the law.

10      To meet the machine prong, a claim cannot merely require that a computer

11  be programmed to perform the recited functions.  The claim must be tied to a

12  ***particular*** machine, or a computer that is programmed in a ***specified*** manner.  *See*

13  *Cybersource,* 620 F. Supp. 2d at 1080 (invalidating claim that covers "a process

14  implemented through ***unspecified*** program instructions"); *DealerTrack v. Huber*,

15  657 F. Supp. 2d 1152, 1156 (C.D. Cal. 2009) (invalidating claim that "does not

16  ***specify*** precisely how the computer hardware and database are 'specially

17  programmed'").

18      Ultramercial does not apply the proper standard for the *Bilski* machine

19  prong.  Citing to *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994), Ultramercial

20  suggests that method claims are patent eligible if they merely require a computer to

21  be programmed to perform the claimed functions.  Opp. at 13.  Thus, Ultramercial

22  suggests a "specially-programmed computer" test, under which mere

23  "programming creates a new machine, because a general purpose computer in

24  effect becomes a special purpose computer." (Opp. at 13, quoting *Alappat*).  But

25  the quoted portion of *Alappat* is no longer good law after *Bilski*, as courts have

26  recognized.  *See, e.g.*, *Cybersource*, 620 F. Supp. 2d at 1080 ("The *Alappat* case

27  has . . . been abrogated by *Bilski*, because it did not apply the machine-or-

28  transformation test.") (citing *Bilski*, 545 F.3d at 959).  And post-*Bilski* decisions

1   have found that a "programmed computer" "fails to impose any meaningful limits

2   on the claim's scope as it adds nothing more than a general purpose computer that

3   has been programmed in an unspecified manner to implement the functional steps

4   recited in the claims."  *Ex Parte Halligan*, 89 U.S.P.Q.2d 1355, 1365 (B.P.A.I.

5   2008).

6       Ultramercial also does not apply the proper standard when it argues that

7   lower courts and the BPAI have "confirmed that process claims tied to a specially-

8   programmed computer fall within the scope of patentable subject matter under

9   section 101." (Opp. at 13).  To the contrary, the cases cited by Ultramercial either

10  directly contradict its interpretation of the machine prong or rely on tests explicitly

11  rejected in *Bilski*.  For example, Ultramercial cites to *DealerTrack v. Huber*, 657 F.

12  Supp. 2d 1152 (C.D. Cal. 2009) and *Ex Parte Nawathe*, No. APL 2007-3360, 2009

13  WL 327520 (B.P.A.I. Feb. 2, 2009) for the proposition that its "specially-

14  programmed computer" meets the machine prong.  But in *DealerTrack*, a court in

15  this district found a "computer aided method" of managing credit applications

16  unpatentable, specifically noting that *Alappat* was a pre-*Bilski* case and that where

17  a patent did not specify ***how*** computer hardware and databases were specially

18  programmed, the claim could not stand under *Bilski*.  *See* 657 F. Supp. 2d at 1155-

19  56.  Similarly, in *Ex Parte Nawathe*, the BPAI rejected an application because "the

20  recited method, while being computerized, is not tied to a particular machine for

21  executing the claimed steps."  2009 WL 327520, at *4 (Malmberg Decl. Ex. 6).

22      Ultramercial's citation to *Ex Parte Schrader*, No. APL 2009-009098

23  (B.P.A.I. Aug. 31, 2009) (available at 2009 WL 2807905) is equally unpersuasive.

24  The Examiner failed to cite to *Bilski* in his rejection under § 101 and misstated the

25  test.  *See* Frenkel Reply Ex. F at 3 (stating that to meet the machine prong, a

26  process must "be tied to another statutory class").  On remand from the Board, the

27  Examiner has now reinstated the § 101 rejection of the Schrader application under

28  a proper analysis of *Bilski*.  *See* Frenkel Reply Ex. G at 2-3.

## 2.   Ultramercial mischaracterizes the '545 patent.

To meet its so-called "specially-programmed computer" test derived from *Alappat*, Ultramercial tries to recast the '545 patent as a software patent, rather than a business method patent. This recharacterization is not only pointless (as its "specially-programmed computer" standard is contrary to *Bilski*), but also unsuccessful.

First and foremost, the Ultramercial claims do not on their face require that the method be implemented as software. The patent itself emphasizes that most steps of the method do not even require a machine. '545 Patent at col. 3, ll. 42-50 (emphasizing that communication between three out of four principals referenced in the claims may be accomplished by "telephony, facsimile, courier, mail or even person-to-person meetings"). Only claim 16 references a machine of any kind, and that machine is a "computer" that simply receives the media product as the final, postsolution step. *See Bilski*, 545 F.3d at 957 ("[E]ven if a claim recites a specific machine . . . the recited machine . . . must not constitute mere 'insignificant postsolution activity.'"). Ultramercial argues that this final step is not insignificant because it involves "converting streaming content into a file." Opp. at 18. But this step, which is simply transmission of data over the internet, is indeed post-*solution* activity because it has nothing to do with the alleged novelty of Ultramercial's claims or the "problem to be solved." *See Parker v. Flook*, 437 U.S. 584, 590 ("The notion that post-solution activity, no matter how conventional or obvious in itself, can transform an unpatentable principle into a patentable process exalts form over substance."). Ultramercial's "abstract idea" is not suddenly tied to a particular machine simply because the final step is conventional transmission of a media product to a consumer with a computer.

The '545 patent's specification further confirms that the claims are not tied to a particular machine. For example, the '545 patent, on its front page, is classified under "Class 705, the examination classification associated with

1  'business methods' and most likely to receive inventions that may not use
2  machinery or transform physical matter."  *Bilski*, 545 F.3d at 992 (Newman, J.,
3  dissenting).   Moreover, the terms "software", "programming", and "algorithm"
4  appear nowhere in the patent.   The Ultramercial patent never discloses that
5  software should be installed, a computer should be programmed, or an algorithm
6  should be implemented in order to perform the steps of the claimed method.  The
7  '545 patent is not a software patent.

8      Ultramercial's only support for its assertion to the contrary are citations to
9  the claims and the Examiner's "reasons for allowability."  Opp. at 14-15.  But
10  these citations include **no** reference to a machine or structure.  Certainly, the claims
11  are not tied to a particular machine, as discussed above.    And despite
12  Ultramercial's claim that the Examiner recognized that "the claims, when properly
13  construed, extend only to a specially-programmed computer," *id.* at 15, the
14  Examiner **never actually made that conclusion**.  *See* Malmberg Ex. 7 at 7-8.
15  Those words were supplied by Ultramercial in its brief, as a mischaracterization of
16  the Examiner's reasons for allowance.

17      Indeed, Ultramercial identifies no meaningful difference between the
18  allegedly computer-implemented steps of the Ultramercial patent and the
19  computer-implemented steps of other patents invalidated under *Bilski*.    As
20  discussed in Defendants' opening brief at pages 7-9, the Ultramercial patent is
21  materially similar to the *Cybersource* and *DealerTrack* patents.   Ultramercial
22  attempts to distinguish the *Cybersource* patent by arguing that "the claims at issue
23  in *Cybersource* merely required communication through the internet with a general
24  purpose computer."  Opp. at 19.  But this does not distinguish the *Cybersource*
25  patent from the Ultramercial patent.  The claims at issue in both patents cover a
26  method performed "over the Internet" comprising similar functions to collect
27  information from users.  *Compare* "obtaining information" in the *Cybersource*
28  patent *to* "receiving from the consumer a request" in the Ultramercial patent.  In

1    other words, the methods in both patents comprise "data-gathering steps (receiving
2    user input, obtaining information)" rejected by *Bilski*.  *Ex Parte Hindman*, No.
3    APL 2009-010729, 2009 WL 4004984, at *4 (B.P.A.I. Nov. 18, 2009).

4        Ultramercial attempts also to distinguish the *DealerTrack* patent, arguing
5    that it "was construed by the district court to include 'dumb terminals' as opposed
6    to a specially-programmed computer."  But Ultramercial is simply wrong.  As
7    here, the plaintiff in *DealerTrack* attempted to argue that the devices recited in the
8    claimed methods were "specially-programmed computers" because they were
9    required to implement the steps of the claimed methods.  657 F. Supp. 2d at 1155.
10   The district court rejected that argument noting that the *DealerTrack* patent "does
11   not specify precisely how the computer hardware and database are 'specially
12   programmed,' and the claimed central processor is nothing more than a general
13   purpose computer that has been programmed in some unspecified manner."  *Id.* at
14   1156; *see also Ex Parte Gutta*, APL 2008-3000, 2009 WL 112393, at *3 (B.P.A.I.
15   Jan. 15, 2009) ("'[a] computerized method performed by a data processor' adds
16   nothing more than a general purpose computer that is associated with the steps of
17   the process in an unspecified manner").  The claimed methods of the Ultramercial
18   patent should similarly be rejected because, even assuming a computer is required,
19   the '545 patent fails to specify how precisely that computer is "specially
20   programmed."  As such, the Ultramercial patent is not tied to a ***particular*** machine.

21       **C.    The Ultramercial Patent Fails The *Bilski* Transformation Prong**

22       Ultramercial asserts that the '545 patent satisfies the *Bilski* transformation
23   prong for two reasons:  (1) media products covered by intellectual property rights
24   are "physical objects or electronic signals representative of physical objects," and
25   (2) providing access to these media products is a transformation.  Both arguments
26   are wrong.

27       First, "text data, video data, and music data" are not physical objects or
28   signals representative of physical objects.  Rather, these media products are

intellectual property.  *See, e.g.,* '545 patent at 1:24-25 ("Intellectual property, including music, literature, visual arts (painting, photography, etc) and motion pictures").  And, by definition, these intellectual property products are intangible. *See Halligan*, 89 U.S.P.Q.2d at 1355 (noting that patents, trade secrets, and other intellectual property assets are intangible).

Second, even assuming that the media products represent or constitute physical objects, the media products are not transformed "from one state to another state."  *Bilski* expressly rejected the argument that changes in legal rights or intangible relationships could be eligible transformations.  *Bilski*, 545 F.3d at 963 ("Purported transformations or manipulation simply of public or private legal obligations or relationships, business risks, or other such abstractions cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances.").  Ultramercial argues that the media products "are transformed from a state that is physically inaccessible to a consumer to a state that [sic] physically accessible and displayed to a consumer." Opp. at 20.  But this is a "transformation" only in the abstract sense prohibited by *Bilski*.  Displaying the media product to the consumer is not a transformation.  As the BPAI has found, "the sole step of merely rendering data on a monitor does not involve transformation of the data into a different state or thing."  *Ex Parte Daughtrey*, No. APL 2008-0202, 2009 WL 963938, at *7 (B.P.A.I. Apr. 8, 2009).

Nor does the "lock" described by Ultramercial represent anything physical or tangible.  The "lock" controls the legal right to access the media.  Ultramercial's "transformation" is again merely the manipulation of legal obligations expressly prohibited by *Bilski*.  *Bilski,* 545 F.3d at 963.

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court grant their motion to dismiss Ultramercial's First Amended Complaint for failure to state a claim.

1  DATED:  February 8, 2010          WILSON SONSINI GOODRICH & ROSATI
2                                    Professional Corporation

3                                    /s/ Richard G. Frenkel
4                                    Richard G. Frenkel (SBN 204133)
                                     WILSON SONSINI GOODRICH & ROSATI
5                                    650 Page Mill Road
                                     Palo Alto, CA 94304
6                                    Telephone:  (650) 493-9300
                                     Facsimile:  (650) 565-5100
7                                    rfrenkel@wsgr.com

8                                    Attorneys for Defendant
9                                    WILDTANGENT, INC.

10 DATED:  February 8, 2010          COOLEY GODWARD KRONISH LLP

11                                   /s/ Iain R. Cunningham
12                                   Timothy S. Teter (SBN 171451)
                                     Iain R. Cunningham (SBN 232357)
13                                   COOLEY GODWARD KRONISH LLP
                                     Five Palo Alto Square
14                                   3000 El Camino Real
                                     Palo Alto, California 94303
15                                   Telephone:  (650) 843-5000
                                     Facsimile:  (650) 857-0663
16                                   teterts@cooley.com
                                     icunningham@cooley.com
17
                                     Attorneys for Defendant
18                                   YOUTUBE, LLC
19
   DATED:  February 8, 2010          O'MELVENY & MYERS LLP
20
21                                   /s/ Darin Snyder
22                                   Darin Snyder (SBN 136003)
                                     O'MELVENY & MYERS LLP
23                                   Two Embarcadero Center, 28th Floor
                                     San Francisco, CA 94111-3823
24                                   Telephone: (415) 984-8811
                                     Facsimile: (415) 984-8701
25                                   dsnyder@omm.com

26                                   Attorneys for Defendant
                                     HULU, LLC
27

28

1

## SIGNATURE ATTESTATION

2      I hereby attest that I have received the concurrence of Iain Cunningham and

3 Darin Snyder the e-filing of this document as indicated by the "conformed"

4 signature (/s/) above.

5

6                                          /s/ Richard G. Frenkel
                                           Richard G. Frenkel
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28