RICHARD G. FRENKEL (State Bar No. 204133)
rfrenkel@wsgr.com
LISA K. NGUYEN (State Bar No. 244280)
lnguyen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA  94304-1050
Telephone:  (650) 493-9300
Facsimile:  (650) 565-5100

Attorneys for Defendant
WILDTANGENT, INC.

DARIN SNYDER (State Bar No. 136003)
dsnyder@omm.com
LUANN SIMMONS (State Bar No. 203256)
lsimmons@omm.com
NORA PUCKETT (State Bar No. 248743)
npuckett@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: (415) 984-8811
Facsimile: (415) 984-8701

Attorneys for Defendant
HULU, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULTRAMERCIAL, LLC; ULTRAMERCIAL, INC., <br><br>Plaintiffs,<br><br>v.<br><br>HULU, LLC; WILDTANGENT, INC.,<br><br>Defendants. | Case No. CV 09-06918 RGK (PLAx)<br><br>**SUPPLEMENTAL BRIEFING REGARDING THE SUPREME COURT'S DECISION IN *BILSKI* IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>**CTRM: 850**<br>**JUDGE: Hon. R. Gary Klausner** |

## I. INTRODUCTION

The Supreme Court's decision in *Bilski v. Kappos*[1] confirms that Ultramercial's First Amended Complaint should be dismissed. The Supreme Court decision reaffirmed long-standing precedent that abstract ideas are not patentable. The Court also endorsed the "machine-or-transformation test" as a "useful and important clue" in determining that method claims, such as those asserted by Ultramercial, are unpatentable abstract ideas and are, therefore, invalid under 35 U.S.C. § 101.

The *Bilski* decision therefore does not change, and indeed supports, the grounds for dismissing Ultramercial's First Amended Complaint set forth in Defendants' motion to dismiss. U.S. Patent No. 7,346,545 (the "Ultramercial Patent") claims a method for distributing intellectual property content over the Internet to users willing to watch an advertisement. The Supreme Court's decision in *Bilski* confirms that Ultramercial's claimed method of Internet advertising is invalid under section 101 for two reasons. First, the Ultramercial Patent attempts to claim abstract ideas that the Supreme Court reaffirmed are not patentable under section 101. Second, the claims of the Ultramercial Patent fail the machine-or-transformation test, which, as the Supreme Court recognized, is important evidence that the claims do not disclose patentable subject matter. The Supreme Court's *Bilski* decision therefore strengthens Defendants' motion, and Defendants respectfully request that this Court dismiss Ultramercial's First Amended Complaint for failure to state a claim upon which relief can be granted.

## II. THE SUPREME COURT'S DECISION

The Supreme Court in *Bilski* unanimously affirmed the Federal Circuit's finding that the business method claimed by Bilski is invalid under 35 U.S.C.

---

[1] No. 08-964, 561 U.S. ___, 2010 WL 2555192 (U.S. June 28, 2010).

SUPPLEMENTAL BRIEFING RE SUPREME
COURT'S *BILSKI* DECISION IN SUPPORT OF
DEFENDANTS' MTN TO DISMISS
CASE NO. CV 09-06918 RGK (PLAx)

-1-

§ 101. In doing so, the Supreme Court confirmed that method claims that disclose only abstract ideas are unpatentable and that a claim's failure to meet the machine-or-transformation test is a "useful and important clue" that the applicant is attempting to patent unpatentable abstract ideas. *Bilski*, 2010 WL 2555192, at *8.

First, the Supreme Court confirmed that regardless of what test is applied, abstract ideas, like that claimed in the Ultramercial Patent, are not patentable. Specifically, the Supreme Court found that the method for hedging risk that Bilski sought to patent was ineligible subject matter because it was an attempt to patent an "abstract idea." *Bilski*, 2010 WL 2555192, at *13. The Supreme Court relied on a trilogy of previous decisions – the "guideposts in *Benson*, *Flook*, and *Diehr*" – that establish that even if a claimed abstract idea is "limited so that it could still be freely used outside" a single field of art, the invention remains unpatentable. *Id.* at *11. The Court further clarified that a patentee cannot save a claim either by reciting some "token postsolution components," such as data gathering and storage, or limiting a claimed abstract idea to use with a particular physical element. *Id.* at *11-12.

Second, as discussed above, the Supreme Court agreed that the failure to restrict a claim to a particular machine or to the transformation of an article is "a useful and important clue" that the claim is directed to ineligible subject matter. *Id.* at *13. Both Justice Stevens and Justice Breyer, in their concurring opinions, noted that the machine-or-transformation test would be effective in almost all cases. Justice Stevens stated that "[f]ew, if any, processes cannot effectively be evaluated using these criteria," *id.* at *16 (Stevens, J., concurring), and Justice Breyer stated "the Court intends neither to de-emphasize the [machine-or-transformation] test's usefulness nor to suggest that many patentable processes lie beyond its reach." *Id.* at *36 (Breyer, J., concurring). The Stevens concurrence was joined by Justices Ginsburg, Breyer, and Sotomayor, and Justice Scalia joined in Justice Breyer's concurrence as to the continued usefulness of the machine-or-

transformation test. Thus, although the majority opinion held that the machine-or-transformation test was not the exclusive test for determining patentability, a majority of five judges opined that very little falls outside the application of that test.

Third, the Supreme Court did not modify the Federal Circuit's description of how the machine-or-transformation test should be applied. And immediately after the Supreme Court issued its decision in *Bilski*, the USPTO issued interim guidelines advising its examiners to "continue to examine patent applications . . . *using the existing guidance* concerning the machine-or-transformation test as a tool for determining whether the claimed invention is a process under section 101." Frenkel Decl. Ex. A at 3 (emphasis added). Accordingly, the application of the machine-or-transformation test by the Federal Circuit, district courts, and the U.S. Patent Office Board of Patent Appeals & Interferences ("BPAI") remains valuable and instructive precedent.

Finally, the Supreme Court rejected the test for determining patentability that was in effect when the Ultramercial Patent issued. Before the Federal Circuit's *Bilski* decision, and at the time the Ultramercial Patent issued, the "useful, concrete and tangible result" test set forth in *State Street Bank & Trust Co. v. Signature Fin. Group, Inc.*, 149 F.3d 1368 (Fed. Cir. 1998), was the controlling test for patentability. The Supreme Court stated that while the machine-or-transformation test may no longer be the exclusive test for determining patentability, it was not endorsing the use of prior tests, like the one set forth in *State Street*. *Id.* at *13, 28-29 (Stevens, J., concurring), 36 (Breyer, J., concurring).

### III.  THE ULTRAMERCIAL PATENT IS INVALID UNDER THE SUPREME COURT DECISION IN *BILSKI*

The Ultramercial Patent is invalid on its face. And the Supreme Court's decision in *Bilski* confirms this conclusion. The Supreme Court affirmed the points and authorities on which the Defendants relied to establish that the

Ultramercial Patent is invalid under 35 U.S.C. § 101: (1) the Ultramercial Patent claims an unpatentable abstract idea; (2) the Ultramercial Patent fails the machine-or-transformation test; and (3) the Ultramercial Patent did not issue under the current law and is, therefore, not entitled to a presumption of validity.

### A.   The Ultramercial Patent Claims An Unpatentable Abstract Idea

A patent that claims nothing more than abstract ideas fails to meet the requirements for patentability. The Ultramercial Patent claims the idea of allowing a user to access intellectual property in exchange for watching advertisements. Docket Entry 29 ("Mot.") at 3. In essence, the Ultramercial Patent claims little more than the idea of bargained-for-exchange, which is precisely the type of process excluded from patentability as an abstract idea. *See Bilski*, 2010 WL 2555192, at *11.

The Supreme Court in *Bilski* explained that abstract ideas are not patentable because "'[a] principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right.'" *Id.* at *11 (citing *Gottschalk v. Benson*, 409 U.S. 63, 67, 93 S. Ct. 253, 34 L. Ed. 2d 273 (1972)) (quoting *Le Roy v. Tatham*, 55 U.S. (14 How.) 156, 175 (1852)). Because the method for hedging risk set forth in Bilski's patent application claimed only abstract business concepts and procedures concerning business transactions, the Court held the application invalid for failure to claim eligible subject matter. The Supreme Court explained that "[a]llowing petitioners to patent risk hedging would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea." *Id.* at *12. In reaching this decision, the Supreme Court relied upon its precedent in *Benson*, *Flook*, and *Diehr*, which established that a patent cannot claim all "substantial practical application[s]" of an abstract idea. *Benson*, 409 U.S. at 71; *see also Bilski*, 2010 WL 2555192, at *11-12. These cases further established that "limiting an abstract

SUPPLEMENTAL BRIEFING RE SUPREME
COURT'S *BILSKI* DECISION IN SUPPORT OF
DEFENDANTS' MTN TO DISMISS
CASE NO. CV 09-06918 RGK (PLAx)

-4-

idea to one field of use or adding token postsolution components [does] not make the concept patentable." *Bilski*, 2010 WL 2555192, at *12.

In *Benson*, the Supreme Court considered a patent application for an algorithm to convert binary-coded decimal numerals into pure binary code. *Id.* at *11. The claims required use of a computer's shift register to practice the invention. *Benson*, 409 U.S. at 73. The Supreme Court held that the patent application attempted to claim the unpatentable abstract idea of "converting . . . numerals to pure binary numerals" and noted that "[t]he mathematical formula involved . . . has no substantial practical application except in connection with a digital computer, which means that if the judgment [] is affirmed, the patent would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself." *Id.* at 71-72.

Similarly, as discussed in Defendants' motion, Claims 1-15 of the Ultramercial Patent disclose, at most, a practical application of the abstract idea of providing access to intellectual property content in exchange for watching ads. Mot. at 6-9. Under the Court's decisions in *Bilski* and *Benson*, Ultramercial's attempt to patent all substantial practical applications of Internet advertising would improperly grant Ultramercial an impermissible monopoly over an abstract idea. And the addition of the requirement that media content be downloaded to a computer in dependent claim 16 does not save Ultramercial's patent. This addition is nothing more than "a nominal recitation of physical structure . . . analogous to storing binary coded decimal signals in a shift register that the U.S. Supreme Court found to be unpatentable." *Id.* at 9-10 (citing to *Ex parte Forman*, No. APL 2008-005348, 2009 WL 2563527, at *6 (B.P.A.I. Aug. 17, 2009)). As such, the "practical effect" of the Ultramercial Patent is to pre-empt the concept of watching ads for media content. This is strictly prohibited under *Benson* and *Bilski*.

Nor does Ultramercial's application of its abstract idea to the Internet save the Ultramercial Patent. *Flook* expressly rejected the argument that the limitation

of a concept to one field of use can transform that concept into patentable subject matter. *Parker v. Flook*, 437 U.S. 584, 98 S. Ct. 2522, 57 L. Ed. 2d 451 (1978). The *Flook* court considered an application that attempted to patent a procedure for monitoring the conditions during the catalytic conversion process and its application to the petrochemical and oil-refining industries. "The Court conceded the invention at issue, unlike the algorithm in *Benson*, had been limited so that it could still be freely used outside the petrochemical and oil-refining industries." *Bilski*, 2010 WL 2555192, at *11. But ultimately, the Supreme Court found the application unpatentable because the "prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment.'" *Id.* (citation omitted).

Similarly, Ultramercial cannot circumvent the prohibition against patenting abstract ideas by limiting its "formula" – the abstract idea of providing access to intellectual property content in exchange for users viewing advertisements – to "a particular technological environment" – the Internet. *Flook*, 437 U.S. at 590; *see also* Mot. at 7-8. Nor is it sufficient that Ultramercial's method is "software-implemented." *See* Docket Entry 36 ("Reply") at 7-9. The Ultramercial Patent states in dependent claim 16 that the intellectual property content is "downloaded to a memory of a personal computer," a generic computer available to the consumer. Limiting the abstract idea of Internet advertising to a personal computer or software also is not enough for Ultramercial to overcome the prohibition against patenting abstract ideas. *See Benson*, 409 U.S. at 71-72; *see also Ex parte Proudler*, No. APL 2009-6599, 2010 WL 2727840, at *2 (B.P.A.I. July 8, 2010) ("[a] claim that recites no more than software, logic or a data structure (i.e., an abstraction) does not fall within any statutory category . . . [t]he unpatentability of abstract ideas was confirmed by the U.S. Supreme Court in *Bilski v. Kappos*").

Finally, the subject matter of the Ultramercial Patent is entirely different from the industrial process at issue in *Diehr*, which the Supreme Court found

1  patentable. *Diamond v. Diehr*, 450 U.S. 175, 101 S. Ct. 1048, 67 L. Ed. 2d 155
2  (1981).  In *Diehr*, the Supreme Court considered whether a method for curing
3  rubber which applied a mathematical algorithm was valid under section 101.
4  *Bilski*, 2010 WL 2555192, at *11.  In contrast to the Ultramercial Patent and the
5  applications at issue in *Benson* and *Flook*, the Diehr application did not "seek to a
6  patent a mathematical formula [or other abstract concept].  Instead, [it sought]
7  patent protection for a process of curing synthetic rubber." *Diehr*, 450 U.S. at 187.
8  In other words, the abstract idea (the mathematical formula) was not the invention.
9  Rather, the invention was a specific method of curing synthetic rubber, a method
10 that required use of a specific mathematical algorithm.  Unlike the patent in *Diehr*,
11 the Ultramercial Patent claims the abstract idea itself.  *See In re Warmerdam*, 33
12 F.3d 1354, 1360 (Fed. Cir. 1994) (stating that under Supreme Court precedent, "the
13 dispositive issue for assessing compliance with § 101 . . . is whether the claim is
14 for a process that goes beyond simply manipulating 'abstract ideas' or 'natural
15 phenomena.'"); *see also* Reply at 9-10.

16       For purposes of the § 101 patentability analysis, the subject matter of the
17 Ultramercial Patent is materially indistinguishable from that of the Bilski
18 application.  The Ultramercial Patent claims a series of transactions between a
19 facilitator of an IP holder and consumers of that IP wherein the consumers obtain
20 access to the IP in exchange for viewing an ad.  Mot. at 3.  This is no different than
21 the claimed invention in *Bilski* which required "a series of transactions between
22 said commodity provider and consumers of the said commodity wherein said
23 consumers purchase said commodity at a fixed rate based upon historical
24 averages." *Bilski*, 2010 WL 2555192, at *4.  Accordingly, there is no reason why
25 the Court cannot find the Ultramercial patent invalid under 35 U.S.C. § 101 and
26 grant Defendants' motion to dismiss.

27
28

SUPPLEMENTAL BRIEFING RE SUPREME     -7-
COURT'S *BILSKI* DECISION IN SUPPORT OF
DEFENDANTS' MTN TO DISMISS
CASE NO. CV 09-06918 RGK (PLAx)

### B. The Ultramercial Patent Is Invalid Under The Machine-or-Transformation Test

The failure to meet the machine-or-transformation "is a clue that the claim is for a prohibited 'abstract idea.'" Reply at 1; *see also Bilski*, 2010 WL 2555192, at *13. The test is "an *important example* of how a court can determine patentability under § 101," and the Supreme Court *Bilski* decision "neither [] deemphasize[d] the test's usefulness nor [] suggest[s] that many patentable processes lie beyond its reach." *Bilski*, 2010 WL 2555192, at *36 (Breyer, J., concurring) (emphasis in original). In short, the machine-or-transformation test is determinative of patentability in almost all cases, unless there is a clear indication otherwise. *See, e.g.,* Frenkel Decl. Ex. A at 3 (USPTO interim guidelines advising examiners to use the results of the machine-or-transformation test to determine compliance with § 101 "unless there is a clear indication" as to whether the method is directed to an abstract idea).

As discussed in Defendants' motion, the invention claimed in the Ultramercial Patent is neither tied to a particular machine nor transformative of an article and, thus, fails this important test. Mot. at 6-13. The method of watching an advertisement in exchange for access to intellectual property claimed in the Ultramercial Patent describes, at best, a series of functional steps (for example "receiving, from a content provider, media products" and "offering to a consumer access to the media product," '545 Patent at claim 1) that can be performed by any general purpose machine. *Id.* at 6-10. Moreover, the recited claims of the Ultramercial Patent require only the manipulation of legal obligations and relationships, not a transformation of a physical article, to allow access to the intellectual property. *Id.* at 11-13; Reply at 7-9.

When the claimed subject matter so plainly fails the machine-or-transformation test and fails to fit within the patentability "guideposts of *Benson*, *Flook*, and *Diehr*," as is the case with the Ultramercial Patent, the patent must be

found ineligible for patent protection under 35 U.S.C. § 101. *Bilski*, 2010 WL 2555192, at *13.

### C. Because The Ultramercial Patent Issued Under A Standard The Supreme Court Rejected, It Is Not Entitled To A Presumption Of Validity

When the Ultramercial Patent issued, the "useful, concrete, and tangible result" test set forth in *State Street* was still good law. Accordingly, and as discussed in Defendants' motion papers, the Ultramercial Patent issued without the benefit of the Federal Circuit's articulation of the machine-or-transformation test or the Federal Circuit's rejection of the *State Street* approach. *See* Mot. at 1-2. The Supreme Court's decision in *Bilski* endorses the rejection of the "useful, concrete, and tangible result" test. *Bilski*, 2010 WL 2555192, at *13 (majority opinion), 28-29 (Stevens, J., concurring), 36 (Breyer, J., concurring). Because the Ultramercial Patent issued under a test that is no longer good law, it is no longer entitled to any presumption of validity under that test.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court grant its motion to dismiss under *Bilski*.

DATED: July 20, 2010   WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

/s/ Richard G. Frenkel
Richard G. Frenkel (SBN 204133)
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
rfrenkel@wsgr.com

Attorneys for Defendant
WILDTANGENT, INC.


| | | |
|---|---|---|
| 1 | DATED: July 20, 2010 | O'MELVENY & MYERS LLP |

/s/ Darin Snyder
Darin Snyder (SBN 136003)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: (415) 984-8811
Facsimile: (415) 984-8701
dsnyder@omm.com

Attorneys for Defendant
HULU, LLC

SUPPLEMENTAL BRIEFING RE SUPREME
COURT'S *BILSKI* DECISION IN SUPPORT OF
DEFENDANTS' MTN TO DISMISS
CASE NO. CV 09-06918 RGK (PLAX)

-10-

## SIGNATURE ATTESTATION

I hereby attest that I have received the concurrence of Darin Snyder in the e-filing of this document as indicated by the "conformed" signature (/s/) above.

/s/ Richard G. Frenkel
Richard G. Frenkel