LAWRENCE M. HADLEY (SBN 157728)
hadleyl@hbdlawyers.com
HAZIM ANSARI (SBN 190601)
ansarih@hbdlawyers.com
MIEKE K. MALMBERG (SBN 209992)
malmbergm@hbdlawyers.com
HENNIGAN BENNETT & DORMAN, LLP
865 S. Figueroa St., Suite 2900
Los Angeles, CA 90017
Telephone:   (213)694-1200
Facsimile:    (213) 694-1234

Attorneys for Plaintiffs
ULTRAMERCIAL, LLC;
ULTRAMERCIAL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULTRAMERCIAL, LLC;<br>ULTRAMERCIAL, INC.<br><br>             Plaintiff,<br><br>      v.<br><br>HULU, LLC; WILDTANGENT, INC.,<br><br>             Defendants. | Case No. CV 09-06918 RGK (PLAx)<br><br>**PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION TO DISMISS BASED ON THE SUPREME COURT'S *BILSKI* DECISION [D.I. 29, 34, 36]**<br><br>**[PROVIDED PURSUANT TO THIS COURT'S ORDER DATED MARCH 3, 2010 [D.I. 46]]**<br><br>**CTRM: 850**<br>**JUDGE:  Hon. R. Gary Klausner** |

## I. INTRODUCTION

Defendants moved to dismiss Ultramercial's patent infringement action on the sole ground that all 16 claims of Ultramercial's patent (U.S. Patent No. 7,346,545) are ineligible for patenting under 35 U.S.C. § 101. In their moving papers, Defendants rested their ineligibility assertion on a single argument: That the 16 claims in Ultramercial's '545 patent fail the "machine or transformation" test set forth in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008). By the time Defendants made their motion, however, the Supreme Court had agreed to take the *Bilski* case and consider the standards for patentability under § 101. Accordingly, on March 3, 2010, this Court stayed this case, and ordered the parties to provide supplemental briefing on Defendants' motion once the Supreme Court issued its opinion in *Bilski*.

On June 28, 2010, the Supreme Court issued its decision in *Bilski*, rejecting the "machine or transformation" test as the sole test for patent eligibility. Furthermore, the Supreme Court confirmed that business methods fall within the scope of patentable "processes" under 35 U.S.C. § 101. Finally, the Supreme Court held that business methods satisfy the eligibility requirements of § 101, as long as they do not categorically preempt "an abstract idea, law of nature, or mathematical formula…." *Bilski v. Kappos*, 2010 U.S. LEXIS 5521, 95 U.S.P.Q.2d (BNA) 1001 (U.S. June 28, 2010).

Aside from the reasons set forth in Ultramercial's prior opposition,[1] the Supreme Court's *Bilski* leaves no doubt that the claims in the Ultramercial '545 patent recite patent-eligible subject matter, even if the claims somehow do not

---

[1] First, as explained in Ultramercial's prior opposition, compliance with the patent eligibility requirements of 35 U.S.C. § 101 should not be decided on a motion to dismiss prior to any claim construction, particularly where Defendants have not even offered proposed constructions. Second, as also explained in Ultramercial's prior opposition, the claims of the '545 patent satisfy both the "machine" and "transformation" prongs of the Federal Circuit's test.

satisfy either prong of the "machine or transformation" test. Simply put, each claim in the Ultramercial patent recites a "process" within the scope of § 101, not a principle. Nor do claims preempt any "abstract idea, law of nature, or mathematical formula." *Bilski*, 2010 U.S. LEXIS 5521 at *29. Rather, the claimed methods for "gating" the distribution of on-line content through the use of advertising, and blocking the content from on-line users until a consumer either pays for the content or completely views an advertisement, easily fall within the type of concrete processes that are eligible for protection under the Patent Act. Finally, the Supreme Court's *Bilski* decision renders Defendants' characterization of the Ultramerical invention as a "business method" patent irrelevant. The Supreme Court expressly affirmed that business methods are eligible for protection under the Patent Act. Thus, Defendants' motion must be denied.

## II. THE SUPREME COURT'S BILSKI DECISION

In *Bilski*, the Patent Office rejected an application for a patent on a method that would allow commodity traders in the energy market to protect (or "hedge") themselves against price fluctuations. According to the recited steps, hedging could be accomplished by (a) initiating a series of transactions with consumers where the consumers purchased the commodity (such as energy) at a fixed rate based upon historical averages; (b) identifying a set of market participants with different risk positions than the consumers; and (c) initiating a series of transactions with the market participants at a second fixed rate so that the transactions with the market participants balanced the risk positions of the consumer transactions.

On appeal from the Patent Office's final rejection, the Federal Circuit affirmed the rejection, holding that the application claimed non-patentable subject matter under 35 U.S.C. § 101. Additionally, in a subsequent *en banc* decision, the Federal Circuit concluded that the "machine or transformation" test provided the sole standard for determining patent eligibility. *In re Bilski*, 545 F.3d at 963-66. In the following months, a number of district courts read the Federal Circuit's decision

as rejecting business method patents altogether. *See Cybersource Corp. v. Retail Decision, Inc.*, No. 3:04-cv-03268 (N.D. Cal. 2009). On June 28, 2010, the Supreme Court granted *certiorari*.

Although the Supreme Court affirmed the Federal Circuit's rejection of the *Bilski* application, the Supreme Court effectively overturned the Federal Circuit's reasoning. At the outset, the Supreme Court cautioned that courts "'should not read into the patent laws limitations and conditions which the legislature has not expressed.'" *Bilski*, 2010 U.S. LEXIS 5521 at *15 (quoting *Diamond v. Diehr*, 450 U.S. 175, 182 (1981)). Accordingly, the Patent Act's express allowance for patents on "processes," subject only to the established exceptions for "laws of nature, physical phenomena, and abstract ideas," control the determination of patent eligibility. *Id.* at *16.

Applying this principle of statutory construction, the Supreme Court held that the Federal Circuit had erred in adopting the "machine or transformation test as the sole test for what constitutes a patentable 'process….'" *Id.* While the "machine or transformation" test can serve as a "useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101," it is "not the sole test for deciding whether an invention is a patent-eligible 'process.'" *Id.* at *18. Justice Kennedy explained that the machine or transformation test is particularly unhelpful in determining whether a software method crosses the line between a patentable process and an ineligible abstract idea: "[T]here are reasons to doubt whether the [machine or transformation] test should be the sole criterion for determining the patentability of inventions in the Information Age. As numerous amicus briefs argue, the machine-or-transformation test would create uncertainty as to the patentability of software, advanced diagnostic medicine techniques, and inventions based on linear programming, data compression, and the manipulation of digital signals." *Id.* at *20.

The Supreme Court also rejected the "broad contention" that § 101 excludes "business methods" from patent eligibility. *Id.* at *22. To the contrary, the Supreme Court expressly held that business methods, including business methods implemented through computer software, are patentable eligible. *Id.* Indeed, the Supreme Court pointed to the fact that the Patent Act "explicitly contemplates the existence of at least some business method patents." *Id.* at *23 (citing 35 U.S.C. § 273(b)(1)).

In summarizing its holding, the Supreme Court emphasized its decision to not replace the "machine or transformation" test with some other "categorical rules that might have wide-ranging and unforeseen impacts." *Id.* at *26. Rather, the Supreme Court confirmed that eligibility of methods for patenting under § 101 could be determined by the definition of "process" contained in 35 U.S.C. § 100(b), together with guidance from the Supreme Court's prior decisions in *Benson*, *Flook* and *Diehr*.[2] Those cases broadly establish a rule against patenting "laws of nature, physical phenomena, and abstract ideas." *Id.* at *16. Additionally, "the prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity.'" *Id.* at *28 (quoting *Diehr*, 450 U.S., at 191-192)). At the same time, "while an abstract idea, law of nature, or mathematical formula [cannot] be patented, 'an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection.'" *Id.* at *28 (quoting *Diehr*, 450 U.S. at 187)).

In sum, the question of patent eligibility ultimately focuses on whether the claim recites a "process" and not a "principle." *Flook*, 437 U.S. at 456. Methods

---

[2] *Gottschalk v. Benson*, 409 U.S. 63 (1972), *Parker v. Flook*, 437 U.S. 584 (1978); *Diamond v. Diehr*, 450 U.S. 175 (1981).

that claim a "process" are not excluded from patent eligibility even if they can be labeled "business" methods. If a method satisfies either prong of the "machine or transformation" test, it certainly meets the eligibility requirements of § 101. But even if a claimed method does not satisfy the "machine or transformation" test, it is still patent eligible so long as it does not preempt any "abstract idea, law of nature, or mathematical formula." *Bilski*, 2010 U.S. LEXIS 5521 at *29.

### III. ALL CLAIMS IN ULTRAMERCIAL'S '593 PATENT RECITE PATENT-ELIGIBLE SUBJECT MATTER UNDER THE SUPREME COURT'S *BILSKI* DECISION

As demonstrated in Ultramercial's Opposition to the Motion to Dismiss (D.I. 34), Ultramercial's patent meets *both* prongs of the machine or transformation test. Satisfaction of either test confirms patent eligibility under 35U.S.C. § 101. For this reason alone, Defendants' motion must be denied. But even if claims in Ultramercial's patent do not satisfy either prong of the machine or transformation test (which they do), the recited methods still meet the patent-eligibility requirement of § 101 because they claim processes, not principles, and they do not preempt any abstract idea, law of nature, or mathematical formula.

Each claim of the Ultramercial patent is directed to "gating" the distribution of copyrighted (and other intellectual property protected) content online to consumers by locking the content until a consumer either pays for the content or views an advertiser's message that is paired with the content. The recited steps of each process claim are performed with a programmed computer that, among other things, (1) selects an advertisement to match with media content, (2) uses the advertisement to lock the content, making it physically inaccessible to the consumer, (3) gives the consumer physical access to the content only after the consumer fully views or interacts with the sponsored advertisement, and (4) tracks and logs each display of the advisement so the content owner can be compensated from the

sponsoring advertiser. These steps easily fit within the definition of "process" under 35 U.S.C. § 100(b), and none involves an abstraction or law of nature.

Defendants do not contend otherwise. Instead, Defendants' sole contention is that the Ultramercial claims fail to meet their articulation of the machine or transformation test – an articulation that is at odds with Federal Circuit's own description of the machine or transformation test. In fact, Defendants' argument ultimately distills into one simple concept: The Ultramercial patent claims a business method, and business methods are not eligible for patenting under the machine or transformation test. Even if Ultramercial's patent could be fairly characterized as a so-called "business method," the Supreme Court's *Bilski* decision squarely rejects Defendants' theory that business methods are not patentable.

Moreover, the Ultramercial patented processes are easily distinguishable from the claims rejected in *Bilski*. As the Supreme Court explained, the *Bilski* method of hedging to reduce risk in commodities trading claimed nothing more than an abstract idea: "'Hedging is a fundamental economic practice long prevalent in our system of commerce and taught in any introduction finance class.'" *Bilski*, 2010 U.S. LEXIS 5521 at *29-30 (quoting *In re Bilski*, 545 F.3d at 1013 (Rader, J., dissenting)). Additionally, certain of the *Bilski* claims reduced the concept of hedging to a mathematical formula, which the Supreme Court has long held to be non-patentable. *Id*. at *30.

Likewise, the Ultramercial claims share nothing in common with the claims rejected in the *Benson* and *Flook* cases. In *Benson*, the Supreme Court held that a patent application for an algorithm to convert binary-coded decimal numerals into pure binary code did not fall within the scope of patentable "processes" under § 101becuase mathematical formulas are abstract ideas. Allowing the patent "would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself." *Benson*, 409 U.S. at 72. In *Flook*, the Supreme Court affirmed the rejection of a patent application that claimed a procedure for

monitoring the conditions during the catalytic conversion process in the petrochemical and oil-refining industries where the only innovation relied on a mathematical algorithm. *Flook*, 437 U.S. at 585-586. Although the claims limited the use of the algorithm to the petrochemical and oil-refining industries, the Supreme Court found that "post-solution activity, no matter how conventional or obvious in itself, [cannot] transform an unpatentable principle into a patentable process." *Id.* at 590.

Unlike the abstract ideas and mathematical algorithms rejected in *Bilski*, *Benson*, and *Flook*, the methods recited in the Ultramercial patent more closely conform to the claims upheld in *Diehr*, which involved methods for molding synthetic rubber into products with the aid of a digital computer. *Diehr*, 450 U.S. at 181. Although the *Diehr* claims required the use of a mathematical formula to complete some of the recited steps by way of a computer, *Diehr* explained that "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id*. at 187. Thus, while an idea or mathematical formula may not be patented, a process is patent-eligible as long as it maintains innovation beyond, or in addition to any mathematical equations or algorithms. *Id*. at 192-193.

Similarly, the methods recited in the Ultramercial patent do not rely exclusively on mathematical equations for novelty but instead include many specifically articulated limitations, which allow the novel gating and monetization of media content distributed over the internet. The Patent Examiner recognized these novel aspects of Ultramercial's invention when he stated:

> "The claimed invention distributes media products covered by intellectual property rights available for purchase via a facilitator's website **. . . *The prior art on record neither alone nor in combination with supporting prior art teach and suggest the . . . combination of . . . selecting a sponsor message*** to be associated with at least one of said media products, said sponsor message being

> selected from a plurality of sponsor message, . . . ***accessing an activity log*** to verify that the total number of times which the sponsor message has been previously presented is less than the number of transaction cycles contracted by the sponsor of the sponsor message . . . ***offering to a consumer access to a media product without charge to the consumer on the precondition that the consumer views the sponsor message*** . . . receiving payment from the sponsor of the sponsor message displayed." [3]

In short, under the Supreme Court's *Bilski* decision, all claims of the Ultramercial '545 patent satisfy 35 U.S.C. § 101 because they recite processes, not abstract principles or mathematical formulas. Even to the extent Ultramercial's patented method may utilize algorithms, those algorithms are implemented on a specially programmed computer for the specific purpose, among other things, of distributing and monetizing gated content online, selecting advertising messages, and unlocking the content once a customer has paid for it or the customer has viewed the advertising in its entirety. In other words, Ultramercial's claimed method of gating and monetizing media content distributed over the internet through the use of sponsored advertising is not a fundamental or abstract principle that is, by definition, owned by mankind. Thus, Defendants' motion must be denied.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs ask that Defendants' motion to dismiss be denied and that the stay be lifted so that this matter may proceed on the merits.

---

[3] Ultramercial's Opposition at 15 and accompanying declaration.

| | |
|---|---|
| DATED: July 20, 2010 | HENNIGAN, BENNETT & DORMAN LLP |
| | /s/   Lawrence M. Hadley |
| | Lawrence M. Hadley |
| | Attorneys for Plaintiffs |
| | ULTRAMERCIAL, LLC; |
| | ULTRAMERCIAL, INC. |

CASE NO. CV 09-06918 RGK (PLAx)

iManage\1609822.1-MALMBERGM

9   PLAINTIFFS' SUPPLEMENTAL BRIFING ON THE EFFECT OF THE SUPREME COURT'S BILSKI DECISION ON THE PENDING MOTION TO DISMISS