JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-06918 RGK (PLAx) | Date | August 13, 2010 |
|---|---|---|---|
| Title | *ULTRAMERCIAL, LLC et al. v. HULU, LLC, et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**      **(IN CHAMBERS)** Order re: Defendants' Motion to Dismiss (DE 26 and 29)

I.   **INTRODUCTION**

   This is a patent infringement suit brought by Plaintiff Ultramercial, LLC ("Plaintiff") against Defendants Hulu, LLC and Wildtangent, Inc. (collectively, "Defendants") for alleged infringement of U.S. Patent No. 7,346,545 (the '545 patent).[1] Because the Court finds that the '545 patent does not cover patentable subject matter, it **GRANTS** Wildtangent, Inc.'s Motion to Dismiss (DE 29). Hulu, LLC's Motion to Dismiss (DE 26) is **DENIED as moot**.

II.   **BACKGROUND**

   The '545 patent claims an invention for distributing copyrighted products over the Internet (or other networks). In particular, the '545 patent discloses a method for allowing Internet users to view copyrighted material free of charge in exchange for watching certain advertisements. A computer or a server acts as a gateway between the Internet user and the copyrighted material. An advertisement sponsor may purchase advertising space for a particular copyrighted material (a television show episode for example). Upon attempting to stream a "free" television show episode, for example, the Internet user will be presented with advertisement. The user cannot view the copyrighted material until the ad is fully displayed.  The result is that the viewer gets to watch what he wants for free, and the sponsor gets to deliver its advertisement to the intended audience.

   The two independent claims of the '545 patent are claims 1 and 8. Claim 1, in its entirety, discloses a number of steps that comprise the process of displaying advertisement in exchange for access to copyrighted media. The steps are 1) receiving media from content provider, 2) selecting an ad after consulting an activity log to determine how many times the ad has been played and how many

---

[1]The Complaint originally named Youtube, LLC, as the third defendant. The parties, however, have already stipulated to Youtube, LLC's dismissal.

more times it need be played, 3) offering media products on the Internet, 4) restricting general public access to the media, 5) offering various media to customers for free in exchange for their watching the selected ad, 6) receiving a request to view the media from the Internet user, 7) facilitating the display of the ad, 8) allowing the Internet user access to the media, 9) same as 8 but for interactive media, 10) recording the transaction in the activity log, and 11) receiving payment from sponsor for the ad.

The second independent claim (claim 8) is almost identical to claim 1. The differences between the two independent claims are not material for the purpose of this Order. The remaining (dependent) claims add more "steps" to those in the independent claims. For example, claim 2 discloses "the step of paying royalties to the content provider." Claim 3 discloses "the step of entering into a licensing agreement with the owner of the intellectual property." Claim 4 discloses "the step of barring the content provider from pretending to be a customer" [to make sure the content provider cannot artificially inflate the view count]. Claim 5 discloses "the step of tendering payment to the content provider." Claim 6 discloses "the step of issuing [] a password" to the Internet user." Claim 7 discloses "the step of verifying a submitted password." And so on.

## III.    JUDICIAL STANDARD

A party may move to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the Court must assume that the plaintiff's allegations are true and construe the complaint in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## IV.    DISCUSSION

Under the Patent Act of 1952, subject matter patentability is a threshold requirement. 35 U.S.C § 101. "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." *Id.* Recently in *Bilski v. Kappos*, __ U.S. __, 130 S.Ct. 3218, 3225 (2010), the Supreme Court emphasized again that excluded from the patentable subject matter are "laws of nature, natural phenomena, and abstract ideas."

Here, Defendants argue that Plaintiff's '545 patent does not disclose patentable subject matter. Originally, this Motion was filed before the Supreme Court handed down the decision in *Bilski*, 130 S.Ct. at 3218. In order to benefit from the Supreme Court's guidance on the law regarding patentable subject matter and because of similarities between the case at hand and *Bilski*, this Court stayed the case until the Supreme Court issued its opinion. Thereafter the parties filed supplemental briefings, in which they each provide their account of how the Supreme Court's decision helps their case. After having reviewed the filings and the relevant case law in full, this Court finds that the '545 patent does not disclose patentable subject matter. Not only does the patent fail the machine or transformation test, it claims an abstract idea. Therefore, Plaintiff's Complaint should be dismissed.

### A.    The '545 Patent Does Not Satisfy the Machine or Transformation Test

In *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008), the Federal Circuit held that a process is not patentable unless it is "tied to a particular machine," or "transforms an article." The en banc decision produced various concurring and dissenting opinions, all of which need not be discussed here. It suffices to mention that the so called "machine or transformation test," according to the majority, was the sole test for patentability of processes, including business method and software patents. *Id.* And since the invention at issue in *Bilski*–a method for hedging investments–did not meet the test, it was held to be invalid. *Id.*

On Supreme Court review, all Justice agreed that the *Bilski* patent was not covered by patentable subject matter. 130 S.t at 3218. How one gets to that conclusion, however, the Justices did not agree. The majority opinion thought it too broad to categorically invalidate all patents that do not meet the machine or transformation test. *Id.* at 3226. The machine or transformation test, according to the Supreme Court, provided a "useful and important clue," but it was not determinative in all situations. *Id.* at 3227. Instead, the inquiry should be whether the claimed invention is a "law of nature, physical phenomena," or an "abstract idea[]." *Id.* at 3226. Yet the Supreme Court did not offer an example of an invention that would not be tied to a machine or transform an article and still pass the subject matter test. The Court stopped at holding that the *Bilski* patent disclosed an abstract idea–the idea of hedging investments–and therefore, regardless of the machine or transformation test, it was invalid. *Id.* at 3230-31.

It is important to note, however, that even after the Supreme Court's decision in *Bilski*, the machine or transformation test appears to have a major screening function–albeit not perfect– that separates unpatentable ideas from patentable ones. Indeed, four of the Justices, listed on Justice Stevens's concurring opinion, would have taken the machine or transformation test to its logical limit to hold that business methods are categorically unpatentable. *Id.* at 3257 (Stevens, J., concurring). Joining a concurring opinion, Justice Scalia, who signed on to parts of the plurality opinion as well, would not hold all business methods unpatentable, but would agree with Justice Breyer that "not [] many patentable processes lie beyond [the] reach [of the machine or transformation test]." *Id.* at 3258 (Breyer, J., concurring). In sum, at least five (and maybe all) Justices seem to agree that the machine or transformation test should retain much of its utility after the Supreme Court's decision in *Bilski*. Therefore, even though the machine or transformation is no longer the litmus test for patentability, the Court will use it here as a key indicator of patentability.

Turning to the mechanics of the test itself, the Court notes that not every patent that recites a machine or transformation of an article passes the machine or transformation test. *Bilski*, 545 F.3d at 961. A mere recitation of a machine or transformation in the claim will not suffice because "[i]nsignificant postsolution activity will not transform an unpatentable principle into a patentable process." *Id.* The machine or transformation "must impose meaningful limits on the claim's scope to impart patent-eligibility." *Id.* (citation omitted). Below, the Court finds that the '545 patent does not satisfy the machine or transformation test.

        1.    <u>The '545 Patent Is Not Tied to a Machine</u>

A machine is a "concrete thing, consisting of parts or of certain devices and combination of devices." *In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009).[2] Yet, physical steps are not needed to allow a process claim to be patentable. *In re Bilski*, 545 F.3d at 961. As long as the invention is tied to a machine or transforms an article, it may be patentable notwithstanding its lack of physical steps. *Id.*

---

[2] It was undisputed in *Bilski* that the machine part of the machine or transformation test was not satisfied. 545 F.3d at 962. Therefore, *Bilski* does not provide much guidance on how to apply the machine prong of the test.

The two independent claims of the '545 patent recite the steps of exchanging media for advertisement viewing. There are only three points in the '545 patent that the parties have identified as a possible reference to a machine. The first two ("facilitator" and "Internet") appear in the independent claims (1 and 8): "A method for distribution of products over the Internet via a facilitator." The third appears in dependent claim 16: "The method . . . wherein media product accessed by the consumer is downloaded to a memory of a personal computer of the consumer." The Court finds that none of the three satisfy the machine prong of the test.

Despite Plaintiff's argument, the "facilitator" recitation does not meet the machine requirement. First, there is no reason to read "facilitator" as a machine such as a computer. Indeed, the patent specification suggests the contrary: the schematics in the patent specification depict the facilitator as a person. Moreover, the '545 patent explains that the facilitator may "communicate through . . . telephony, facsimile, courier, mail or even person-to-person meeting." The specification makes it clear, therefore, that the '545 patent is not aimed at a computer-specific application; it is a broad claim to the concept of exchanging media for advertisement viewing.

Neither does the "Internet" recitation save the patent. First, this Court agrees with the District Court in the Northern District of California that held the Internet is not a machine. *CyberSource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068 (N.D. Cal. 2009) ("[T]he Internet is an abstraction." "One can touch a computer or a network cable, but one cannot touch 'the internet.'"). In *CyberSource*, the court held that methods for "detecting fraud in credit card transaction between consumer and merchant *over the Internet* were not tied to a specific machine." *Id.* at 1077-78 (emphasis added). This Court agrees in full with the court's reasoning in *CyberSource* to the effect that the "over the Internet" recitation does not make an otherwise unpatentable idea patentable. *Id.*

Finally, the mere act of storing media on computer memory does not tie the '545 invention to a machine in any meaningful way. Since Plaintiff does not argue this point, the Court will not address it in detail. It suffices to say, however, that the argument would have been too farfetched and hence futile.

Plaintiff makes two counter arguments that need be addressed. First, Plaintiff points to many steps in the '545 patent that, according to Plaintiff, address computer-specific functions (such as issuing and verifying passwords, transmitting an ad until it is timed out, making content physically available to the consumer, etc.). (Pl. Opp., at 16.) Second, Plaintiff argues that the segments of the patent specification quoted here only says that "some communication [may] take place without a programmed machine (e.g., communication between a IP rights holder and interposed sponsor)," but "all communication between the consumer and facilitator take place utilizing a specifically-programmed computer."[3] (Pl. Opp., at 17:25-18:15.) In sum, Plaintiff argues that the '545 patent is computer-specific and not a broad invention that may be performed by a person. As a result, Plaintiff suggests that the '545 patent meets the machine prong of the test.

Plaintiff's argument is unavailing. There is nothing inherently computer-specific about receiving

---

[3] The preferred embodiment specification states in pertinent part,

> In accordance with the preferred embodiment, four principals are preferably present: a facilitator, a consumer, an intellectual property (IP) rights holder, and an interposed sponsor. All of the principals preferably communicate over a telecommunications network such as the Internet, using their respective computers: facilitator's computer, consumer's computer, IP rights holder's computer 30A and interposed sponsor's computer. Three of the principals (facilitator, IP rights holder and interposed sponsor) may also communicate through a twoway communications path, which may include telephony, facsimile, courier, mail or even person-to-person meetings.

media from a content provider, choosing a sponsor for the media, selecting an ad for the sponsor, verifying the viewer's activity, assigning passwords, charging the sponsor for the advertisement, or any of the remaining steps.

Yet Plaintiff is perhaps still correct to point out that the only useful application of Plaintiff's invention is with relation to the Internet, where the facilitator is a specifically "programmed computer."[4] That does not mean, however, that the patent claims are limited to use on a computer, or, more importantly, that they are *tied* to one. That the disclosed invention is only used on computers or computer networks cannot alone satisfy the machine test without rendering the test completely toothless.[5] As already stated above, the machine must limit the invention in a meaningful way. One cannot circumvent the patentability test by merely limiting the use of the invention to a computer. The binary representation, one of the most fundamental concepts that has enabled digital computation as we know it today was not patentable, even though its utility was linked to "general-purpose digital computers." *Gottschalk v. Benson*, 409 U.S. 63, 64 (1972). Similarly in the case of the '545 patent, the concept of advertisement-media-exchange does not become patentable simply because the patentee claims to have limited its application to the Internet or computers. Therefore, the '545 patent fails the machine test.

### 2. *The '545 Patent Does Not Transform an Article*

There can be little dispute that the '545 patent does not transform an article. "Transformation and reduction of an article 'to a different state or thing' is the clue to the patentability of a process claim that does not include particular machines." *Id.* at 70. None of the patent claims disclose a transformation. Plaintiff points to claim 16, which recites, "The method . . . wherein media product accessed by the consumer is downloaded to a memory of a personal computer of the consumer." Yet the mere transfer of data from one memory disk on one computer to another memory space in a second computer is not "transformation of article" under § 101. And the parties have not pointed out a case that held otherwise. That is not surprising: the nature of the computer memory does not vary based on what is stored in it. And even if storing content on a computer memory constituted transforming an article, Plaintiff's argument would still fail because such "transformation" is merely incidental to the '545 patent claims. What Plaintiff claims is the process of trading viewing of the advertisements for free access to media. That the media may be transferred from one computer (or server) to another is merely incidental. *Cf. Diamond v. Diehr*, 450 U.S. 175 (1981) (holding that the method of using temperature readings from a rubber press and inputting the reading in a well-known mathematical formula to determine accurately the cure-time was patentable because the process was meaningfully limited to transformation of an article). Unlike in *Diehr*, the '545 patent does not disclose a method for transforming an article, or the transformation disclosed is not a meaningful limitation to the claimed invention. Therefore, the transformation prong of the test is also not satisfied.

### B. **The '545 Patent Discloses an Abstract Idea**

In *Bilski*, the Supreme Court held that a method for hedging investments was an abstract idea and hence unpatentable. 130 S.Ct. at 3218. Claim 1 of the *Bilski* patent simply disclosed a number of steps in

---

[4] The "programmed computer" argument has its origin in *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994). That decision articulated the "useful, concrete, and tangible result" test for patentable subject matter, which was subsequently abrogated by the Federal Circuit in *Bilski* 545 F.3d at 959-60.

[5] The Court is aware that software patents or other method patents that involve programmed computers have never been categorically rejected under the patentable subject matter test. *Gottschalk v. Benson*, 409 U.S. 63, 71 (1972) (declining to hold that all patents for any "program servicing a computer" are invalid under § 101).

a particular hedging method: 1) trading commodity with a buyer at a price based on historical averages and the buyer's risk position, 2) finding buyers that have another type of risk position that counters the first buyer in step one, and 3) transacting with the second consumer in a way to balance (hedge) the risk of the transaction. *Id.* at 3223-24. The patent then went on to disclose the application of this method in trading energy commodities. *Id.* at 3224.

In rejecting the patent, the Supreme Court first noted that "hedging is a fundamental economic practice." *Id.* at 3231. Therefore, the core of the patent was not patentable because "allowing petitioners to patent risk hedging would pre-empt use of this approach in all fields." *Id.* Moreover, the remaining recitations did not rescue the patent because they were only "broad examples of how hedging can be used in commodities and energy markets." *Id.* Since the core of the patent was an abstract idea, and the additional limitations did not meaningfully contain the claimed invention, the *Bilski* invention was not patentable.

The case at hand is very similar. At the core of the '545 patent is the basic idea that one can use advertisement as an exchange or currency. An Internet user can pay for copyrighted media by sitting through a sponsored message instead of paying money to download the media. This core principle, similar to the core of the *Bilski* patent, is an abstract idea. Indeed, public television channels have used the same basic idea for years to provide free (or offset the cost of) media to their viewers.[6] At its heart, therefore, the patent does no more than disclose an abstract idea.

Also similar to the patent in *Bilski*, the added features, examples, or limitations of the '545 patent do not make it patentable. That the exchange (advertisement for media) is carried over the Internet, through a facilitator, using passwords and activity logs, does not limit the patent in a meaningful way. The patent still discloses an abstract idea garnished with accessories. If the claimed invention here were patentable, it would "preempt use of this [method] in all fields." *Id.*

Two points need be made clear at the end. One is that the Court rejects Plaintiff's argument that this Motion should not be decided before claim construction. While the Court (and the parties) consulted the claims and the specification, there is no need to formally construe any of the claims. The patent terms are clear, and Plaintiff has not brought to the Court's attention any reasonable construction that would bring the patent within patentable subject matter. Moreover, given the lack of clarity in this area of patent law, it is perhaps even more appropriate for this Court to render its decision at the earliest stage so that the parties may benefit from the Federal Circuit's guidance on the issue sooner rather than later, if they so desire.

Second, the Court acknowledges that this case calls for the difficult task of deciphering whether the '545 invention falls under the *Bilski* or *Diehr* categories. In both, the claimed invention discloses a real-world application of a mathematical formula. In both, a well-known or basic principle is linked to its practical use. Yet in one (*Diehr*), the invention is patentable; in the other (*Bilski*), not. In deciding which one of the two categories the '545 patent fits, the Court consulted the machine or transformation test. The Court also noted that the similarities between the '545 patent and the *Bilski* patent point toward invalidity. Finally, the Court noted that the additional limitations beyond the abstract idea at the core of the '545 patent do not limit the claimed invention in a meaningful way. Therefore, the Court holds that the '545 patent does not cover patentable subject matter.

---

[6] The Court is cognizant of the difference between patentable subject matter and obviousness requirements. The point made here is that the core of the disclosed invention is an abstract principle similar to the hedging principle in *Bilski*; lack of novelty is not the (intended) message. Although the invention here may obvious, that determination is not before the Court.

## V. CONCLUSION

The Court **GRANTS** Wildtangent, Inc.'s Motion to Dismiss (DE 29). Hulu, LLC's Motion to Dismiss (DE 26) is **DENIED as moot**.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | slw | |