# United States Court of Appeals for the Federal Circuit

RECEIVED
CLERK, U.S. DISTRICT COURT
DEC - 1 2011
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

2010-1544

ULTRAMERCIAL, LLC and ULTRAMERCIAL, INC.,

Plaintiffs-Appellants,

v.

HULU, LLC,

Defendant,

and

WILDTANGENT, INC.,

Defendant-Appellee.

## Judgment

ON APPEAL from the United States District Court for the Central District of California

in CASE NO(S).   09-CV-6918

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

**REVERSED AND REMANDED**

ENTERED BY ORDER OF THE COURT

DATED SEP 15 2011

Jan Horbaly

Issued as **Mandate:** NOV 28 2011
**COSTS:**
Printing.................................... $ 179.38
**Total**.................................... $ 179.38

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
By: _____ Date: 11/28/11

# United States Court of Appeals for the Federal Circuit

---

ULTRAMERCIAL, LLC AND ULTRAMERCIAL, INC.,
*Plaintiffs-Appellants,*

v.

HULU, LLC,
*Defendant,*

and

WILDTANGENT, INC.,
*Defendant-Appellee.*

---

2010-1544

---

Appeal from the United States District Court for the Central District of California in case No. 09-CV-6918, Judge R. Gary Klausner.

---

Decided: September 15, 2011

---

LAWRENCE M. HADLEY, Hennigan Dorman, LLP, of Los Angeles, California, argued for plaintiffs-appellants. With him on the brief were HAZIM ANSARI and MIEKE K. MALMBERG.

GREGORY C. GARRE, Latham & Watkins, LLP, of Washington, DC, argued for defendant-appellee. On the

brief were RICHARD G. FRENKEL and LISA K. NGUYEN, Menlo Park, California. Of counsel was RICHARD P. BESS.

---

Before RADER, *Chief Judge*, LOURIE and O'MALLEY, *Circuit Judges*.

RADER, *Chief Judge*.

The United States District Court for the Central District of California dismissed Ultramercial, LLC and Ultramercial, Inc.'s (collectively, "Ultramercial") patent infringement claims, finding that U.S. Patent No. 7,346,545 ("the '545 patent") does not claim patent-eligible subject matter. Because the '545 patent claims a "process" within the language and meaning of 35 U.S.C. § 101, this court reverses and remands.

I

The '545 patent claims a method for distributing copyrighted products (e.g., songs, movies, books) over the Internet where the consumer receives a copyrighted product for free in exchange for viewing an advertisement, and the advertiser pays for the copyrighted content. Claim 1 of the '545 patent reads:

> A method for distribution of products over the Internet via a facilitator, said method comprising the steps of:
>
> > a first step of receiving, from a content provider, media products that are covered by intellectual property rights protection and are available for purchase, wherein each said media product being comprised of at least one of text data, music data, and video data;

a second step of selecting a sponsor message to be associated with the media product, said sponsor message being selected from a plurality of sponsor messages, said second step including accessing an activity log to verify that the total number of times which the sponsor message has been previously presented is less than the number of transaction cycles contracted by the sponsor of the sponsor message;

a third step of providing the media product for sale at an Internet website;

a fourth step of restricting general public access to said media product;

a fifth step of offering to a consumer access to the media product without charge to the consumer on the precondition that the consumer views the sponsor message;

a sixth step of receiving from the consumer a request to view the sponsor message, wherein the consumer submits said request in response to being offered access to the media product;

a seventh step of, in response to receiving the request from the consumer, facilitating the display of a sponsor message to the consumer;

an eighth step of, if the sponsor message is not an interactive message, allowing said consumer access to said media product after said step of facilitating the display of said sponsor message;

> a ninth step of, if the sponsor message is an interactive message, presenting at least one query to the consumer and allowing said consumer access to said media product after receiving a response to said at least one query;
>
> a tenth step of recording the transaction event to the activity log, said tenth step including updating the total number of times the sponsor message has been presented; and
>
> an eleventh step of receiving payment from the sponsor of the sponsor message displayed.

'545 patent col.8 ll.5-48.

Ultramercial filed suit against Hulu, LLC ("Hulu"), YouTube, LLC ("YouTube"), and WildTangent, Inc. ("WildTangent"), alleging infringement of the '545 patent. Hulu and YouTube have been dismissed from the case. WildTangent filed a motion to dismiss for failure to state a claim, arguing that the '545 patent did not claim patent-eligible subject matter. The district court granted WildTangent's motion to dismiss. Ultramercial appeals. This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

This court reviews a district court's dismissal for failure to state a claim without deference. *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1358 (Fed. Cir. 2010). This court also reviews determinations regarding patent-eligible subject matter under 35 U.S.C. § 101 without deference. *In re Ferguson*, 558 F.3d 1359, 1363 (Fed. Cir. 2009).

II

The district court dismissed Ultramercial's claims for failure to claim statutory subject matter without formally construing the claims. This court has never set forth a

bright line rule requiring district courts to construe claims before determining subject matter eligibility. Indeed, because eligibility is a "coarse" gauge of the suitability of broad subject matter categories for patent protection, *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010), claim construction may not always be necessary for a § 101 analysis. *See, e.g., Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2010) (finding subject matter ineligible for patent protection without claim construction). On many occasions, however, a definition of the invention via claim construction can clarify the basic character of the subject matter of the invention. Thus, claim meaning may clarify the actual subject matter at stake in the invention and can enlighten, or even answer, questions about subject matter abstractness. In this case, the subject matter at stake and its eligibility does not require claim construction.

### III

35 U.S.C. § 101 sets forth the categories of subject matter that are eligible for patent protection: "[w]hoever invents or discovers any new and useful *process, machine, manufacture, or composition of matter*, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title" (emphasis added). In *Bilski*, the Supreme Court explained that "[i]n choosing such expansive terms modified by the comprehensive 'any,' Congress plainly contemplated that the patent laws would be given wide scope." 130 S. Ct. at 3225 (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980)). After all, the purpose of the Patent Act is to encourage innovation, and the use of broadly inclusive categories of statutory subject matter ensures that "ingenuity . . . receive[s] a liberal encouragement." *Chakrabarty*, 447 U.S. at 308.

More importantly, as § 101 itself expresses, subject matter eligibility is merely a threshold check; claim patentability ultimately depends on "the conditions and requirements of this title," such as novelty, non-obviousness, and adequate disclosure. 35 U.S.C. § 101; see *Classen Immunotherapies, Inc. v. Biogen IDEC*, Nos. 2006-1634, 2006-1649, 2011 WL 3835409, at *6 (Fed. Cir. Aug. 31, 2011) (pointing out the difference between "the threshold inquiry of patent-eligibility, and the substantive conditions of patentability"). By directing attention to these substantive criteria for patentability, the language of § 101 makes clear that the categories of patent-eligible subject matter are no more than a "coarse eligibility filter." *Research Corp.*, 627 F.3d at 869. In other words, the expansive categories—process, machine, article of manufacture, and composition of matter—are certainly not substitutes for the substantive patentability requirements set forth in § 102, § 103, and § 112 and invoked expressly by § 101 itself. Moreover, title 35 does not list a single ineligible category, suggesting that any new, non-obvious, and fully disclosed technical advance is eligible for protection, subject to the following limited judicially created exceptions.

In line with the broadly permissive nature of § 101's subject matter eligibility principles, judicial case law has created only three categories of subject matter outside the eligibility bounds of § 101—laws of nature, physical phenomena, and abstract ideas. *Bilski*, 130 S. Ct. at 3225. Indeed, laws of nature and physical phenomena cannot be invented. Abstractness, however, has presented a different set of interpretive problems, particularly for the § 101 "process" category. Actually, the term "process" has a statutory definition that, again, admits of no express subject matter limitation: a title 35 "process" is a "process, art or method, and includes a new use of a


known process, machine, manufacture, composition of matter, or material." 35 U.S.C. § 100(b). Indeed, the Supreme Court recently examined this definition and found that the ordinary, contemporary, common meaning of "method" may include even methods of doing business. *See Bilski*, 130 S. Ct. at 3228. Accordingly, the Court refused to deem business methods ineligible for patent protection and cautioned against "read[ing] into the patent laws limitations and conditions which the legislature has not expressed." *Id.* at 3226 (quoting *Diamond v. Diehr*, 450 U.S. 175, 182 (1981)). And this court detects no limitations or conditions on subject matter eligibility expressed in statutory language. *See, e.g., Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, No. 2010-1406, 2011 WL 3211513, at *14 (Fed. Cir. July 29, 2011) (patent-ineligible categories of subject matter are "judicially created exceptions"); *Prometheus Labs., Inc. v. Mayo Collaborative Servs.*, 628 F.3d 1347, 1353 (Fed. Cir. 2010), *cert. granted*, 130 S.Ct. 3543 (2010) (patent-ineligible categories are "not compelled by the statutory text"); *see also Bilski*, 130 S. Ct. at 3225 (Supreme Court acknowledging that judge-created "exceptions are not required by the statutory text").

In an effort to grapple with the non-statutory "abstractness" limit, this court at one point set forth a machine-or-transformation test as the exclusive metric for determining the subject matter eligibility of processes. *In re Bilski*, 545 F.3d 943, 956 (Fed. Cir. 2008), *aff'd on other grounds, Bilski*, 130 S.Ct. 3218. The Supreme Court rejected this approach in *Bilski*, noting that the machine-or-transformation test is simply "a useful and important clue, an investigative tool, for determining whether *some* claimed inventions are processes under § 101" and is not "the sole test for deciding whether an invention is a patent-eligible 'process.'" 130 S. Ct. at 3227 (emphasis

added). While machine-or-transformation logic served well as a tool to evaluate the subject matter of Industrial Age processes, that test has far less application to the inventions of the Information Age. *See id.* at 3227-28 ("[I]n deciding whether previously unforeseen inventions qualify as patentable 'processes,' it may not make sense to require courts to confine themselves to asking the questions posed by the machine-or-transformation test. Section 101's terms suggest that new technologies may call for new inquiries."). Technology without anchors in physical structures and mechanical steps simply defy easy classification under the machine-or-transformation categories. As the Supreme Court suggests, mechanically applying that physical test "risk[s] obscuring the larger object of securing patents for valuable inventions without transgressing the public domain." *Id.* at 3228.

Both members of the Supreme Court and this court have recognized the difficulty of providing a precise formula or definition for the judge-made ineligible category of abstractness. *See id.* at 3236 (Stevens, J., concurring) ("The Court . . . [has] never provide[d] a satisfying account of what constitutes an unpatentable abstract idea."); *Research Corp.*, 627 F.3d at 868. Because technology is ever-changing and evolves in unforeseeable ways, this court gives substantial weight to the statutory reluctance to list any new, non-obvious, and fully disclosed subject matter as beyond the reach of title 35. In sum, § 101 is a "dynamic provision designed to encompass new and unforeseen inventions." *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 135 (2001). With this in mind, this court does "not presume to define 'abstract' beyond the recognition that this disqualifying characteristic should exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter and the statutory context that directs primary

attention on the patentability criteria of the rest of the Patent Act." *Research Corp.*, 627 F.3d at 868.

Although abstract principles are not eligible for patent protection, an application of an abstract idea may well be deserving of patent protection. *See Diehr*, 450 U.S. at 187 ("an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection"); *Parker v. Flook*, 437 U.S. 584, 591 (1978) ("While a scientific truth, or the mathematical expression of it, is not a patentable invention, a novel and useful structure created with the aid of knowledge of scientific truth may be."). The application of an abstract idea to a "new and useful end" is the type of invention that the Supreme Court has described as deserving of patent protection. *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972). After all, unlike the Copyright Act which divides idea from expression, the Patent Act covers and protects any new and useful technical advance, including applied ideas.

Turning to the '545 patent, the claimed invention is a method for monetizing and distributing copyrighted products over the Internet. As a method, it satisfies § 100's definition of "process" and thus falls within a § 101 category of patent-eligible subject matter. Thus, this court focuses its inquiry on the abstractness of the subject matter claimed by the '545 patent.

"[I]nventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act." *Research Corp.*, 627 F.3d at 869. The '545 patent seeks to remedy problems with prior art banner advertising, such as declining click-through rates, by introducing a method of product distribution that forces consumers to view and possibly even

interact with advertisements before permitting access to the desired media product. '545 patent col.2 ll.14-18. By its terms, the claimed invention purports to improve existing technology in the marketplace. By its terms, the claimed invention invokes computers and applications of computer technology. Of course, the patentability of the '545 patent, though acknowledged by the U.S. Patent Office, would still need to withstand challenges that the claimed invention does not advance technology (novelty), does not advance technology sufficiently to warrant patent protection (obviousness), or does not sufficiently enable, describe, and disclose the limits of the invention (adequate disclosure).

Returning to the subject matter of the '545 patent, the mere idea that advertising can be used as a form of currency is abstract, just as the vague, unapplied concept of hedging proved patent-ineligible in *Bilski*. However, the '545 patent does not simply claim the age-old idea that advertising can serve as currency. Instead the '545 patent discloses a practical application of this idea. The '545 patent claims a particular method for monetizing copyrighted products, consisting of the following steps: (1) receiving media products from a copyright holder, (2) selecting an advertisement to be associated with each media product, (3) providing said media products for sale on an Internet website, (4) restricting general public access to the media products, (5) offering free access to said media products on the condition that the consumer view the advertising, (6) receiving a request from a consumer to view the advertising, (7) facilitating the display of advertising and any required interaction with the advertising, (8) allowing the consumer access to the associated media product after such display and interaction, if any, (9) recording this transaction in an activity log, and (10) receiving payment from the advertiser. '545

11                                ULTRAMERCIAL v. HULU

patent col.8 ll.5-48. Many of these steps are likely to require intricate and complex computer programming. In addition, certain of these steps clearly require specific application to the Internet and a cyber-market environment. One clear example is the third step, "providing said media products for sale on an Internet website." *Id.* col.8 ll.20-21. And, of course, if the products are offered for sale on the Internet, they must be "restricted"—step four—by complex computer programming as well. Viewing the subject matter as a whole, the invention involves an extensive computer interface. This court does not define the level of programming complexity required before a computer-implemented method can be patent-eligible. Nor does this court hold that use of an Internet website to practice such a method is either necessary or sufficient in every case to satisfy § 101. This court simply find the claims here to be patent-eligible, in part because of these factors.

In this context, this court examines as well the contention that the software programming necessary to facilitate the invention deserves no patent protection or amounts to abstract subject matter or, in the confusing terminology of machines and physical transformations, fails to satisfy the "particular machine" requirement. This court confronted that contention nearly two decades ago in the en banc case of *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994). At that time, this court observed that "programming creates a new machine, because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software." *Id.* at 1545. As computer scientists understand:

> the inventor can describe the invention in terms of a dedicated circuit or a process that emulates that circuit. Indeed, the line of demarcation between a

ULTRAMERCIAL v. HULU 12

> dedicated circuit and a computer algorithm accomplishing the identical task is frequently blurred and is becoming increasingly so as the technology develops. In this field, a software process is often interchangeable with a hardware circuit.

*Id.* at 1583 (J. Rader, concurring). In other words, a programmed computer contains circuitry unique to that computer. That "new machine" could be claimed in terms of a complex array of hardware circuits, or more efficiently, in terms of the programming that facilitates a unique function. The digital computer may be considered by some the greatest invention of the twentieth century, and both this court and the Patent Office have long acknowledged that "improvements thereof" through interchangeable software or hardware enhancements deserve patent protection. Far from abstract, advances in computer technology—both hardware and software—drive innovation in every area of scientific and technical endeavor.

This court understands that the broadly claimed method in the '545 patent does not specify a particular mechanism for delivering media content to the consumer (i.e., FTP downloads, email, or real-time streaming). This breadth and lack of specificity does not render the claimed subject matter impermissibly abstract. Assuming the patent provides sufficient disclosure to enable a person of ordinary skill in the art to practice the invention and to satisfy the written description requirement, the disclosure need not detail the particular instrumentalities for each step in the process.

> That a process may be patentable, irrespective of the particular form of the instrumentalities used, cannot be disputed. If one of the steps of a process

13                                                         ULTRAMERCIAL v. HULU

> be that a certain substance is to be reduced to a powder, it may not be at all material what instrument or machinery is used to effect that object, whether a hammer, a pestle and mortar, or a mill.

*Benson*, 409 U.S. at 69-70 (quoting *Cochrane v. Deener*, 94 U.S. 780, 787-88 (1876)). Moreover, written description and enablement are conditions for patentability that title 35 sets "wholly apart from whether the invention falls into a category of statutory subject matter." *Diehr*, 450 U.S. at 190 (quoting *In re Bergy*, 596 F.2d 952, 961 (C.C.P.A. 1979)). The "coarse eligibility filter" of § 101 should not be used to invalidate patents based on concerns about vagueness, indefinite disclosure, or lack of enablement, as these infirmities are expressly addressed by § 112. *See* 35 U.S.C. § 112; *see also Research Corp.*, 627 F.3d at 869 ("In section 112, the Patent Act provides powerful tools to weed out claims that may present a vague or indefinite disclosure of the invention.").

Finally, the '545 patent does not claim a mathematical algorithm, a series of purely mental steps, or any similarly abstract concept. It claims a particular method for collecting revenue from the distribution of media products over the Internet. In a recent case, this court discerned that an invention claimed an "unpatentable mental process." *CyberSource Corp. v. Retail Decisions, Inc.*, No. 2009-1358, 2011 WL 3584472, at *3 (Fed. Cir. Aug. 16, 2011). The eligibility exclusion for *purely* mental steps is particularly narrow. *See Prometheus Labs.*, 628 F.3d at 1358 (noting that claims must be considered as a whole and that "the presence of mental steps [in a claim] does not detract from the patentability of [other] steps"). Unlike the claims in *CyberSource*, the claims here require, among other things, controlled interaction with a

consumer via an Internet website, something far removed from *purely* mental steps.

In sum, as a practical application of the general concept of advertising as currency and an improvement to prior art technology, the claimed invention is not "so manifestly abstract as to override the statutory language of section 101." *Research Corp.*, 627 F.3d at 869. Accordingly, this court reverses the district court's dismissal of Ultramercial's patent claims for lack of subject matter eligibility and remands for further proceedings. This decision does not opine at all on the patentability of the claimed invention under the substantive criteria set forth in § 102, § 103, and § 112.

**REVERSED AND REMANDED**

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: _____ Date: 11/28/11

Form 24

FORM 24. Bill of Costs

BILL OF COSTS (File original and three copies with the Clerk within 14 days of judgment.)

Docket No(s): A: 2010-1544   Caption: B: ULTRAMERCIAL v. HULU

The Clerk is requested to tax the following costs against: C: WildTangent, Inc., Defendant-Appellee

| ITEM | Number of copies | Number of pages | Actual cost | Allowable cost | Total billed | Total taxed |
|---|---|---|---|---|---|---|
| Docketing Fee (if paid in this court) | xxxxx | xxxxx | D: NA | | | |
| Table of Designated Materials (original) | xxxxx | E: NA | F: NA | 6.00 | | |
| Table of Compilation of Designated Materials (copying and collating) | G: NA | H: NA | NA | 0.08 | | |
| Brief (original) | xxxxx | E: 51 | 15.30 | 6.00 | 15.30 | 15.30 |
| Brief (cover and binding) | G: 16 | xxxxx | 80.00 | 2.00 | 32.00 | 32.00 |
| Brief (copying and collating) | G: 15 | H: 51 | 229.50 | 0.08 | 61.20 | 61.20 |
| Appendix (original - table of contents) | xxxxx | E: NA | | 6.00 | | |
| Appendix (covers and binding) | G: NA | xxxxx | | 2.00 | | |
| Appendix (copying and collating) | G: NA | H: NA | | 0.08 | | |
| Reply Brief (original) | xxxxx | E: 32 | 9.60 | 6.00 | 9.60 | 9.60 |
| Reply Brief (covers and binding) | G: 14 | xxxxx | 70.00 | 2.00 | 28.00 | 28.00 |
| Reply Brief (copying and collating) | G: 13 | H: 32 | 124.80 | 0.08 | 33.28 | 33.28 |
| Other (describe): | I: | J: | | | | |
| GRAND TOTALS | | | | | 179.38 | 179.38 |

FILED
U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT
SEP 27 2011
JAN HORBALY
CLERK

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: _____ Date: 11/28/11

City/County of Los Angeles ) District/State of California ) SS

I, K: Mieke K. Malmberg, swear under penalty of perjury that the services for which costs are taxed were necessarily performed. Itemized statements of the costs incurred or invoices are attached. Copies of this bill were served on all parties. The certificate of service is attached.

Signature: _____   Date: 9/23/2011   Attorney for: L: Ultramercial, LLL and Ultramercial, Inc., Plaintiffs-Appellants

[Reset Fields]

COPY

148

# Invoice

**Counsel Press LLC**
SDS-12-2802
PO Box 86
Minneapolis, MN 55486-2802

PLEASE NOTE NEW
REMITTANCE ADDRESS

| | |
|---|---|
| Invoice Number: | 0009019050 |
| Date: | 1/28/2011 |
| Fed. Tax ID: | 43-2070509 |
| Terms: | ON RECEIPT |

**Sold To**

Hennigan, Bennett & Dorman LLP
865 South Figueroa Street
Suite 2900
Los Angeles, CA 90017  USA

Attention: Mieke K. Malmberg, Esq.

File No.: 702812
Court: USCOA - FC
Case Name: Ultramercial, LLC v. Hulu, LLC

For Reproduction of:

| | | | | Amount |
|---|---|---|---|---|
| | APPELLANT'S BRIEF | | | |
| 1.00 | Preparation of Brief | @ | $645.00 | $645.00 |
| 1.00 | Filing & 1 Service(s) | @ | $95.00 | $95.00 |
| 1.00 | Federal Express | @ | $128.00 | $128.00 |

.30/page
$5/binding

This Invoice is Due Upon Receipt. Please Show Invoice Number on Check When Submitting Payment.

16-JH

| | |
|---|---|
| Subtotal | $868.00 |
| Sales Tax | $84.63 |
| | $0.00 |
| Payment/Credit Amount | $0.00 |
| Balance | $952.63 |

NEW YORK, NY - WASHINGTON, DC - PHILADELPHIA, PA - LOS ANGELES, CA - CHICAGO, IL

# Invoice

**Counsel Press LLC**
SDS-12-2802
PO Box 86
Minneapolis, MN 55486-2802

Invoice Number: 0009022003
Date: 5/23/2011
Fed. Tax ID: 43-2070509

PLEASE NOTE NEW
REMITTANCE ADDRESS

Terms: ON RECEIPT

**Sold To**

Hennigan Dorman LLP
865 South Figueroa Street
Suite 2900
Los Angeles, CA 90017   USA

Attention: Mieke K. Malmberg, Esq.

File No.: 703033
Court: USCOA - FC
Case Name: Ultramercial v. Hulu

| | | | Amount |
|---|---|---|---|
| For Reproduction of: | | | |
| REPLY BRIEF | | | |
| 1.00  Preparation of Brief | @ | $425.00 | $425.00 |
| 1.00  Service(s) of Documents | @ | $25.00 | $25.00 |
| 1.00  Filing of Documents | @ | $75.00 | $75.00 |
| 1.00  Federal Express | @ | $80.00 | $80.00 |

.30/page
$5/binding

16-JH

This Invoice is Due Upon Receipt. Please Show Invoice Number on Check When Submitting Payment

| | |
|---|---|
| Subtotal | $605.00 |
| Sales Tax | $58.99 |
| | $0.00 |
| Payment/Credit Amount | $0.00 |
| Balance | $663.99 |

NEW YORK, NY - WASHINGTON, DC - PHILADELPHIA, PA - LOS ANGELES, CA. CHICAGO, IL

## CERTIFICATE OF SERVICE

I hereby certify that on **September 26, 2011**, and unless otherwise indicated, two copies of the foregoing **BILL OF COSTS** was served via First Class Mail and Electronic Mail to the following:

| | |
|---|---|
| Lisa K. Nguyen<br>Richard G. Frenkel<br>Latham & Watkins LLP<br>140 Scott Drive<br>Menlo Park, CA 94025<br>Fax: (650) 463-2600<br>Email: lisa.nguyen@lw.com<br>Email: rick.frenkel@lw.com<br>**Counsel for Defendant WildTangent, Inc.** | Richard P. Bress<br>Gregory G. Garre<br>Latham & Watkins LLP<br>555 Eleventh St. NW, Suite 1000<br>Washington, DC 20004<br>Fax: (202) 637-2201<br>Email: Rick.bress@lw.com<br>Email: Gregory.garre@lw.com<br>**Counsel for Defendant WildTanget, Inc.** |

_____
Sylvia A. Berson

